# 25-189

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

———

SPENCER SHEEHAN, ESQ., SHEEHAN AND ASSOCIATES, P.C.,

*Respondents-Appellants,*

KRISTIE BROWNELL, Individually and
on Behalf of All Others Similarly Situated,

*Plaintiff,*

vs.

STARBUCKS CORPORATION,

*Defendant-Appellee.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK.

———

## BRIEF FOR NON-PARTY-APPELLANTS SPENCER SHEEHAN, ESQ. and SHEEHAN AND ASSOCIATES, P.C.

———

COSTELLO, COONEY & FEARON, PLLC
DANIEL R. ROSE, ESQ.
*Attorneys for Non-Party-Appellants*
    *Spencer Sheehan, Esq. and*
    *Sheehan and Associates, P.C.*
211 W. Jefferson Street
Syracuse, New York 13202
Telephone: (315) 422-1152
Email: drose@ccf-law.com

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SPENCER SHEEHAN, ESQ., SHEEHAN AND
ASSOCIATES, P.C.,

Appeal No. 25-189

Respondents-Appellants,

KRISTIE BROWNELL, Individually and on Behalf of
All Others Similarly Situated,

Plaintiff,

-vs-

STARBUCKS CORPORATION,

Defendant-Appellee.

## DISCLOSURE STATEMENT OF SHEEHAN AND ASSOCIATES, P.C.

Pursuant to Federal Rule of Appellate Procedure 26.1, Respondent-Appellant Sheehan &

Associates, P.C., through their undersigned counsel, provide the following disclosures:

Sheehan & Associates, P.C. has no parent corporation. No public corporation owner 10%

or more of its stock.

_____

**DANIEL R. ROSE**
**Attorneys for the Respondents-**
 **Appellants,** *Sheehan Sheehan, Esq.*
*and Sheehan & Associates, P.C.*
**Office and Post Office Address**
**211 West Jefferson Street, Suite 1**
**Syracuse, NY 13202**
**Telephone: (315) 422-1152**

Dated: April 29, 2025
 Syracuse, New York

**TABLE OF CONTENTS**

Page

TABLE OF CONTENTS..................................................................... i

TABLE OF AUTHORITIES ............................................................... ii

STATEMENT OF JURISDICTION....................................................1

ISSUES PRESENTED.........................................................................1

STATEMENT OF FACTS .................................................................2

STANDARD OF REVIEW ................................................................6

ARGUMENT ......................................................................................7

POINT I     RULE 11(B)(2) SANCTIONS WERE NOT
WARRANTED ......................................................................7

    A.   Complaint's Legal Theories Supported by Case
Law in Other Jurisdictions ................................. 8

    B.   Lack of "Existing Precedents" ......................... 12

POINT II    NO NOTICE AS TO VIOLATION OF RULE
11(b)(3) ..................................................................15

POINT III   IN ANY EVENT, IT IS CLEAR SHEEHAN
CONDUCTED THE NECESSARY
INVESTIGATION.................................................................18

    A.   Complaint Was Not Utterly Lacking Support.................. 19

    B.   "Objectively Reasonable" to Rely on Puroast
Complaint ........................................................ 21

    C.   Source of Puroast Report Did Not Justify
Sanctions ........................................................ 23

CONCLUSION..................................................................................25

CERTIFICATE OF COMPLIANCE...................................................27

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ametex Fabrics Inc. v. Just In Materials Inc.*,
140 F.3d 101 (2d Cir. 1998) ...............................................................17

*Ang v. Bimbo Bakeries USA Inc.*,
No. 13-cv-01196, 2013 WL 5407039 (N.D. Cal. Sep. 25, 2013).......................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................... 20, 22, 23

*Associated Indem. Corp. v. Fairchild Indus., Inc.*,
961 F.2d 32 (2d Cir. 1992) ....................................................... 7, 8, 13

*Bassett v. Mashantucket Pequot Tribe*,
204 F.3d 343 (2d Cir. 2000) ...............................................................24

*Bates v. Abbott Labs.*,
727 F. Supp. 3d 194 (N.D.N.Y. 2024)....................................................12

*Bates v. Abbott Labs.*,
No. 24-ap-919, 2025 WL 65668 (2d Cir. Jan. 10, 2025) ...............................12

*Beardsall v. CVS Pharmacy Inc.*,
953 F.3d 969 (7th Cir. 2020) ...................................................... 9, 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................... 20, 22, 23

*Bell v. Publix Super Mkts.*,
982 F.3d 468 (7th Cir. 2020) .................................................. 9, 10, 11

*Brockington v. Dollar Gen. Corp.*,
695 F. Supp. 3d 487 (S.D.N.Y. 2023) ....................................................12

*Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*,
498 U.S. 533 (1991)........................................................................7

*Calloway v. Marvel Ent. Grp.*,
854 F. 2d 1452 (2d Cir. 1988) .................................................... 18, 22

*Canale v. Colgate-Palmolive Co.*,
258 F. Supp. 3d 312 (S.D.N.Y. 2017) ....................................................23

*CBS Broad. Inc. v. FilmOn.com Inc.*,
  814 F.3d 91 (2d Cir. 2016) ................................................................25

*Cooter & Gell v. Hartmarx Corp.*,
  496 U.S. 384 (1990).............................................................................7

*Eastway Const. Corp. v. City of New York*,
  762 F.2d 243 (2d Cir. 1985) ............................................................6, 8

*Fishoff v. Coty Inc.*,
  634 F.3d 647 (2d Cir. 2011) ..............................................................15

*Guggenheimer v. Ginzburg*,
  43 N.Y.2d 268 (1977)........................................................................14

*Gurary v. Winehouse*,
  235 F.3d 792 (2d Cir. 2000) ....................................................... 9, 12, 24

*Hadges v. Yonkers Racing Corp.*,
  48 F.3d 1320 (2d Cir. 1995) ..............................................................18

*Hauger v. Dollar Gen. Corp.*,
  No. 21-cv-01270, 2022 WL 2532487 (C.D. Ill. 2022)......................12

*Jackson v. Dole Packaged Foods LLC*,
  648 F. Supp. 3d 1039 (S.D. Ill. 2022) ............................................ 9, 10

*Kamen v. American Tel. & Tel. Co.*,
  791 F.2d 1006, 1009 (2d Cir. 1986) ..................................................22

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018) ................................................................15

*Lea v. TAL Educ. Grp.*,
  837 F. App'x 20 (2d Cir. 2020) .........................................................23

*LeGrand v. Abbott Labs.*,
  655 F. Supp. 3d 871 (N.D. Cal. 2023)...............................................12

*Lynch v. Tropicana Prods. Inc.*,
  No. 11-cv-07382, 2013 WL 2645050 (D.N.J. June 12, 2013) ............9

*MacNaughton v. Young Living Essential Oils LC*,
  67 F.4th 89 (2d Cir. 2023) .................................................................11

iii

*Mantikas v. Kellogg Co.*,
910 F.3d 633 (2d Cir. 2018) ...................................................................... 4, 5, 6

*Mareno v. Rowe*,
910 F.2d 1043 (2d Cir.1990) ........................................................................ 7, 13

*Martens v. Thomann*,
273 F.3d 159 (2d Cir. 2001) ...............................................................................15

*Matrixx Initiatives Inc. v. Siracusano*,
563 U.S. 27 (2011)...............................................................................................23

*Middle States Knowlton Corp. v. Esic Cap. Inc.*,
No. 82-cv-1911, 1985 WL 7441 (D.D.C. 1985)................................................13

*Motown Prods., Inc. v. Cacomm, Inc.*,
849 F.2d 781 (2d Cir. 1988) ........................................................................ 8, 13

*Nuwesra v. Merrill Lynch Fenner & Smith Inc.*,
174 F.3d 87 (2d Cir. 1999) .................................................................................17

*O'Brien v. Alexander*,
101 F.3d 1479 (2d Cir. 1996) ...................................................................... 7, 21

*O'Malley v. New York City Transit Auth.*,
896 F.2d 704 (2d Cir. 1990) ..............................................................................15

*Paradowski v. Champion Petfoods USA Inc.*,
No. 22-ap-962, 2023 WL 3829559 (2d Cir. 2023)...........................................14

*Pavelic & LeFlore v. Marvel Ent. Grp.*,
493 U.S. 120 (1989)............................................................................................18

*Pierce v. F.R. Tripler & Co.*,
955 F.2d 820 (2d Cir. 1992) ..............................................................................14

*Salovaara v. Eckert*,
222 F.3d 19 (2d Cir. 2000) .................................................................................14

*Schlaifer Nance & Co. v. Estate of Warhol*,
194 F.3d 323 (2d Cir. 1999) .................................................................................6

*Schneider v. Mott's LLP*,
No. 21-cv-1251, 2022 WL 4314207 (S.D. Ill. 2022) ................................. 9, 17

*Schoenberg v. Shapolsky Publishers Inc.*,
 971 F.2d 926 (2d Cir. 1992) ...................................................................... 24, 25

*Scholder v. Sioux Honey Ass'n. Coop.*,
 No. 16-cv-5369, 2022 WL 125742 (E.D.N.Y. 2022)......................................10

*SerVaas Inc. v. Mills*,
 661 F. App'x 7 (2d Cir. 2016) .............................................................................24

*Sharpe v. A&W Concentrate Co.*,
 481 F. Supp. 3d 94 (E.D.N.Y. 2020) .............................................................4, 6

*Sims v. Blot*,
 534 F.3d 117 (2d Cir. 2008) ................................................................................7

*Star Mark Mgmt. Inc. v. Koon Chun Hing Kee Soy & Sauce Factory*,
 682 F.3d 170 (2d Cir. 2012) ..............................................................................17

*Stern v. Leucadia Nat'l Corp.*,
 844 F.2d 997 (2d Cir. 1988) ............................................................................6, 7

*Storey v. Cello Holdings LLC*,
 347 F.3d 370 (2d Cir. 2003) .......................................................................... 7, 18

*StreetEasy Inc. v. Chertok*,
 752 F.3d 298 (2d Cir. 2014) ..............................................................................18

*Ted Lapidus S.A. v. Vann*,
 112 F.3d 91 (2d Cir. 1997) ......................................................................... 17, 24

*Weiss v. David Benrimon Fine Art LLC*,
 No. 20-ap-3842, 2021 WL 6128437 (2d Cir. Dec. 28, 2021) ...................... 3, 13

**Statutes**

28 U.S.C. § 1927 .................................................................................................17

42 U.S.C. § 12205 ...............................................................................................17

**Other Authorities**

Fed. R. Civ. P. 8 ..................................................................................................22

Fed. R. Civ. P. 8(a)..............................................................................................23

Fed. R. Civ. P. 11 .................................................................................................6

Fed. R. Civ. P. 11(b)(2)..................................................................... *passim*

Fed. R. Civ. P. 11(b)(3)........................................................ 16, 18, 21, 24

**Treatises**

Fed. R. Civ. P. 11,
    Advisory Committee Notes,
    1993 Amendment........................................................................9

## STATEMENT OF JURISDICTION

Kristie Brownell ("Plaintiff"), commenced the underlying action in the United States District Court for the Northern District of New York under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). Plaintiff is a citizen of New York, and Starbucks Coffee Company ("Defendant-Appellee") is a citizen of Washington State.

By Memorandum-Decision and Order dated July 12, 2023, the District Court granted the Defendant's motion pursuant to Fed. R. Civ. P. 12(b)(6) and directed Plaintiff's Counsel, Spencer Sheehan and Sheehan & Associates P.C. (collectively "Sheehan"), to show cause why the Court should not sanction him pursuant to Fed. R. Civ. P. 11(b)(2) "for continually filing frivolous lawsuits in this District."

By Order dated November 30, 2023, the Court found Sheehan in civil contempt of court. In a final Order dated January 2, 2025, the District Court directed Sheehan pay $500.00 as a sanction for violating Rule 11(b)(2), finally resolving all issues before that Court. *See* 28 U.S.C. § 1291; *Petrello v. White*, 533 F.3d 110, 113 (2d Cir. 2008)) (citing). Sheehan's Notice of Appeal followed on January 24, 2025.

## ISSUES PRESENTED

Whether the District Court erred in finding Mr. Sheehan in contempt of court and/or in imposing sanctions pursuant to Rule 11.

**STATEMENT OF FACTS**

Plaintiff commenced this action seeking redress for Defendant's false, deceptive or misleading claim that its coffee contained "100% Arabica Coffee," without disclosing that it also contained a potassium additive, which Defendant used to chemically reduce the bitterness of its coffee. [A. 9–10]. This was based on testing from Puroast, which found the potassium concentration of "Starbucks French Roast – 6800 ppm . . . is the equivalent over the baseline of the coffees tested of 180 mg of potassium in an 8oz cup of coffee [and] consistent with the abnormally high pH of 5.74 of the Starbucks Dark French Roast coffee." [A. 77].

Defendant thereafter sought dismissal of the Complaint based on Plaintiff's failure to state a claim and lack of jurisdiction. [A. 22–48]. Specifically, Defendant contended Plaintiff lacked standing, had not pleaded with sufficient specificity under Iqbal, that a reasonable consumer would not be materially misled by Defendant's labeling, and that Plaintiff's state law claims also failed. [A. 36–48]. In opposition, Plaintiff cited in excess of fifty (50) cases supporting the merits of her Complaint, including several which held assertions that a product contained "100%" of an ingredient could be misleading to a reasonable consumer. [A. 59–65].

In the District Court's resulting Order, it rejected Defendant's challenge on standing, and held that allegations that Plaintiff read and relied on representations on the product packaging and paid a premium price as a result adequately alleged a

2

compensable injury. [A. 98–99]. However, the Court noted that Plaintiff's vague references to "reports based on laboratory analysis" did not sufficiently plead Defendant's alteration of the coffee in question. [A. 102–03]. Moreover, the Court held, without reference to case law, that even if Plaintiff had demonstrated Defendant's use of a potassium additive, the claim tht the package contained "100% Arabica Coffee" was not misleading to a reasonable consumer. [R. 103–04].

Following rejection of Plaintiff's remaining state law claims, the Court recited the requirements under Fed. R. Civ. P. 11(b)(2), under which "[a] court may sanction counsel for signing pleadings whose legal theories are not 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.' " [A. 109 (quoting *Weiss v. David Benrimon Fine Art LLC*, No. 20-3842-cv, 2021 WL 6128437, at *2 (2d Cir. Dec. 28, 2021))]. Absent any analysis of the relevant pleading or the case law relied upon to support it, the Court immediately turned to other actions which Sheehan had commenced based upon misleading product labeling, in both the Northern and Southern Districts of New York. [A. 109–11]. The Court then directed Mr. Sheehan (not Sheehan & Associates) to show cause why it "should not sanction him for continually filing frivolous lawsuits in this District." [A. 111].[1]

---

[1] Notably, at no time had any District Judge in the Northern District of New York previously held Sheehan's Complaints to be frivolous, within the meaning of Rule 11.

3

Sheehan submitted a letter brief in response noting that the Court had failed to identify the objectionable conduct in its Order, instead relying exclusively on matters other than the conduct of the present litigation, and relying upon careful analysis of case law that reasonable consumers could be deceived by Defendant's labeling. [A. 113–17]. Specifically, Sheehan asserted that "Plaintiff's claims were consistent with the controlling authority of *Mantikas*, which held that 'reasonable consumers should [not] be expected to look beyond misleading representations on the front of the [product] to discover the truth from the [] small print on the side.' " [A. 115–16 (quoting *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018))]. Sheehan went further, contending that, "[u]nlike 'in *Mantikas*, [where] it was undisputed that the Nutrition Facts panel was accurate,' 'the existence of [added potassium], the substance [P]laintiff[] allege[d]' makes the '100% Arabica' front label claim misleading, '[wa]s never explicitly disclosed to consumers.' " [A. 116 (quoting *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 102 (E.D.N.Y. 2020) (denying dismissal in case brought by Plaintiff's Counsel because despite claim soda was "made with aged vanilla," vanilla taste was provided by the undisclosed synthetic chemical of ethyl vanillin))].

In a supplemental submission, Sheehan provided the Court with citations to a plethora of other cases in which Sheehan had successfully overcome motions to dismiss on each of the causes of action presented in Plaintiff's Complaint to

4

demonstrate the good-faith basis for that pleading. [A. 119–23]. During a personal appearance before the District Court on August 22, 2023, the Court directed Sheehan to provide evidentiary proof substantiating the claims within the Complaint. [A. 142]. On August 29, 2023, Mr. Sheehan submitted a sworn Declaration outlining his research and providing results from laboratory testing of the subject coffee product. [A. 124–39].

In a Second Order, the Court invoked Rule 11(b)(2), finding "[the] [C]omplaint . . . made meritless claims [] based on an unreasonable interpretation of a food label." [A. 145]. Again, without any analysis, the Court claimed it had previously determined that Mr. Sheehan "filed a frivolous complaint in this action when he made meritless claims . . . ." [A. 145]. The District Court affirmed its initial ruling, that "Plaintiff 'ha[d] not shown that a reasonable person would believe that '100% Arabica Coffee' meant that the Product contained ground coffee beans without any vitamins or minerals, including added potassium.' " [A. 151 (quoting A. 103)].

The District Court distinguished *Mantikas*, concluding "the Second Circuit's holding is not applicable [] [because] the Product stated that it contained '100% Ground Arabica' coffee, meaning ground coffee beans from the Arabica coffee plant; and it did, in fact, contain that content without need for correction on the side of the bag or in a list of nutritional facts." [A. 154 (citing *Mantikas*, 910 F.3d at

637)]. Next, the Court dismissed the application of *Sharpe*, "[a]s irrelevant for the same reason as *Mantikas* [because] there w[as] no assertion that the '100% Ground Arabica' coffee in Plaintiff's case contained Robusta coffee beans in addition to Arabica coffee beans." [A. 155 (citing *Sharpe*, 481 F. Supp. 3d at 102)]. The District Court found "it was unreasonable for Mr. Sheehan to believe that *Mantikas* and *Sharpe* provided precedent he could follow," because "[t]his [wa]s not a case where the labeling promised inclusion of one ingredient, but that ingredient was *de minimus* in quantity." [A. 155]. The Court concluded Mr. Sheehan "acted in bad faith," and as such, held him in contempt. [A. 158]. The Court reserved on any sanction to be imposed. [A. 159]. By further Order, the Court imposed sanctions of $500.00 against Mr. Sheehan. [A. 161].

## STANDARD OF REVIEW

Generally, the standard of review for a "district court's imposition of Rule 11 sanctions [is] for abuse of discretion. *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 333 (2d Cir. 1999). However, the scope of this Court's review is limited to "'whether, in fact, a pleading was groundless . . . [this Court] is in as good a position to determine the answer, and thus, . . . need not defer to the lower court's opinion." *Stern v. Leucadia Nat'l Corp.*, 844 F.2d 997, 1004 (2d Cir. 1988) (quoting *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 254 n. 7 (2nd Cir.1985) ("*Eastway I* "), *cert. denied*, 484 U.S. 918 (1987), *superseded by statute on other*

6

*grounds as recognized by Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012)); *see also Greenberg v. Hilton Int'l Co.*, 870 F.2d 926, 934 (2d Cir.1989), *abrogated on other grounds by Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533 (1991)). An "abuse of discretion" occurs when a district court "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008); *see Storey v. Cello Holdings LLC*, 347 F.3d 370, 389 (2d Cir. 2003) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996)).

## ARGUMENT

### POINT I

### RULE 11(B)(2) SANCTIONS WERE NOT WARRANTED

Under the Second Circuit's "deferential" standard, when reviewing a finding that Rule 11(b)(2) has been violated, "it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir.1990), (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990)); *accord Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 34 (2d Cir. 1992) (quoting *Stern v. Leucadia Nat'l Corp.*, 844 F.2d at 1005); *see also Securities Indus. Ass'n v. Clarke*, 898 F.2d 318, 321 (2d Cir. 1990), *overruled on other grounds by*

7

*Cooter & Gell* (upon examination of memorandum submitted to District Court, relying upon Second Circuit case law, it was not clear plaintiff's motion had no chance of success). "When divining 'the point at which an argument turns from merely "losing" to "losing *and* sanctionable", . . . district courts [should] " 'resolve all doubts in favor of the signer.' " ' " *Associated Indem. Corp.*, 961 F.2d at 34–35 (quoting *Motown Prods., Inc. v. Cacomm, Inc.*, 849 F.2d 781, 785 (2d Cir. 1988)). In this Circuit, District Court Judges are "to refrain from imposing sanctions where such action would 'stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.' " *Motown*, 849 F.2d at 785 (quoting *Eastway Constr. Corp.*, 762 F.2d at 254).

## A. Complaint's Legal Theories Supported by Case Law in Other <u>Jurisdictions</u>

Contrary to the District Court, Appellant had a "reasonable basis" that "[t]his [wa]s [] a case where the labeling promised inclusion of one ingredient." [A. 155]. The District Court's "conclusion that under existing precedents [Sheehan] either had no chance of success or failed to advance a reasonable argument [with respect to how consumers understand 'Ground 100% Arabica Coffee'] is belied by an examination of [his Submissions]." *Securities Industries Ass'n*, 898 F.2d at 321. These included four decisions which found food labels claiming "100% _____" could be understood by "consumers . . . to mean that the product contains only [the

food following the '100%'], without additives." [A. 116–17 (citing *Bell v. Publix Super Markets*, 982 F.3d 468, 473 (7th Cir. 2020), *Beardsall v. CVS Pharmacy Inc.*, 953 F.3d 969, 971 (7th Cir. 2020) , *Jackson v. Dole Packaged Foods LLC*, 648 F. Supp. 3d 1039, 1047 (S.D. Ill. 2022), and *Schneider v. Mott's LLP*, No. 21-cv-1251, 2022 WL 4314207, at *2, *5 (S.D. Ill. 2022)]. Presenting these decisions demonstrated Sheehan "ha[d] researched the issues and found some support for [his] theories even in minority opinions . . . ." *Gurary v. Winehouse*, 235 F.3d 792, 797–98 (2d Cir. 2000) (quoting Fed. R. Civ. P. 11, Advisory Committee Notes, 1993 Amendment, *abrogated on other grounds by Federal Trade Comm'n v. Actavis, Inc.*, 570 U.S. 136 (2013).

Where "a particular point of law is unsettled, parties and (or) their attorneys need not accurately prognosticate the correct law in order to avoid sanctions." *Securities Indus. Ass'n*, 898 F.2d at 321–22.[2] For example, Sheehan noted how the Seventh Circuit "found that in context of '100% Grated Parmesan Cheese,' 'it was certainly a plausible reading [] that '100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated." [A. 116 (quoting *Bell*, 982 F.3d at

---

[2] Although not cited within Plaintiff's papers, additional authority demonstrates there is sufficient support for the proposition that "100%" could be construed to mean "without additives." *See, e.g.*, *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196, 2013 WL 5407039, at *9-10 (N.D. Cal. Sep. 25, 2013) (less than 2% soy flour in "100% Whole Wheat" could be misleading); *Lynch v. Tropicana Prods., Inc.*, No. 11-cv-07382, 2013 WL 2645050, at *1, *7 (D.N.J. June 12, 2013) (directing discovery to illuminate the truth of the allegations, *inter alia*, that defendant added "flavor packs" to enhance the flavor of "100% pure and natural orange juice").

476–77)]. Likewise in *Schneider*, and *Jackson*, where courts concluded "100% _____" could plausibly lead purchasers to expect applesauce and mixed fruit in juice "does not contain ingredients in addition to apples [,] other fruit," and "fruit juice," respectively. [A. 116–17 (quoting *Schneider*, 2022 WL 4314207, at *1, and *Jackson*, 648 F. Supp. 3d at 1043)].

In Plaintiff's opposition to Defendant's motion, Sheehan also relied on *Beardsall v. CVS Pharmacy, Inc.*, 953 F.33d 969 (7th Cir. 2020), wherein the Seventh Circuit recognized that the theory that a consumer might be misled by "100%" claims could be viable, but where the plaintiffs failed to present any evidence of actual confusion, and admitted they expected other ingredients, such as preservatives, thereby warranting summary judgment. *Id.* at 973, 977. As those cases recognize, the critical inquiry is "how consumers behave." *Bell*, 982 F.3d at 481; *Jackson*, 648 F. Supp. 3d at 1047.[3] Based upon these cases, Plaintiff alleged

---

[3] Further support for Plaintiff's position is found in *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503 (2d Cir. 1997), where the District Court noted that "100%" "could be read as indicating that the bottle contains nothing but [the product] . . . ." *Id.* at 1510. More recently, this Court held that "the words 'pure' and '100% natural' indicate the absolute absence of contaminants." *Axon v. Florida's Natural Growers, Inc.*, 813 F. App'x 701, 705 (2d Cir. 2020).

The same year as Plaintiff brought her action in the Northern District of New York, another District Court within this Circuit found it "plausible" that "100% Pure Unfiltered Honey" could be understood "to mean the final honey would be free of substances other than honey," namely, "the biocide glyphosate, an artificial chemical and potential carcinogen." *Scholder v. Sioux Honey Association Cooperative*, No. 16-cv-5369, 2022 WL 125742, at *1, *4 (E.D.N.Y. Jan. 13, 2022) (denying dismissal, where glyphosate was not disclosed in the honey's ingredient list).

the "100%," on Defendant's product label "provide[d] reason to think that consumers understand '100% [Arabica Coffee]' to mean that the [coffee] does not have the additives," *viz*., "added potassium." [A. 64 (quoting *Bell*, 982 F.3d at 481–82 ("Reasonable consumers' expectations about the need to use [] additives [] cannot be decided as a matter of law.")); *see* A. 10, 13 ¶¶ 20, 46 ("Plaintiff saw and relied on the '100% Arabica Coffee' statement to believe the contents included only ground coffee and not any additives.")].

Plaintiff's allegations, that "100% Arabica Coffee," meant "[its] contents included only ground coffee and not any additives," is "both provable and not 'so patently hyperbolic that any allegations that it misled consumers are facially implausible.' " *MacNaughton v. Young Living Essential Oils, LC*, 67 F.4th 89, 96 (2d Cir. 2023) (reversing dismissal, in part, because " 'Therapeutic-grade' [] is not a subjective or vague term"). This is confirmed by its dictionary definition as "completely," supporting Appellant's argument that plaintiff and "a significant portion of consumers read the label[] as promising pure [coffee] without added ingredients."[4] *Bell*, 982 F.3d at 482.

---

[4] One hundred percent, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/one-hundred-percent (last visited April 29, 2025).

## B.     Lack of "Existing Precedents"

Notwithstanding this authority, the District Court concluded as a matter of law " '100% Ground Arabica Coffee' unambiguously means that it contains 100% ground coffee (i.e., there were no whole beans present) and that the coffee was made of 100% Arabica coffee beans." [A. 156].[5]   Although the District Court carefully distinguished each of these cases in reaching this holding, it disregarded this Court's guidance in *Gurary*, that it should take Sheehan's research into account when determining whether Rule 11(b)(2) had been violated.   *See* 235 F.3d at 797.   In the context of the "reasonable consumer," neither the Second Circuit, nor the New York

---

[5] One District Judge humbly recognized that "[a] federal trial judge, with a background and experience unlike that of most consumers, is hardly in a position to declare" that because he was able to recognize certain representatives as "a far-fetched opinion and not making a statement of fact," the reasonable consumer must also be able to make such distinction.   The Court denied a motion on the pleadings and required the parties to produce facts and expert opinion to guide the Court on the issue of the reasonable consumer.   *See Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 407 (E.D.N.Y. 2004).

Indeed, the old adage that reasonable minds can differ is borne out in case law regarding misleading product labeling, and merely because one judge disagrees with counsel's theories and finds them to be without merit does not render them "frivolous."   *Compare Bates v. Abbott Labs.*, 727 F. Supp. 3d 194, 213–14 (N.D.N.Y. 2024) (dismissing allegations that Ensure beverages "give the false impression that the products are healthy and provide complete nutrition," based on added sugar content), *aff'd*, No. 24-919-cv, 2025 WL 65668 (2d Cir. Jan. 10, 2025) (summary order), *with LeGrand v. Abbott Labs.*, 655 F. Supp. 3d 871, 891 (N.D. Cal. 2023) (concluding "it reasonable that a consumer could be misled by [Ensure] packaging promoting the products as 'Complete, Balanced Nutrition' and 'for everyday health,' which implies that they help rather than harm consumer health," because "added sugar content [] makes them harmful to health"). *Compare Brockington v. Dollar Gen. Corp.*, 695 F. Supp. 3d 487, 505 (S.D.N.Y. 2023) (sustaining claims for honey graham crackers, related to sweetened flavor of product), *with Hauger v. Dollar Gen. Corp.*, No. 21-cv-01270, 2022 WL 2532487, at *4 (C.D. Ill. 2022) (dismissing similar allegations related to identical product).

12

Court of Appeals, has "[drawn a] distinction [] between a position which is merely 'losing' and one which is both 'losing and sanctionable.' " *Securities Indus. Ass'n*, 898 F.2d at 321 (quoting *Motown Productions Inc. v. Cacomm Inc.*, 849 F.2d 781, 785 (2d Cir. 1988)). Rather, without any analysis of how, under these existing precedents, there was "no chance of success and no reasonable argument to extend, modify or reverse the law as it stands," the District Court reached the bald conclusion that Sheehan had commenced the action in bad faith. [R. 158]. *See Mareno*, 910 F.2d at 1047. Reaching this conclusion was contrary to this Court's directive, that in imposing Rule 11 sanctions, the District Court was to " 'resolve all doubts in favor of the signer.' " *Associated Indem. Corp.*, 961 F.2d at 34–35 (quoting *Motown Prods., Inc.* 849 F.2d at 785).

Even accepting the District Court's finding that the Complaint "did not allege that a reasonable consumer would understand '100% Arabica Coffee' as meaning anything other than coffee that is entirely from the Arabica coffee plant," Sheehan "made colorable arguments supporting a broader standard." *Weiss*, 2021 WL 6128437, at *3 (citing *Middle States Knowlton Corp. v. Esic Capital Inc.*, No. 82-cv-1911, 1985 WL 7441, at *8 (D.D.C. 1985) ) (reversing sanction based on Fed. R. Civ. P. 11(b)(2), because appellant "cited a district court case that rejected the appellees' argument that "one loan cannot constitute a 'business' "). Though evaluating deception is an "objective test," New York Courts recognize the

13

"reasonable consumer" refers to "the vast multitude . . . including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions." *Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 273 (1977) (reinstating complaint, based on Legislature's expansive definition of "deceptive acts," under GBL §§ 349–50); *accord Paradowski v. Champion Petfoods USA Inc.*, No. 22-962-cv, 2023 WL 3829559, at *2 (2d Cir. 2023) (quoting *Guggenheimer*, 43 N.Y.2d at 273).

It is respectfully submitted that " '[h]owever faulty,' [Sheehan's] positions 'were not so untenable as a matter of law as to necessitate sanctions.' " *Id.* (quoting *Salovaara v. Eckert*, 222 F.3d 19, 34 (2d Cir. 2000)). "Indeed, '[t]he mere fact that' [numerous] court[s] in [] different jurisdiction[s] agreed with [Sheehan] 'is enough, in the absence of controlling authority to the contrary, to support a good faith argument for extension . . . of existing law.' " *Id.* (quoting *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 830–31 (2d Cir. 1992)). In contrast to *Salovaara*, Sheehan's position went beyond "some broad language" in these cases, such that it cannot be said "that [Sheehan's] arguments were frivolous or made in bad faith." 222 F.3d at 29–30 (counsel's arguments were not in bad faith or frivolous, "and were supported by existing out-of-circuit law or good faith arguments to extend, modify or reverse the law of this Court"). In light of the foregoing, it is respectfully submitted Sheehan's arguments "were not so obviously foreclosed by precedent as to make

14

them legally indefensible. . . . and [Sheehan's] position 'was not unsupported by case law even though the cases he cited were not binding on the court adjudicating [Plaintiff's] claims.' " *Kim v. Kimm*, 884 F.3d 98, 106–07 (2d Cir. 2018) (quoting *Fishoff v. Coty Inc.*, 634 F.3d 647, 655 (2d Cir. 2011)); *see also Medina v. City of New York*, No. 19-cv-9412 (AJN), 2020 WL 7028688, at \*15 (S.D.N.Y. Nov. 30, 2020); *compare Artemov v. TransUnion, LLC*, 20-cv-1892 (BMC), 2020 WL 6146624, at \*2 (E.D.N.Y. Oct. 20, 2020), *with O'Malley v. New York City Transit Authority*, 896 F.2d 704, 709 (2d Cir. 1990) (upholding sanctions where plaintiff "failed to allege even one act that could qualify as racketeering activity under RICO," and "no reasonable argument could be advanced to change or extend the present law").

## POINT II

### NO NOTICE AS TO VIOLATION OF RULE 11(B)(3)

As the District Court "initiate[d] the sanctions process *sua sponte*," it was required to "enter an order describing the specific conduct that appears to violate [the rule] and directing an attorney . . . to show cause why it has not violated" Rule 11. *Martens v. Thomann*, 273 F.3d 159, 178 (2d Cir. 2001) (quoting Fed. R.

15

Civ. P. 11(c)(3)).[6] In its decision of July 12, 2023, dismissing the Complaint, the District Court:

> ORDER[ED] that Mr. Sheehan show cause why he has not violated Rule 11(b)(2) in the manner noted above and why, if the Court finds that he has violated said Rule, the Court should not impose sanctions against him for such violation. In this regard, the Court instructs Mr. Sheehan to file with the Court a letter brief, not to exceed five pages, setting forth his position regarding this matter on or before July 28, 2023.

[A. 111]. However, on November 30, 2023, the District Court implicated, without citing, Fed. R. Civ. P. 11(b)(3), concluding Sheehan filed the Complaint "without providing any support for Plaintiff's allegations." [A. 145]. The District Court then engaged in a discussion of nearly six (6) pages regarding Sheehan's factual investigation into the contention that Defendant's product contained a potassium additive. [A. 145–51].

It is respectfully submitted that any consideration of the adequacy of Sheehan's factual investigation is irrelevant, since the Court did not put Sheehan on notice that it was considering sanctions pursuant to Fed. R. Civ. P. 11(b)(3), which requires factual contentions to have evidentiary support. *See Nuwesra v. Merrill*

---

[6] Citing pre-1993 Amendment, Fed. R. Civ. P. 11(c)(1)(B) ("On Court's Initiative. On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto."), *compare with*, post-1993 Amendment, Fed. R. Civ. P. 11(c)(3) ("On the Court's Initiative. On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).")

*Lynch Fenner & Smith Inc.*, 174 F.3d 87, 93 (2d Cir. 1999) (vacating sanctions against attorney where "court's written order stated only that "[t]he court will be awarding attorney's fees based on one or more of the following provisions: 42 U.S.C. § 12205; 28 U.S.C. § 1927; [Fed. R. Civ. P.] 11(c)(3)[7]; and the inherent power of the district court"). "Rule 11 and principles of due process require that 'the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered." *Star Mark Mgmt. Inc. v. Koon Chun Hing Kee Soy & Sauce Factory*, 682 F.3d 170, 175 (2d Cir. 2012) (quoting *Schlaifer Nance & Co.*, 194 F.3d at 334); *see Ametex Fabrics Inc. v. Just In Materials Inc.*, 140 F.3d 101, 109 (2d Cir. 1998) ("Absent a statement from the district court explicitly informing [counsel] that it was considering sanctions . . . for making false representations . . . [he] was entitled to assume that the court was considering sanctions only for the entirely separate act of filing the third-party action in bad faith.").

The District Court's Order, citing only Fed. R. Civ. P. 11(b)(2), falls short of the "specific notice of the conduct alleged to be sanctionable," as required in this Circuit. *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96-97 (2d Cir. 1997). [A. 145]. Since "only conduct explicitly referred to in the instrument providing notice is

---

[7] The District Court erroneously cited to the pre-1993 version of the statute, as Fed. R. Civ. P. 11(c)(1)(B).

17

sanctionable," and the District Court's Order to Show Cause was bereft of any reference to Rule 11(b)(3), "sanctioning [Sheehan] for conduct beyond that specified" was not supported. *See StreetEasy Inc. v. Chertok*, 752 F.3d 298, 310–11 (2d Cir. 2014) ; *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1331 (2d Cir. 1995). As a result, to the extent the Court's extensive discussion regarding the lack of evidentiary support for the allegations regarding potassium additives served as a basis for the Court's imposition of sanctions, such was violative of Sheehan's due process rights, and cannot support the finding of civil contempt. The District Court's finding of fact on this issue is clearly erroneous and therefore an abuse of discretion.

## POINT III

### IN ANY EVENT, IT IS CLEAR SHEEHAN CONDUCTED THE NECESSARY INVESTIGATION

Though the District Court's Show Cause Order only identified Fed. R. Civ. P. 11(b)(2) as a basis to impose sanctions, Sheehan's response demonstrated there was "an objectively reasonable evidentiary basis for the claim." *Calloway v. Marvel Ent. Grp.*, 854 F. 2d 1452, 1470 (2d Cir. 1988), *rev'd on other grounds sub nom. Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120 (1989). To avoid sanctions under Rule 11(b)(3), however, Sheehan was not required to "prove the truth of their accusation, only that it was not 'utterly lacking in support.' " *Kiobel v. Millson*, 592 F.3d 78, 82 (2d Cir. 2010) (quoting *Storey v. Cello Holdings LLC*, 347 F.3d 370, 389 (2d Cir.

18

2003)); *see Chum Limited v. Lisowski*, No. 98-cv-5060, 2001 WL 243541, at \*14 (S.D.N.Y. 2001) (Rule 11(b)(3) typically requires "statements rise to the level of direct falsehood").

## A.    Complaint Was Not Utterly Lacking Support

As part of the briefing on Defendant's motion to dismiss, Plaintiff filed with the Court a "report" which set forth the basis for the allegations in the Complaint that Defendant used a potassium additive in its ground coffee. [A. 68–70]. That report described how Puroast Coffee had undertaken an investigation, including retaining an independent "academic-level pH analysis" of Defendant's product, to confirm the suspected addition of potassium. [A. 76].

Following Sheehan's submission of two (2) letter briefs responding to the Court's Order to Show Cause on the absence of any violation of Rule 12(b)(2) [A. 113–23], Sheehan personally appeared before the Court, with counsel, where the Court found fault with Sheehan for failing to provide the data from his independent testing of the product to the Court either in connection with the briefing on the motion to dismiss, or in response to the Court's Order to Show Cause citing Rule 11(b)(2). [A. 147]. In response, Sheehan submitted a Declaration appending the laboratory testing results. [A. 124–39].[8]

---

[8] At these preliminary stages of the case, Sheehan was under no obligation, either to the Court or to Defendant to provide these results of independent testing obtained by counsel as part of an

Rather than "accepting the allegations" in the Complaint as true, as the District Court was required to do, it cited Plaintiff for her failure in response to a motion to dismiss to cite the reports or data supporting her claims. [A. 102]. *See, e.g.*, *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013)). The District Court subsequently declined to accept the subsequently identified "report," describing it as "an advertisement for Puroast Coffee Company ('Puroast'), [] a competitor in the coffee market, rather than a scientific study." [A. 146]. In essence, the Court found the Complaint lacked merit based upon its own credibility determination at the motion-to-dismiss stage. As a matter of binding law, the District Court abused its discretion by discrediting "factual content that allow[ed] the court to draw the reasonable inference that the [D]efendant [was] liable for the misconduct alleged." *See Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) ("[P]lausible grounds does not impose a probability requirement at the pleading stage . . . ."). Potentially based upon this improper credibility determination, the Court then imposed sanctions on Sheehan for failing to "provid[e] any support for

---

independent investigation into the merits of the case. *See Kaplan v. Lebanese Canadian Bank SAL*, 999 F.3d 842, 860 (2d Cir. 2021) ("[A] plaintiff is not required to plead evidence . . . ."); *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) ("At the pleading stage, [plaintiff] need not prove the accuracy of the [Department of Consumer Affairs]'s findings or the rigor of its methodology; he need only generally allege facts that, accepted as true, make his alleged injury plausible.").

Plaintiff's allegations." [A. 145]. It is respectfully submitted the Court's rejection of Sheehan's evidentiary support at this early stage of the proceedings was improper, and certainly should not have served as the basis for any sanctions imposed, or finding of contempt. *See Kiobel*, 592 F.3d 78, 82. The District Court's "factual finding [wa]s clearly erroneous," because "the only evidence cited by the district court – the [Puroast Report] – shows the sanctioned statement[s] actually had an evidentiary basis." *O'Brien*, 101 F.3d at 1491 (reversing sanctions against attorney based upon Rule 11(b)(3), because "If the relationship [] was as plaintiff describes it, the objectionable telephone calls might reasonably be said to have been made to [his] 'employer.' "),

**B.**    <u>**"Objectively Reasonable" to Rely on Puroast Complaint**</u>

In response to the Court's Show Cause Order, Appellant's Declaration recounted how, "[o]n November 1, 2022, the New York Post ('Post') published an article entitled, 'Starbucks secret: Dark French Roast 'is not 100% coffee,' in which the newspaper reported about a complaint filed with the North Carolina Department of Justice's Consumer Protection Division claiming Starbucks Dark French Roast Coffee 'significantly exceed[ed]' expected levels of potassium, compared with other similar coffee beans sold at retail locations." [A. 124]. This was consistent with the Complaint's allegations that (1) "Recent reports based on laboratory analysis indicated the Product has significantly greater than expected levels of potassium,"

21

and (2) "According to those knowledgeable about coffee production, this level is likely intentional, because of potassium's recognized use for this purpose." [A. 10 ¶¶ 17–18]. Sheehan described that "[i]t made logical sense to me that a company specializing in low acid coffee would know when competitors sought to manipulate the acidity of their coffee." [A. 100 ¶ 3]. Then, Sheehan investigated Puroast's attorney, David Puryear, Esq., "a member of the North Carolina bar in good standing for the past thirty (30) years, who has focused his practice on complex commercial litigation and whistleblower claims." [A. 100 ¶ 4]. Since the Puroast Complaint was equivalent to a "whistleblower" type allegation, because Puroast had industry knowledge, it reasonably appeared credible.

The District Court found the Complaint's "vague reference to '[r]ecent reports based on laboratory analysis' . . . even if accepted as true, does not plausibly state a claim for relief as required under Rule 8." [A. 103 (citing Fed. R. Civ. P. 8, *Iqbal*, 556 U.S. at 678–81, and *Twombly*, 550 U.S. at 570]. Instead of "accepting the allegations" as true, the District Court imposed sanctions, charging Sheehan as having filed the Complaint "without providing any support for Plaintiff's allegations." [A. 120]. That Sheehan "submitted [a declaration] to the district court recounting the pre-filing inquiry," confirmed "[an] inquiry was made," though the District Court determined this was not "objectively reasonable." *Calloway*, 854 F. 2d at 1470–71 (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1009 (2d

22

Cir. 1986), and *Oliveri*, 803 F.2d at 1268–69) (observing how, "[i]n both *Kamen* and *Oliveri*, the sanctioned attorney submitted an affidavit to the district court recounting the pre-filing inquiry," compared to how "LeFlore never submitted an affidavit to the district court describing a pre-filing inquiry [which] strongly suggests that no inquiry was made").

## C.      Source of Puroast Report Did Not Justify Sanctions

The District Court's conclusion, that Sheehan filed the Complaint "without providing any support for Plaintiff's allegations," hinged largely on how the Puroast Report was prepared by Puroast. [A. 120].  In this respect, courts regularly accept plaintiffs' reliance on a range of third party materials,[9] because Rule 8(a) only requires pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 545 (citing Fed. R. Civ. P. 8(a)(2)) ("plausible grounds does not impose a probability requirement at the pleading stage.").  Based

---

[9] Courts within this District routinely permit litigants to rely on unadjudicated allegations, out-of-court reports, reports by financially interested "short sellers," or investigations by a defendant's competitors. *See*, *i.e.*, *Matrixx Initiatives Inc. v. Siracusano*, 563 U.S. 27, 40 (2011) (permitting plaintiffs to rely on allegations from other lawsuits); *Lea v. TAL Education Group*, 837 F. App'x 20, 28 (2d Cir. 2020) (permitting plaintiffs to rely on "short seller report" by third-party with financial interest); *Levitt v. Bear Stearns & Co.*, 340 F.3d 94, 99-100 (2d Cir. 2003) (accepting reliance on other actions); *Canale v. Colgate-Palmolive Co.*, 258 F. Supp. 3d 312, 317 (S.D.N.Y. 2017) (consumer allegations based on National Advertising Division proceedings initiated by competitor)); *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, No. 13 CV 214(HB), 2014 WL 285103, at *6 (S.D.N.Y. Jan. 27, 2014) (short seller report);

on the New York Post article, and the Puroast Report, "[Sheehan] certainly had some basis for believing that evidence was available to demonstrate" that "greater than expected levels of potassium . . . [were] likely intentional." *Gurary*, 235 F.3d at 802 (citing Fed. R. Civ. P. 11(b)(3)) ("It simply cannot be said at such an early stage [] that Gurary's claims based on the second two purchases would have completely lacked evidentiary support because [he] was never afforded the opportunity to pursue discovery.").

## POINT IV

### SHEEHAN WAS NOT IN CIVIL CONTEMPT

Finally, "the district court's decision to hold the attorney-appellant[] in contempt [is reviewed] under an abuse of discretion standard that is more rigorous than usual." *SerVaas Inc. v. Mills*, 661 F. App'x 7, 9 (2d Cir. 2016) (summary order). Individuals "charged with civil contempt [are] entitled to notice of the allegations, the right to counsel, and a hearing at which the plaintiff bears the burden of proof and the defendant has an opportunity to present a defense." *Schoenberg v. Shapolsky Publishers Inc.*, 971 F.2d 926, 934–35 (2d Cir. 1992), *abrogated on other grounds*, *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343 (2d Cir. 2000). Finding a person in contempt without adequate notice is reversible error. *See Ted Lapidus, S.A.*, 112 F.3d at 97. A "court may hold a party in contempt if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is

24

clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broad. Inc. v. FilmOn.com Inc.*, 814 F.3d 91, 98 (2d Cir. 2016).

Appellant "was notified only that Rule 11[(b)(2)] sanctions were being sought," and the Dismissal Order made no mention of "contempt," such that the requisite notice and opportunity to present a defense to these charges. *See Schoenberg*, 971 F.2d at 934–35. Moreover, there is nothing with the Record that Sheehan failed to comply with any Order issued by the District Court. *See CBS Broadcasting Inc.*, 814 F.3d at 98. The District Court's finding of contempt against Appellant must be vacated.

## CONCLUSION

Based upon the foregoing, it is respectfully submitted there was ample authority to support Plaintiff's contentions in the Complaint, and the District Court's holding there is no chance of success and no reasonable argument to extend, modify or reverse the law, as required by Fed. R. Civ. P. 11(b)(2), was erroneous and an abuse of discretion. Furthermore, the District Court failed to put Sheehan on notice of an intention to impose sanctions pursuant to Rule 11(b)(3) or to find him in contempt of court, such that any such finding or sanctions imposed on that basis are in violation of Sheehan's due process rights. In any event, it is abundantly clear

Sheehan had sufficient factual support to Plaintiff's Complaint to withstand a motion to dismiss on those grounds.  The Order of the District Court should be vacated.

**DATED:**      **April 29, 2025**

        **COSTELLO, COONEY & FEARON, PLLC**

/s/Daniel Rose
_____
**PAUL G. FERRARA**
**DANIEL R. ROSE**
**Attorneys for Non-Party, *Spencer Sheehan***
**Office and Post Office Address**
**211 West Jefferson Street**
**Syracuse, NY 13202**
**Telephone: (315) 422-1152**

**PAUL G. FERRARA**
**DANIEL R. ROSE,**
   **Of Counsel**

26

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure, the foregoing brief is in 14-Point Times Roman proportional font, and contains 6,495 words, and thus is in compliance with the type-volume limitation set forth in Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure.

April 29, 2025

/s/Daniel Rose

**Certificate of Service**

I certify that on April 29, 2025, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | Electronic Filing | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Appellee | ☒ | ☐ | ☐ | ☐ |
| Appellant | ☒ | ☐ | ☐ | ☐ |
| Court | ☒ | ☐ | ☐ | ☐ |

/s/ Daniel Rose