# 25-189

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

———

SPENCER SHEEHAN, ESQ., SHEEHAN AND ASSOCIATES, P.C.,

*Respondents-Appellants,*

KRISTIE BROWNELL, Individually and
on Behalf of All Others Similarly Situated,

*Plaintiff,*

vs.

STARBUCKS CORPORATION,

*Defendant-Appellee.*

———

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK.

# APPENDIX

———

COSTELLO, COONEY & FEARON, PLLC
DANIEL R. ROSE, ESQ.
*Attorneys for Non-Party-Appellants*
  *Spencer Sheehan, Esq. and*
  *Sheehan and Associates, P.C.*
211 W. Jefferson Street
Syracuse, New York 13202
Telephone: (315) 422-1152
Email: drose@ccf-law.com

**BATAVIA LEGAL PRINTING, INC.— Telephone (866) 768-2100**

## TABLE OF CONTENTS

Page

Docket Entries ........................................................................................................1

Complaint, Filed November 13, 2022 ....................................................................8

Waiver of the Service of Summons, Filed January 23, 2023...............................18

Letter From Spencer Sheehan to Magistrate Judge Andrew T. Baxter,
Filed February 6, 2023 .........................................................................................19

Letter From Paul W. Garrity to the Honorable Frederick J. Scullin, Jr.,
Filed March 9, 2023 ..............................................................................................21

Notice of Motion to Dismiss Complaint, Filed March 16, 2023 .........................22

Memorandum of Law In Support of Defendant Starbucks Corporation's
Motion to Dismiss Complaint, Filed March 16, 2023 ..........................................24

Plaintiff's Memorandum of Law In Opposition to Defendant's Motion
to Dismiss Complaint, Filed April 12, 2023 ........................................................50

      Exhibit "A" -   Article, "What is Good Coffee? Its Certainly
                     Not Starbucks Dark French Roast Laced with
                     Potassium" .............................................................74

Defendant Starbucks Reply in Support of Motion to Dismiss Complaint,
Filed April 25, 2023 ..............................................................................................78

Memorandum Decision and Order, Filed July 12, 2023.......................................93

Letter from Spencer Sheehan to the Honorable Frederick J. Scullin, Jr.,
Filed July 23, 2023 .............................................................................................113

Letter from Paul G. Ferrara to the Honorable Frederick J. Scullin, Jr.,
Filed August 14, 2023 ........................................................................................119

II

Page

Declaration of Spencer Sheehan, Esq., In Opposition to Order to Show Cause, Filed August 29, 2023 ...................................................................................124

Exhibit "A" – Certificates of Analysis .......................................................131

Memorandum Decision and Order of the Honorable Frederick J. Scullin, Jr., Filed November 30, 2023 ...............................................................................140

Order of the Honorable Frederick J. Scullin, Jr., Filed January 2, 2025 ...............160

Notice of Appeal of Non-Party Spencer Sheehan, Esq. and Sheehan & Associates, PC, Filed January 24, 2025 ...............................................162

1

## Docket Entries.

APPEAL,CLOSED

## U.S. District Court
## Northern District of New York - Main Office (Syracuse) [NextGen CM/ECF Release 1.8 (Revision 1.8.3)] (Syracuse)
## CIVIL DOCKET FOR CASE #: 5:22-cv-01199-FJS-ATB

Brownell v. Starbucks Coffee Company
Assigned to: Senior Judge Frederick J. Scullin, Jr
Referred to: Magistrate Judge Andrew T. Baxter
Cause: 28:1332 Diversity-Fraud

Date Filed: 11/13/2022
Date Terminated: 07/12/2023
Jury Demand: Plaintiff
Nature of Suit: 370 Other Fraud
Jurisdiction: Diversity

### Plaintiff

**Kristie Brownell**
*individually and on behalf of all others
similarly situated*

represented by **Spencer Sheehan**
Sheehan & Associates, P.C.
60 Cuttermill Road Ste 412
Great Neck, NY 11021
516-268-7080
Fax: 516-234-7800
Email: spencer@spencersheehan.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Theodore T. Hillebrand**
Sheehan & Associates
60 Cuttermill Road - Suite 412
Great Neck, NY 11021
516-234-7800
Email: thillebrand@spencersheehan.com
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**Starbucks Coffee Company**

represented by **Paul W. Garrity**
Sheppard Mullin Richter & Hampton LLP
30 Rockefeller Plaza
39th Floor
New York, NY 10112-0002
212-653-8700
Fax: 212-653-8701
Email: pgarrity@sheppardmullin.com
*ATTORNEY TO BE NOTICED*

**Robert J. Guite**
Sheppard Mullin Richter & Hampton LLP
4 Embarcadero Center, 17th Floor
San Francisco, CA 94111
415-774-3176
Fax: 415-434-3947

# 2

## Docket Entries.

Email: rguite@sheppardmullin.com
*ATTORNEY TO BE NOTICED*

**Sascha Henry**
Sheppard, Mullin, Richter & Hampton
350 S. Grand Ave., 40th Floor
Los Angeles, CA 90071-3460
213-617-5562
Email: shenry@sheppardmullin.com
*ATTORNEY TO BE NOTICED*

V.

Respondent

**Spencer Sheehan**
Sheehan & Associates, P.C.
60 Cuttermill Road
Suite 412
Great Neck, NY 11021
516-236-6456

represented by **Daniel R. Rose**
Costello, Cooney & Fearon, PLLC
211 W. Jefferson Street - Suite 1
Syracuse, NY 13202
315-422-1152
Email: drose@ccf-law.com
*ATTORNEY TO BE NOTICED*

**Paul G. Ferrara**
Costello, Cooney & Fearon, PLLC
211 W. Jefferson Street
Syracuse, NY 13202
315-422-1152
Fax: 315-422-1139
Email: pferrara@ccf-law.com
*ATTORNEY TO BE NOTICED*

Respondent

**Sheehan & Associates, P.C.**
60 Cuttermill Road
Suite 412
Great Neck, NY 11021
516-236-6456

represented by **Daniel R. Rose**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Paul G. Ferrara**
(See above for address)
*ATTORNEY TO BE NOTICED*

Amicus

**Ashley Furniture Industries, LLC**

| Date Filed | # | Docket Text |
|---|---|---|
| 11/13/2022 | 1 | COMPLAINT against Starbucks Coffee Company (Filing fee $402 receipt number ANYNDC-6097716) filed by Kristie Brownell. (Attachments: # 1 Civil Cover Sheet)(mgh) (Entered: 11/15/2022) |
| 11/15/2022 | 2 | Summons Issued as to Starbucks Coffee Company. (mgh) (Entered: 11/15/2022) |
| 11/15/2022 | 3 | G.O. 25 FILING ORDER ISSUED: Initial Conference set for 2/13/2023 10:00 AM by Telephone before US Magistrate Judge Andrew T. Baxter. Civil Case Management Plan |

# 3

## Docket Entries.

| | | |
|---|---|---|
| | | must be filed and Mandatory Disclosures are to be exchanged by the parties on or before 2/6/2023. (Pursuant to Local Rule 26.2, mandatory disclosures are to be exchanged among the parties but are NOT to be filed with the Court.) (mgh) (Main Document 3 replaced on 11/15/2022) (ztc, ). (Entered: 11/15/2022) |
| 11/15/2022 | | CLERK'S CORRECTION OF DOCKET ENTRY re 3 G.O. 25 Filing Order, Clerk replaced the document as the initial copy had the incorrect date of the conference as 2/13/2022 when the correct date is 2/13/2023. (ztc) (Entered: 11/15/2022) |
| 01/23/2023 | 4 | WAIVER OF SERVICE Returned Executed by Kristie Brownell. Starbucks Coffee Company waiver sent on 1/23/2023, answer due 3/24/2023. (Sheehan, Spencer) (Entered: 01/23/2023) |
| 02/06/2023 | 5 | *Joint* Letter Motion from Spencer Sheehan for Kristie Brownell requesting Extension of Time for Conference and CMP submitted to Judge Andrew T. Baxter . (Sheehan, Spencer) (Entered: 02/06/2023) |
| 02/08/2023 | 6 | TEXT ORDER: Granting 5 Letter Request for an adjournment of the Rule 16 conference. The Initial Rule 16 Conference is reset for **4/12/2023 at 10:00 AM before US Magistrate Judge Andrew T. Baxter by telephone.** The parties are directed to dial +1 315-691-0477 and enter ID code 801 633 239# to connect to the conference. The Civil Case Management Plan must be filed and Mandatory Disclosures are to be exchanged by the parties on or before 4/5/2023. (Pursuant to Local Rule 26.2, mandatory disclosures are to be exchanged among the parties but are NOT to be filed with the Court.) SO ORDERED by US Magistrate Judge Andrew T. Baxter on February 8, 2023. (rep) (Entered: 02/08/2023) |
| 03/09/2023 | 7 | NOTICE OF APPEARANCE by Paul W. Garrity on behalf of Starbucks Coffee Company (Garrity, Paul) (Entered: 03/09/2023) |
| 03/09/2023 | 8 | FRCP 7.1 CORPORATE DISCLOSURE STATEMENT by Starbucks Coffee Company identifying Other Affiliate Starbucks Corporation for Starbucks Coffee Company.. (Garrity, Paul) (Entered: 03/09/2023) |
| 03/09/2023 | 9 | *Consent* Letter Motion from Paul W. Garrity for Starbucks Coffee Company requesting So Ordered Briefing Schedule for Defendant's Motion to Dismiss submitted to Judge Frederick J. Scullin, Jr. . (Garrity, Paul) (Entered: 03/09/2023) |
| 03/10/2023 | 10 | TEXT ORDER: Granting the proposed motion briefing scheduled noted within the 9 Letter Request. Defendant's Motion to Dismiss is due by 3/16/2023. Plaintiff's response in opposition will be due by April 12, 2023 and Defendant's reply is due April 25, 2023. IT IS SO ORDERED by Senior Judge Frederick J. Scullin, Jr on March 10, 2023. (rep) (Entered: 03/10/2023) |
| 03/14/2023 | 11 | MOTION for Limited Admission Pro Hac Vice of Sascha Henry Filing fee $100, receipt number ANYNDC-6230821. (Attachments: # 1 Declaration Declaration of Sponsor for Pro Hac Vice Admission, # 2 Supplement Attorney Registration Form, # 3 Supplement Petition for Admission to Practice, # 4 Supplement Certificate of Good Standing) Motions referred to Andrew T. Baxter. (Garrity, Paul) (Entered: 03/14/2023) |
| 03/15/2023 | 12 | TEXT ORDER: Granting 11 Motion for Limited Admission Pro Hac Vice for Sascha Henry. Counsel is hereby advised that as of January 16, 2018, the NYND has converted to NextGen. Due to this conversion, you must now register for Pro Hac Vice access through your PACER account. **This is the only notice you will receive concerning this requirement. <u>You will not have access to electronically file in this case until your Pro Hac Vice request has been processed through the PACER system.</u>** Step-by-step instructions on how to complete this process are available at http://www.nynd.uscourts.gov/attorney-admissions-nextgen. Attorney Henry is/are hereby admitted to practice in this action on behalf of defendant. Counsel is reminded that, once |

4

## Docket Entries.

| | | |
|---|---|---|
| | | the above is accomplished, a NOTICE OF APPEARANCE MUST FILED IN THIS ACTION or you will not receive electronic notifications in the case. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 3/15/2023. (kmc) (Entered: 03/15/2023) |
| 03/16/2023 | 13 | NOTICE OF APPEARANCE by Sascha Henry on behalf of Starbucks Coffee Company (Henry, Sascha) (Entered: 03/16/2023) |
| 03/16/2023 | 14 | MOTION to Dismiss for Failure to State a Claim filed by Starbucks Coffee Company. Motion returnable before Judge Frederick J. Scullin, Jr. Response to Motion due by 4/6/2023. Reply to Response to Motion due by 4/13/2023 (Attachments: # 1 Memorandum of Law, # 2 Certificate of Service) (Henry, Sascha) (Entered: 03/16/2023) |
| 03/16/2023 | 15 | MOTION for Limited Admission Pro Hac Vice of Robert J. Guite Filing fee $100, receipt number ANYNDC-6233420. (Attachments: # 1 Declaration Declaration of Sponsor for Pro Hac Vice Admission, # 2 Supplement Attorney Registration Form, # 3 Supplement Petition for Admission to Practice, # 4 Supplement Certificate of Good Standing) Motions referred to Andrew T. Baxter. (Garrity, Paul) (Entered: 03/16/2023) |
| 03/17/2023 | 16 | TEXT ORDER: The Rule 16 conference set for 4/12/2023 and the 4/5/2023 deadline for the submission of a joint Civil Case Management Plan and exchange of Mandatory Disclosures are ADJOURNED WITHOUT DATE. The hearing and related deadlines will be reset, if deemed necessary, after disposition of the 14 motion to dismiss. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 3/17/2023. (kmc) (Entered: 03/17/2023) |
| 03/17/2023 | 17 | TEXT ORDER: Granting 15 Motion for Limited Admission Pro Hac Vice for Robert J. Guite. Counsel is hereby advised that as of January 16, 2018, the NYND has converted to NextGen. Due to this conversion, you must now register for Pro Hac Vice access through your PACER account. **This is the only notice you will receive concerning this requirement. You will not have access to electronically file in this case until your Pro Hac Vice request has been processed through the PACER system.** Step-by-step instructions on how to complete this process are available at http://www.nynd.uscourts.gov/attorney-admissions-nextgen. Attorney Guite is hereby admitted to practice in this action on behalf of defendant. Counsel is reminded that, once the above is accomplished, a NOTICE OF APPEARANCE MUST FILED IN THIS ACTION or you will not receive electronic notifications in the case. So Ordered by U.S. Magistrate Judge Andrew T. Baxter on 3/17/2023. (kmc) (Entered: 03/17/2023) |
| 03/20/2023 | 18 | NOTICE OF APPEARANCE by Robert J. Guite on behalf of Starbucks Coffee Company (Guite, Robert) (Entered: 03/20/2023) |
| 04/11/2023 | 19 | NOTICE OF APPEARANCE by Theodore T. Hillebrand on behalf of Kristie Brownell (Hillebrand, Theodore) (Entered: 04/11/2023) |
| 04/12/2023 | 20 | RESPONSE in Opposition re 14 MOTION to Dismiss for Failure to State a Claim filed by Starbucks Coffee Company. Motion returnable before Judge Frederick J. Scullin, Jr. filed by Kristie Brownell. (Attachments: # 1 Exhibit(s) Exhibit A)(Hillebrand, Theodore) (Entered: 04/12/2023) |
| 04/14/2023 | 21 | TEXT ORDER: In light of the fact that Plaintiff did not file her response in opposition to Defendants motion to dismiss until April 12, 2023, the Court extends the time for Defendant to file its reply to Plaintiffs opposition until April 19, 2023. IT IS SO ORDERED by Senior Judge Frederick J. Scullin, Jr on April 14, 2023. (rep) (Entered: 04/14/2023) |
| 04/14/2023 | 22 | TEXT ORDER: Upon closer review of the docket, the Court notes that a text order was entered granting an agreed-upon briefing motion schedule. *See* Dkt. No. 10. In light of this, the Court sees that Plaintiff's 20 Response is timely and Defendant's reply is due by April |

5

## Docket Entries.

| | | |
|---|---|---|
| | | 25, 2023. IT IS SO ORDERED by Senior Judge Frederick J. Scullin, Jr on April 14, 2023. (rep) (Entered: 04/14/2023) |
| 04/25/2023 | 23 | REPLY to Response to Motion re 14 MOTION to Dismiss for Failure to State a Claim filed by Starbucks Coffee Company. Motion returnable before Judge Frederick J. Scullin, Jr. filed by Starbucks Coffee Company. (Henry, Sascha) (Entered: 04/25/2023) |
| 07/12/2023 | 24 | MEMORANDUM-DECISION AND ORDER: The Court hereby ORDERS that Defendant's motion to dismiss, see Dkt. No. 14 , is GRANTED; and the Court further ORDERS that Mr. Sheehan show cause why he has not violated Rule 11(b)(2) in the manner noted above and why, if the Court finds that he has violated said Rule, the Court should not impose sanctions against him for such violation. In this regard, the Court instructs Mr. Sheehan to file with the Court a letter brief, not to exceed five pages, setting forth his position regarding this matter on or before **July 28, 2023**; and the Court further ORDERS that the Clerk of the Court shall enter judgment in Defendant's favor and close this case. Signed by Senior Judge Frederick J. Scullin, Jr on July 12, 2023. (rep) (Entered: 07/12/2023) |
| 07/12/2023 | | Set Deadlines: Deadline for plaintiff's counsel to comply with the 24 Order is 7/28/2023. (rep) (Entered: 07/12/2023) |
| 07/12/2023 | 25 | JUDGMENT: IT IS ORDERED AND ADJUDGED that Defendant's motion to dismiss, see Dkt. No. 14 , is GRANTED; and it is further ORDERED that Mr. Sheehan show cause why he has not violated Rule 11(b)(2) in the manner noted and why, if the Court finds that he has violated said Rule, the Court should not impose sanctions against him for such violation. In this regard, the Court instructs Mr. Sheehan to file with the Court a letter brief, not to exceed five pages, setting forth his position regarding this matter on or before July 28, 2023; and the Court further ORDERS that the Clerk of the Court shall enter judgment in Defendant's favor and close this case. (rep) (Entered: 07/12/2023) |
| 07/23/2023 | 26 | RESPONSE TO ORDER TO SHOW CAUSE filed by Kristie Brownell. (Sheehan, Spencer) (Entered: 07/23/2023) |
| 07/27/2023 | | TEXT NOTICE OF HEARING: An Order to Show Cause Hearing as to the 24 Memorandum-Decision and Order regarding Attorney Spencer Sheehan is set for 8/22/2023 at 10:30 AM in **Syracuse** before Senior Judge Frederick J. Scullin Jr. Only Attorney Spencer Sheehan need appear.(rep) (Entered: 07/27/2023) |
| 08/03/2023 | 27 | NOTICE OF APPEARANCE by Paul G. Ferrara on behalf of Spencer Sheehan, Sheehan & Associates, P.C. (Ferrara, Paul) (Entered: 08/03/2023) |
| 08/03/2023 | 28 | CERTIFICATE OF SERVICE by Spencer Sheehan, Sheehan & Associates, P.C. re 27 Notice of Appearance (Ferrara, Paul) (Entered: 08/03/2023) |
| 08/03/2023 | 29 | NOTICE OF APPEARANCE by Daniel R. Rose on behalf of Spencer Sheehan, Sheehan & Associates, P.C. (Rose, Daniel) (Entered: 08/03/2023) |
| 08/03/2023 | 30 | CERTIFICATE OF SERVICE by Spencer Sheehan, Sheehan & Associates, P.C. re 29 Notice of Appearance (Rose, Daniel) (Entered: 08/03/2023) |
| 08/07/2023 | 31 | Letter Motion from Daniel R. Rose for Spencer Sheehan, Sheehan & Associates, P.C. requesting Permission to File Supplemental Submission submitted to Judge Scullin . (Rose, Daniel) (Entered: 08/07/2023) |
| 08/07/2023 | 32 | CERTIFICATE OF SERVICE by Spencer Sheehan, Sheehan & Associates, P.C. re 31 Letter Motion from Daniel R. Rose for Spencer Sheehan, Sheehan & Associates, P.C. requesting Permission to File Supplemental Submission submitted to Judge Scullin (Rose, Daniel) (Entered: 08/07/2023) |

**6**

### Docket Entries.

| 08/07/2023 | 33 | TEXT ORDER: Granting the 31 Letter Request by Costello Cooney & Fearon, PLLC to file a supplemental submission as to Spencer Sheehan. Their supplemental submission is due by 8/14/2023 and shall not exceed 5 pages. IT IS SO ORDERED by Senior Judge Frederick J. Scullin, Jr on August 7, 2023. (rep) (Entered: 08/07/2023) |
|---|---|---|
| 08/14/2023 | 34 | RESPONSE TO ORDER TO SHOW CAUSE filed by Spencer Sheehan, Sheehan & Associates, P.C.. (Ferrara, Paul) (Entered: 08/14/2023) |
| 08/14/2023 | 35 | CERTIFICATE OF SERVICE by Spencer Sheehan, Sheehan & Associates, P.C. re 34 Response to Order to Show Cause (Ferrara, Paul) (Entered: 08/14/2023) |
| 08/22/2023 | | TEXT Minute Entry for proceedings held before Senior Judge Frederick J. Scullin, Jr.: Order to Show Cause hearing held on August 22, 2023 re: 43 Memorandum-Decision and Order. Paul Ferrara, Esq. speaks on behalf of Spencer Sheehan, Esq. Judge reserves on his decision for show cause. Appearances: Paul Ferrara, Esq. for Spencer Sheehan, Esq. CRD: Rose Pieklik. [Court Reporter: Hannah Cavanaugh]. Time: 10:38AM to 10:50AM. (rep) (Entered: 08/22/2023) |
| 08/22/2023 | 36 | MOTION FOR LEAVE TO FILE AMICUS BRIEF: Filed by Ashley Furniture Industries, LLC. (Attachments: # 1 Mailing Envelope) (rep) (Entered: 08/23/2023) |
| 08/23/2023 | 37 | TEXT ORDER: The Court has construed the 36 submission by Ashley Furniture Industries, LLC, as a motion for leave to file an Amicus Brief. The Court grants that motion and accepts the Amicus Brief as filed. Attorney Spencer Sheehan is directed to respond to the brief by September 13, 2023, in a letter not exceeding 5 pages. IT IS SO ORDERED by Senior Judge Frederick J. Scullin, Jr on August 23, 2023. (rep) (Entered: 08/23/2023) |
| 08/29/2023 | 38 | RESPONSE TO ORDER TO SHOW CAUSE filed by Spencer Sheehan, Sheehan & Associates, P.C.. (Attachments: # 1 Exhibit(s))(Rose, Daniel) (Entered: 08/29/2023) |
| 09/13/2023 | 39 | RESPONSE to Motion re 36 MOTION for Leave to File filed by Ashley Furniture Industries, LLC. filed by Spencer Sheehan, Sheehan & Associates, P.C.. (Attachments: # 1 Exhibit(s) A - Waiver, # 2 Exhibit(s) B- Scheduling Order)(Ferrara, Paul) (Entered: 09/13/2023) |
| 09/13/2023 | 40 | CERTIFICATE OF SERVICE by Spencer Sheehan, Sheehan & Associates, P.C. re 39 Response to Motion, (Ferrara, Paul) (Entered: 09/13/2023) |
| 11/30/2023 | 41 | MEMORANDUM-DECISION AND ORDER: The Court hereby ORDERS that Attorney Spencer Sheehan, of Sheehan & Associates, P.C., is in civil contempt of court; and the Court further RESERVES decision on the nature of the final sanctions. Signed by Senior Judge Frederick J. Scullin, Jr on November 30, 2023. (rep) (Entered: 11/30/2023) |
| 01/02/2025 | 42 | ORDER: The Court hereby ORDERS that Mr. Sheehan shall pay $500.00 as a sanction for violating Rule 11(b)(2) of the Federal Rules of Civil Procedure. Within fourteen (14) days of the date of this Order, Mr. Sheehan shall contact the Clerk's Office at 315-234-8500 and ask to speak to the Finance Division to receive instructions regarding how he shall make this payment. Signed by Senior Judge Frederick J. Scullin, Jr on January 2, 2025. (rep) (Entered: 01/02/2025) |
| 01/13/2025 | | Payment of $500.00 received from Spencer Sheehan, Esq. pursuant to the 42 Order. Receipt No. 27KPR5SH. (rep) (Entered: 01/14/2025) |
| 01/24/2025 | 43 | NOTICE OF APPEAL as to 42 Order, by Spencer Sheehan, Sheehan & Associates, P.C.. Filing fee $ 605, receipt number ANYNDC-7006208. (Rose, Daniel) (Entered: 01/24/2025) |

# 7

## Docket Entries.

| 01/27/2025 | 44 | ELECTRONIC NOTICE AND CERTIFICATION sent to US Court of Appeals re 43 Notice of Appeal. (ham) (Entered: 01/27/2025) |
|---|---|---|

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/24/2025 16:43:27 | | | |
| **PACER Login:** | danielryanrose | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:22-cv-01199-FJS-ATB |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |

8

**Complaint, Filed November 13, 2022.**

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Kristie Brownell, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  - against -<br><br>Starbucks Coffee Company,<br><br>    Defendant | **5:22-cv-1199 (FJS/ATB)**<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

  Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

  1.  Starbucks Coffee Company ("Defendant") manufactures, labels, markets, and sells French Roast "Ground 100% Arabica Coffee" ("Product").



**9**

**Complaint, Filed November 13, 2022.**
Case 5:22-cv-01199-FJS-ATB    Document 1    Filed 11/13/22    Page 2 of 9

## I.    PROPERTIES OF COFFEE

2.    Coffee is derived from brewing roasted and ground coffee beans.

3.    Coffee beans consist of caffeine (1-2%), coffee oil (10-15%), sucrose and other sugars (about 8%), proteins (about 11%), ash (about 5%), and chlorogenic and caffeic acids (about 6%).

4.    Coffee acids include malic acid, tannic acid, maleic acid, oleic acid, oxalic acid, caffeic acid, and chlorogenic acid.

5.    The natural caffeine content in coffee causes gastric secretion of additional acids.

6.    Over 125 million Americans drink coffee each day, with the average coffee drinker consuming three cups per day.

7.    Many coffee drinkers experience indigestion and discomfort from its acidity, with a pH generally between 4.8 and 5.7.

8.    To reduce discomfort, coffee drinkers will consume less or dilute it through adding dairy products such as milk or cream.

9.    Methods to reduce the acidity or increase the pH of beverages are not uncommon.

10.    For example, wine containing high levels of malic acid can be reduced in acidity through treatment with calcium carbonate, potassium bicarbonate, and calcium tartrate.

11.    Some cultures add eggshells to reduce the acidity of coffee beans when roasting.

12.    Modern deacidification methods include alkaline treatment of coffee beans at elevated temperatures.

13.    However, this is accompanied by saponification of coffee oils, changing the coffee's characteristic flavor and aroma.

2

**10**

**Complaint, Filed November 13, 2022.**
Case 5:22-cv-01199-FJS-ATB    Document 1    Filed 11/13/22    Page 3 of 9

## II.    "100% ARABICA COFFEE" REPRESENTATIONS

14.    A normal cup of coffee contains about 116 milligrams of potassium.

15.    The addition of potassium is recognized as capable of adjusting the pH of coffee beans to between 5.7 and 6.1, by binding to and neutralizing the naturally occurring acids.

16.    Unlike other methods, added potassium maintains the coffee beans' flavor and aroma, while reducing and eliminating any bitterness.

17.    Recent reports based on laboratory analysis indicated the Product has significantly greater than expected levels of potassium.

18.    According to those knowledgeable about coffee production, this level is likely intentional, because of potassium's recognized use for this purpose.

19.    Added potassium can cause health risks for coffee drinkers with kidney issues, who are generally aware of the amount of potassium in coffee, and excess intake can cause hyperkalemia.

20.    Consumers are misled by the representation the Product is "100% Arabica Coffee" because it is false, deceptive and/or misleading as a result of added potassium.

21.    Defendant makes other representations and omissions with respect to the Product which are false and misleading.

22.    As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than $10.99 for 12 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

<u>Jurisdiction and Venue</u>

23.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

3

**11**

## Complaint, Filed November 13, 2022.

Case 5:22-cv-01199-FJS-ATB    Document 1    Filed 11/13/22    Page 4 of 9

24.     The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

25.     Plaintiff is a citizen of New York.

26.     Defendant is a Washington corporation with a principal place in Washington.

27.     The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant is a citizen.

28.     The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold from thousands of physical stores and online in the States Plaintiff seeks to represent.

29.     Venue is in this District because a substantial part of the events or omissions giving rise to these claims occurred in Onondaga County, including Plaintiff's purchase, reliance on the identified statements, and subsequent awareness these were false and misleading.

Parties

30.     Plaintiff Kristie Brownell is a citizen of Syracuse, Onondaga County, New York.

31.     Defendant Starbucks Corporation is a Washington corporation with a principal place of business in Seattle, King County, Washington.

32.     Defendant operates the Starbucks coffee chain and sells ground coffee under the Starbucks brand from its own stores and third-parties including grocery stores, convenience stores, drug stores, big box stores, warehouse club stores and online.

33.     Plaintiff purchased the Product from stores including Walmart, 8064 Brewerton Rd, Cicero, NY 13039 and/or Target, 8061 Brewerton Rd, Cicero, NY 13039 between 2020 and 2022, among other times.

34.     Plaintiff read and relied on the "100% Arabica Coffee" statement to believe the

4

**12**

**Complaint, Filed November 13, 2022.**

Case 5:22-cv-01199-FJS-ATB    Document 1    Filed 11/13/22    Page 5 of 9

contents included only ground coffee and not any additives.

35.    Plaintiff bought the Product at or exceeding the above-referenced price.

36.    Plaintiff paid more for the Product than she would have had she known the representations were false and misleading, or would not have purchased it.

37.    Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, requirements, features, and/or components.

<u>Class Allegations</u>

38.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **New York Class:** All persons in the State of New York who purchased the Products during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Texas, South Dakota, Wyoming, Idaho, Alaska, Iowa, Virginia, South Carolina, and Utah who purchased the Products during the statutes of limitations for each cause of action alleged.

39.    Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

40.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

41.    Plaintiff is an adequate representative because her interests do not conflict with other members.

42.    No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

43.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

**13**

## Complaint, Filed November 13, 2022.

44. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

### New York General Business Law ("GBL") §§ 349 and 350

45. Plaintiff incorporates by reference all preceding paragraphs.

46. Plaintiff saw and relied on the "100% Arabica Coffee" statement to believe the contents included only ground coffee and not any additives.

47. Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

48. Plaintiff would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Violation of State Consumer Fraud Acts
### (Consumer Fraud Multi-State Class)

49. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce.

50. The members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff.

51. Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages.

### Breaches of Express Warranty,
### Implied Warranty of Merchantability/Fitness for a Particular Purpose
### and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

52. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff that "100% Arabica Coffee" meant the contents

**14**

included only ground coffee and not any additives.

53.    Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions, and targeted digital advertising.

54.    Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires, such as coffee which only contained ground coffee beans without additives.

55.    Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the contents included only ground coffee and not any additives.

56.    Defendant's representations affirmed and promised that the contents included only ground coffee and not any additives.

57.    Defendant described the Product so Plaintiff believed its contents included only ground coffee and not any additives, which became part of the basis of the bargain that it would conform to its affirmations and promises.

58.    Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

59.    This duty is based on Defendant's outsized role in the market for this type of Product, a leading brand in the sale of ground coffee.

60.    Plaintiff recently became aware of Defendant's breach of the Product's warranties.

61.    Plaintiff provided or provides notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's warranties.

62.    Defendant received notice and should have been aware of these issues due to

7

**15**

**Complaint, Filed November 13, 2022.**

Case 5:22-cv-01199-FJS-ATB    Document 1    Filed 11/13/22    Page 8 of 9

complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

63.    The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

64.    The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if it contained only ground coffee and without any additives.

65.    The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected that its contents included only ground coffee and not any additives, and relied on Defendant's skill and judgment to select or furnish such a suitable product.

<u>Fraud</u>

66.    Defendant misrepresented and/or omitted the attributes and qualities of the Product, that its contents included only ground coffee and not any additives.

67.    The records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of this falsity and deception, through statements and omissions.

<u>Unjust Enrichment</u>

68.    Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

8

## 16

## Complaint, Filed November 13, 2022.

Case 5:22-cv-01199-FJS-ATB    Document 1    Filed 11/13/22    Page 9 of 9

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

WHEREFORE, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated:   November 13, 2022

Respectfully submitted,

/s/ Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

9

17

**Complaint, Filed November 13, 2022.**

JS 44 (Rev. 04/21) — Case 5:22-cv-01199-FJS-ATB — Document 1-1 — Filed 11/13/22 — Page 1 of 1

**CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Kristie Brownell, individually and on behalf of all others similarly situated | Starbucks Corporation |

**(b)** County of Residence of First Listed Plaintiff _____Onondaga_____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sheehan & Associates, P.C., 60 Cuttermill Rd Ste 412 Great Neck NY 11021 (516) 268-7080

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability / ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | ☐ 835 Patent-Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice / ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | / ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations / ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities- Employment / ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities- Other / **Other:** | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
False advertising

**VII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
*(See instructions):*
JUDGE _____
DOCKET NUMBER _____

DATE
November 13, 2022
SIGNATURE OF ATTORNEY OF RECORD
/s/Spencer Sheehan

**FOR OFFICE USE ONLY**

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|
| | $402.00 | | FJS | ATB |

ANYNDC-6097716

5:22-cv-1199

## 18

### Waiver of the Service of Summons, Filed January 23, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 4    Filed 01/23/23    Page 1 of 1

AO 399 (01 09) Waiver of the Service of Summons

# UNITED STATES DISTRICT COURT
### for the
Northern District of New York

| | | |
|---|---|---|
| Kristie Brownell | individually and on behalf of, all others similarly situated, ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 5:22-cv-01199 |
| Starbucks Coffee Company . | ) | |
| *Defendant* | ) | |

#### WAIVER OF THE SERVICE OF SUMMONS

To:    Spencer Sheehan
       *(Name of the plaintiff's attorney or unrepresented plaintiff)*

I have received your request to waive service of a summons in this action along with a copy of the complaint, two copies of this waiver form, and a prepaid means of returning one signed copy of the form to you.

I, or the entity I represent, agree to save the expense of serving a summons and complaint in this case.

I understand that I, or the entity I represent, will keep all defenses or objections to the lawsuit, the court's jurisdiction, and the venue of the action, but that I waive any objections to the absence of a summons or of service.

I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from _01/23/2023_, the date when this request was sent (or 90 days if it was sent outside the United States). If I fail to do so, a default judgment will be entered against me or the entity I represent.

Date:    01/23/2023

_____
*Signature of the attorney or unrepresented party*

Robert J. Guite

Starbucks Coffee Company                          *Printed name*
*Printed name of party waiving service of summons*

Sheppard, Mullin, Richter, & Hampton LLP

4 Embarcadero Ctr, 17th Fl

San Francisco, CA 94111-4109
                                                  *Address*

rguite@sheppardmullin.com
                                                  *E-mail address*

(415) 774-3176
                                                  *Telephone number*

**Duty to Avoid Unnecessary Expenses of Serving a Summons**

Rule 4 of the Federal Rules of Civil Procedure requires certain defendants to cooperate in saving unnecessary expenses of serving a summons and complaint. A defendant who is located in the United States and who fails to return a signed waiver of service requested by a plaintiff located in the United States will be required to pay the expenses of service, unless the defendant shows good cause for the failure.

"Good cause" does *not* include a belief that the lawsuit is groundless, or that it has been brought in an improper venue, or that the court has no jurisdiction over this matter or over the defendant or the defendant's property.

If the waiver is signed and returned, you can still make these and all other defenses and objections, but you cannot object to the absence of a summons or of service.

If you waive service, then you must, within the time specified on the waiver form, serve an answer or a motion under Rule 12 on the plaintiff and file a copy with the court. By signing and returning the waiver form, you are allowed more time to respond than if a summons had been served.

# 19

## Letter from Spencer Sheehan to Magistrate Judge Andrew T. Baxter, Filed February 6, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 5    Filed 02/06/23    Page 1 of 2

February 6, 2023

Magistrate Judge Andrew T. Baxter
United States District Court
Northern District of New York
Federal Building and U.S. Courthouse
P.O. Box 7396
Syracuse, NY 13261

Re:    5:22-cv-01199-FJS-ATB
       Brownell v. Starbucks Coffee Company

Dear Magistrate Judge Baxter:

This office represents the Plaintiff. In accordance with the Court's Rules, Plaintiff, with consent of the Defendant, requests an adjournment of the Initial Conference currently scheduled for February 13, 2023 at 10:00 am until April 7, 2023 at 10:00 am with accompanying submissions due seven days prior to the conference.

This action was filed on November 13, 2022. ECF No. 1. On January 23, 2023, Plaintiff filed a waiver of service setting Defendant's answer or responsive pleading due on March 24, 2023. ECF No. 4.

The parties respectfully request the Initial Conference to be adjourned to April 7, 2023, two weeks after Defendant's response to the complaint is due, as this will allow the attorneys to become more familiar with the case to give a more accurate Case Management Plan.

There have been no previous requests for the Initial Conference. No previous request was granted or denied. Defendant consents to this request. This request is submitted at least 48 hours prior to the original compliance date. This request does not affect any other scheduled dates.

Respectfully submitted,

/s/Spencer Sheehan

## 20

**Letter from Spencer Sheehan to Magistrate Judge Andrew T. Baxter, Filed February 6, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 5    Filed 02/06/23    Page 2 of 2

**Certificate of Service**

I certify that on February 6, 2023, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☐ | ☐ | ☒ | ☐ |
| Plaintiff's Counsel | ☒ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☐ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan

**21**

**Letter from Paul W. Garrity to the Honorable Frederick J. Scullin, Jr., Filed March 9, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 9     Filed 03/09/23     Page 1 of 1

# SheppardMullin

212.634.3057 direct
pgarrity@sheppardmullin.com

March 9, 2023

File Number: 0WTC-367375

Honorable Frederick J. Scullin, Jr.
United States District Court
Northern District of New York
Federal Building and U.S. Courthouse
P.O. Box 7336
Syracuse, NY 13261-7336

Re:    Brownell v. Starbucks Coffee Company, Case No. 5:22-cv-01199-FJS-ATB

Dear Judge Scullin:

We represent defendant Starbucks Coffee Company ("Starbucks") in the above-captioned matter.  Following conferral with Spencer Sheehan, counsel for Plaintiff Kristie Brownell, we write to request the following agreed briefing schedule:

1.    Defendant's motion to dismiss due on March 16, 2023.

2.    Plaintiff's opposition brief due on April 12, 2023.

3.    Defendant's reply brief due April 25, 2023.

At present, the date for Starbucks to respond to the complaint is March 24, 2023.  To accommodate the schedules of counsel, the agreed briefing schedule advances the response date to March 16, 2023 and provides additional time for the Plaintiff to prepare her opposition to the motion to dismiss and for Starbucks to prepare its reply.

Respectfully,

*/s/ Paul W. Garrity*

Paul W. Garrity
for SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SMRH:4877-8638-1653.3
cc: Spencer Sheehan via ECF

**22**

**Notice of Motion to Dismiss Complaint, Filed March 16, 2023.**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kristie Brownell, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          -against-<br><br>Starbucks Coffee Company,<br><br>                    Defendant. | 5:22-cv-01199-FJS-ATB<br><br>**NOTICE OF MOTION TO DISMISS COMPLAINT PURSUANT TO RULE 12(b)(6)** |

      **PLEASE TAKE NOTICE THAT**, upon the annexed Memorandum of Law in Support of Defendant Starbucks Corporation's Motion to Dismiss Complaint, and all of the papers and proceedings herein, Defendant Starbucks Corporation ("Defendant"), by and through its undersigned attorneys Sheppard, Mullin, Richter & Hampton LLP, shall move before the Honorable Senior Judge Frederick J. Scullin, Jr, United States District Court, Northern District of New York, James M. Hanley Federal Building & U.S. Courthouse, 100 S. Clinton St., Syracuse, New York 13261, on a date and time to be determined by the Court, for an Order dismissing with prejudice the Complaint filed by Plaintiff Kristie Brownell, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for such other and further relief as the Court may deem just and proper.

      **PLEASE TAKE FURTHER NOTICE** that, in accordance with this Court's Order dated March 10, 2023, Plaintiff's opposition papers to Defendant's motion shall be served on the undersigned on or before April 12, 2023, and Defendant's reply papers shall be served on or before April 25, 2023.

**23**

## Notice of Motion to Dismiss Complaint, Filed March 16, 2023.

Case 5:22-cv-01199-FJS-ATB     Document 14     Filed 03/16/23     Page 2 of 2

DATED:     March 16, 2023

SHEPPARD, MULLIN,
   RICHTER & HAMPTON LLP

By: /s/ *Sascha Henry*
Sascha Henry
CA State Bar No. 191914
*Pro Hac Vice*
shenry@sheppardmullin.com
Robert J. Guite
CA State Bar No. 244590
*Pro Hac Vice Application Forthcoming*
rguite@sheppardmullin.com
Paul Garrity
NY State Bar No. 2756419
pgarrity@sheppardmullin.com

30 Rockefeller Plaza
New York, New York 10112-0015
212.653.8700

Attorneys for Defendant Starbucks Corporation

**24**

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB     Document 14-1     Filed 03/16/23     Page 1 of 25

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kristie Brownell, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    -against-<br><br>Starbucks Coffee Company,<br><br>        Defendant. | 5:22-cv-01199-FJS-ATB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STARBUCKS
CORPORATION'S MOTION TO DISMISS COMPLAINT**

**25**

**Memorandum of Law In Support of Defendant Starbuck Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 2 of 25

## TABLE OF CONTENTS

Page(s)

I.    INTRODUCTION .......................................................................................... 1

II.   SUMMARY OF ALLEGATIONS ................................................................ 3

    A.    Plaintiff's Purchases from Starbucks ................................................. 3

    B.    Plaintiff Acknowledges That a Normal Cup of Coffee Has Potassium, but Alleges that "Recent Reports" Indicate Ground Starbucks® French Roast Coffee has "Greater than Expected" Levels of Potassium Which is "Likely Intentional" ....... 3

    C.    Potassium is an Important Nutrient, Which FDA Concludes is Under-Consumed by the United States Population ............................................................. 4

    D.    Coffee Is Exempt from Declaring Its Potassium Content on its Label ................... 5

III.   LEGAL STANDARD ON MOTION TO DISMISS ......................................... 6

IV.   THE COURT SHOULD DISMISS THE COMPLAINT ................................... 7

    A.    Plaintiff Lacks Standing Because She Has Not Alleged She Suffered a Concrete and Particularized Harm ............................................................. 7

    B.    Plaintiff Fails to Sufficiently Plead that Starbucks Added Potassium To The Product ................................................................................. 9

    C.    Plaintiff's Complaint is Preempted by Federal Law and Regulations Which Exempt Coffee From Labeling the Quantity of Potassium ................................. 12

    D.    A Reasonable Consumer Would Not Be Materially Misled That 100% Arabica Beans Says Anything about the Potassium (or Any Other Mineral) Content ....... 14

    E.    Plaintiff's Other Claims Also Fail as a Matter of Law ........................................ 16

        1.    Plaintiff Has Failed to State a Claim for Breach of Express Warranty .... 17

        2.    Plaintiff Cannot Allege Facts Sufficient to Support Her Implied Warranty Claim ................................................................................. 17

        3.    Plaintiff's Unjust Enrichment Claim is Entirely Duplicative of Her Other Claims ................................................................................. 17

    F.    Plaintiff's "State Consumer Fraud" Claim is Not Cognizable ............................ 18

V.   CONCLUSION ............................................................................................ 19

**26**

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 14-1     Filed 03/16/23     Page 3 of 25

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*In re Aluminum Warehousing Antitrust Litig.*
2014 WL 4743425 (S.D.N.Y. Sep. 15, 2014)...................................................................18, 19

*Ashcroft v. Iqbal*
556 U.S. 662 (2009)..........................................................................................................7, 9, 11

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007)...............................................................................................................6, 10

*Bernheim v. Litt*
79 F.3d 318 (2d Cir. 1996)........................................................................................................10

*Budhani v. Monster Energy Co.*
527 F. Supp. 3d 667 (S.D.N.Y. 2021)......................................................................................15

*Carter v. HealthPort Techs., LLC*
822 F.3d 47 (2d Cir. 2016).........................................................................................................6

*Chen v. Dunkin' Brands, Inc.*
954 F.3d 492 (2d Cir. 2020)......................................................................................................15

*Colella v. Atkins Nutritionals, Inc.*
348 F. Supp. 3d 120 (E.D.N.Y. 2018) .......................................................................................9

*Corsello v. Verizon N.Y., Inc.*
967 N.E.2d 1177 (N.Y. 2012).....................................................................................................17

*Critcher v. L'Oreal USA, Inc.*
959 F.3d 31 (2d Cir. 2020).................................................................................................12, 13

*Davis v. Hain Celestial Grp., Inc.*
297 F. Supp. 3d 327 (E.D.N.Y. 2018) ......................................................................................18

*Fink v. Time Warner Cable*
714 F.3d 739 (2d Cir. 2013)......................................................................................................15

*Gaminde v. Lang Pharma Nutrition, Inc.*
2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ........................................................................7, 8

*Hawkins v. Coca-Cola Co.*
2023 WL 1821944 (S.D.N.Y. Feb. 7, 2023)..............................................................................11

**27**

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 4 of 25

*Hoffman v. Kraft Heinz Foods Co.*
  2023 WL 1824795 (S.D.N.Y. Feb. 7, 2023)..................................................................11

*Izquierdo v. Mondelez Int'l, Inc.*
  2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016)..................................................................9

*Kamara v. Pepperidge Farm, Inc.*
  570 F. Supp. 3d 69 (S.D.N.Y. 2021)..................................................................17

*Kimca v. Sprout Foods, Inc.*
  2022 WL 1213488 (D.N.J. Apr. 25, 2022)..................................................................8, 9

*Koenig v. Boulder Brands, Inc.*
  995 F. Supp. 2d 274 (S.D.N.Y. 2014)..................................................................18

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992)..................................................................7

*Mazella v. Coca-Cola Co.*
  548 F. Supp. 3d 349 (S.D.N.Y. 2021)..................................................................17

*Myers v. Wakefern Food Group*
  2022 WL 603000 (S.D.N.Y. Mar. 1, 2022)..................................................................10

*Nelson v. MillerCoors, LLC*
  246 F. Supp. 3d 666 (E.D.N.Y. 2017)..................................................................18

*Nemphos ex rel. C.G.N. v. Nestle Waters N. Am., Inc.*
  775 F.3d 616 (4th Cir. 2015)..................................................................14

*Orlander v. Staples, Inc.*
  802 F.3d 289 (2d Cir. 2015)..................................................................14

*Parks v. Ainsworth Pet Nutrition, LLC*
  2020 WL832863 (S.D.N.Y. Feb. 20, 2020)..................................................................16

*Parks v. Ainsworth Pet Nutrition, LLC*
  377 F. Supp. 3d 241 (S.D.N.Y. 2019)..................................................................15, 16

*Petrosino v. Stearn's Prods.*
  2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018)..................................................................17

*In re Plum Baby Food Litig.*
  2022 WL 16552786 (D.N.J. Oct. 31, 2022)..................................................................6, 8, 9

*Santiful v. Wegmans Food Markets, Inc.*
  Case No.7:20-cv-02933-NSR, 2023 WL _____ (S.D.N.Y., Mar. 10, 2023)..................................................................10

28

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 5 of 25

*Silva v. Smucker Nat. Foods, Inc.*
    2015 WL 5360022 (E.D.N.Y. Sep. 14, 2015)...................................................17

*Spokeo, Inc. v. Robins*
    578 U.S. 330 (2016)..............................................................................6

*TransUnion LLC v. Ramirez*
    594 U.S. __, 141 S. Ct. 2190 (2021)................................................................7

*In re Trilegiant Corp.*
    11 F. Supp. 3d 82 (D. Conn. 2014).......................................................18, 19

*Turek v. General Mills, Inc.*
    662 F.3d 423 (7th Cir. 2011) ..................................................................13

*Turnipseed v. Simply Orange Juice Co.*
    2022 WL 657413 (S.D.N.Y. Mar. 4, 2022) ...................................................11

*Warren v. Stop & Shop Supermarket, LLC*
    592 F. Supp. 3d 268 (S.D.N.Y. 2022)..........................................................18

*Womack v. EVOL Nutrition Assocs.*
    2022 WL 3371216 (N.D.N.Y. Aug. 16, 2022) ...............................................10

*Wurtzburger v. Ky. Fried Chicken*
    2017 WL 6416296 (S.D.N.Y. Dec. 13, 2017) ...............................................15

**Statutes and Regulations**

21 U.S.C. §§ 331(a)-(c).................................................................................12

21 U.S.C. § 343-1 .......................................................................................12, 14

21 U.S.C. § 343 (q)(2) ..................................................................................12

Federal Food, Drug, and Cosmetic Act ........................................................12, 13

New York General Business Law §§ 349-350 ...............................2, 7, 12, 13, 14, 15, 16

Nutritional Labeling and Education Act........................................................12

21 C.F.R. § 101.9(j)(4)..................................................................................5, 13

21 C.F.R. § 101.9(c)(8)(ii) ............................................................................4

81 Fed. Reg. 33,741, 33,898 (May 27, 2016) (to be codified at 21 C.F.R. pt. 101)
    ........................................................................................................4, 5, 13, 14

81 Fed. Reg. at 33,800 ..................................................................................4, 5

**29**

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 6 of 25

81 Fed. Reg. at 33,893 ................................................................................5, 14

81 Fed. Reg. at 33,894 ...................................................................................14

81 Fed. Reg. at 34,027 ................................................................................5, 14

**Federal Rules of Civil Procedure**

Rule 8 ...........................................................................................................11

Rule 8(a)....................................................................................................2, 6, 18

Rule 8(a)(2) .....................................................................................................18

Rule 12(b)(1)..................................................................................................6, 7

Rule 12(b)(6)..................................................................................................6, 9

**30**

**Memorandum of Law In Support of Defendant Starbuck Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 7 of 25

## I.    **INTRODUCTION**

Plaintiff Kristie Brownell's Complaint must be dismissed because it fails to allege facts to support her baseless conclusion that potassium was added to the Ground Starbucks® French Roast coffee she purchased.[1]  Plaintiff cannot dispute that potassium is naturally occurring in coffee and is a nutrient that the Food and Drug Administration (FDA) recommends be consumed.  She admits that a normal cup of brewed coffee contains 116 milligrams of potassium. (Complaint, ¶ 14.)  She makes no allegation that she tested the coffee she purchased or that she suffered any adverse reaction when she drank her brewed coffee to suggest that it had elevated levels of potassium.  Instead, Plaintiff relies on unnamed "recent reports" based on unspecified "laboratory analysis" supposedly showing that the Ground Starbucks® French Roast coffee has "significantly greater than expected levels of potassium" – but she does not allege those levels.  (*Id.*, ¶ 17.)  Article III and the rules of pleading require more than speculation to state a claim that Starbucks added potassium to its ground coffee rendering the label's claim of "100% Arabica Coffee" false or deceptive.

The FDA has identified potassium as an essential nutrient, the underconsumption of which is an issue of public health concern for the majority of the U.S. population.  For this reason, the FDA recommends that adults consume 4,200 milligrams of potassium per day.  The FDA recognizes that brewed coffee contains some potassium, but does not require that potassium levels be disclosed on ground coffee labels.  Without an allegation of how much potassium is in the coffee brewed from the Ground Starbucks® French Roast coffee Plaintiff purchased, she has not alleged an elevated level to show she has suffered an injury in fact or from which it can be inferred that potassium was added.  Moreover, requiring Starbucks to disclose the amount of potassium in the Ground Starbucks® French Roast coffee would improperly impose a labeling obligation not required by the FDA.

---

[1] Starbucks denies the allegations of the Complaint, and specifically denies that it adds potassium to Ground Starbucks® French Roast coffee.  As described below, Starbucks treats the allegations as true for purposes of this motion except those allegations for which Plaintiff has not plausibly alleged sufficient facts.

**31**

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB     Document 14-1     Filed 03/16/23     Page 8 of 25

Plaintiff seeks to represent a class of New York consumers (Complaint, ¶ 38) pursuing the following claims: (1) Violation of New York General Business Law ("GBL") §§ 349, 350, (2) "Violation of State Consumer Fraud Acts," (3) "Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose and Magnuson Moss Warranty Act," (4) Fraud, and (5) Unjust Enrichment. Plaintiff's claims all fail as a matter of law. (*Id.*, ¶¶ 45-48 and 52-68.)

Plaintiff's GBL claims fail because Plaintiff lacks Article III standing as she has not alleged a concrete and particularized injury; she has not plausibly alleged the Ground Starbucks® French Roast coffee contains added potassium; her claims are preempted; and she has not alleged facts showing a reasonable consumer would be materially misled by the statement "100% Arabica Coffee."

Plaintiff's ancillary claims for breach of warranty and unjust enrichment fail for the same reasons as her GBL claims. Plaintiff's breach of implied warranty claim additionally fails because she does not allege facts that Ground Starbucks® French Roast coffee is unfit for human consumption. Plaintiff's unjust enrichment claim also should be dismissed because it is duplicative of her other claims.

Plaintiff also impermissibly includes a claim for "Violation of State Consumer Fraud Acts", though her Complaint does not specify to which acts she is referring. Plaintiff's barebones pleading of "Violations of State Consumer Fraud Acts" fails to satisfy Rule 8(a) pleading requirements.

For these reasons, and as set forth more fully below, Plaintiff's Complaint should be dismissed in its entirety.

32

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 9 of 25

## II.    SUMMARY OF ALLEGATIONS

### A.    Plaintiff's Purchases from Starbucks

Plaintiff alleges she purchased Ground Starbucks® French Roast coffee with the label shown below from stores including Walmart "and/or Target" between 2020 and 2022.[2]



(Complaint, ¶¶ 1, 33.)  She alleges that she read "100% Arabica Coffee" (which is circled on the image in her Complaint) and believed it meant the coffee "included only ground coffee and not any additives."  (*Id.*, ¶ 34.) Plaintiff alleges she "paid more for the Product than she would have had she known the representations were false and misleading, or would not have purchased it."  (*Id.*, ¶ 36.)  Plaintiff alleges that she chose between Starbucks coffee and other unidentified products which allegedly did not misrepresent their attributes.  (*Id.* at ¶ 37.)

### B.    Plaintiff Acknowledges That a Normal Cup of Coffee Has Potassium, but Alleges that "Recent Reports" Indicate Ground Starbucks® French Roast Coffee has "Greater than Expected" Levels of Potassium Which is "Likely Intentional"

Plaintiff alleges that a normal cup of coffee contains about 116 mg of potassium.  (*Id.*, ¶ 14.)  *See also* U.S. Department of Agriculture, Agricultural Research Service. FoodData Central ⊡, 2019; https://fdc.nal.usda.gov/fdc-app.html#/food-details/2345935/nutrients (last accessed on Feb. 23, 2023) (showing 118 mg of potassium for 8 fluid ounce cup of coffee).  Plaintiff alleges

---

[2] Plaintiff erroneously named Starbucks Coffee Company which is the trade (i.e., the doing business as) name of Starbucks Corporation.

**33**

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 10 of 25

"[r]ecent reports based on laboratory analysis indicated the Product has significantly greater than expected levels of potassium." (*Id.*, ¶ 17.) Plaintiff does not attach the reports or the laboratory analysis, nor does Plaintiff plead the name of the report, the identity of the laboratory or the level of potassium allegedly shown in the reports and laboratory analysis. (*Id.*) Instead, she alleges that "[a]ccording to those knowledgeable about coffee production, this level is likely intentional, because of potassium's recognized use for this purpose." (*Id.*, ¶ 18.) Plaintiff does not allege who those "knowledgeable" persons are or any other basis to assert that potassium was intentionally added.

Though Plaintiff alleges that added potassium can pose health risks for coffee drinkers with kidney issues, Plaintiff does not allege that she has kidney issues or that she suffered an acute reaction after drinking coffee brewed from Ground Starbucks® French Roast coffee. (*Id.*, ¶ 19.)

**C.    Potassium is an Important Nutrient, Which FDA Concludes is Under-Consumed by the United States Population**

In 2016, the FDA updated its Nutrition Facts label regulations to, among other things, reflect changes to scientific evidence and encourage consumption of potassium. Before 2016, including potassium as part of the nutrition facts panel was voluntary. 21 C.F.R. § 101.9(c)(8)(ii). In 2016, the FDA mandated that potassium content be included on the nutrition facts panel of some foods. *Id.* The FDA also increased the recommended daily intake of potassium from 3,500 mg to 4,200 mg. *Id.*; Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,741, 33,898 (May 27, 2016) (to be codified at 21 C.F.R. pt. 101) (hereinafter "Food Labeling"). The FDA noted that "[u]nderconsumption of the essential nutrients vitamin D, calcium, potassium, and fiber are public health concerns for the majority of the U.S. population . . . " Food Labeling, 81 Fed. Reg. at 33,800. The FDA

**34**

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 11 of 25

explained that "the scientific evidence regarding potassium had changed, such that [the FDA] recognized potassium's importance in the risk reduction of certain chronic diseases." *Id.* at 33,893. It stated that, "[g]iven the benefits of adequate potassium intake . . . [the FDA] concluded that potassium is a nutrient of public health significance for the general U.S. population " and supported its mandatory declaration. *Id.*

With regard to patients with chronic kidney disease, the FDA acknowledged that mandatory labeling of potassium would be of assistance, but noted that it was not a factor in requiring mandatory labeling. Food Labeling, 81 Fed. Reg. at 33,893. The FDA "concluded that potassium is a nutrient of public health significance for the general U.S. population and its declaration is necessary to assist consumers in maintaining healthy dietary practices." *Id.*

### D.    Coffee Is Exempt from Declaring Its Potassium Content on its Label

As part of the regulatory process in 2016, the FDA received comments from the public which raised the issue that, although coffee is exempt from nutritional labeling under 21 C.F.R. § 101.9(j)(4), it may have declarable levels of potassium. *Id.* at 33,894; Food Labeling: Serving Sizes of Foods That Can Reasonably Be Consumer At One Eating Occasion, 81 Fed. Reg. 34,000, 34,026-27 (May 27, 2016) (to be codified at 21 C.F.R. pt. 101) (hereinafter "Serving Sizes"). The FDA responded that it "intend[s] to consider the future applicability of the exemption with respect to coffee beans (whole or ground), . . . in a separate rulemaking." Serving Sizes, 81 Fed. Reg. at 34,027.

Coffee, tea and spices are exempt from the requirement to include nutrition labels on food packaging. 21 C.F.R. §101.9(j)(4); *see also Guidance for Industry: A Food Labeling Guide*, p. 64, L120, 2013 (available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-food-labeling-guide, last accessed on Feb. 23, 2023).

**35**

**Memorandum of Law In Support of Defendant Starbuck**
**Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 12 of 25

### III.    LEGAL STANDARD ON MOTION TO DISMISS

To pursue a claim in federal court, a plaintiff must have Article III standing, which generally requires the plaintiff to plead that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff bears the burden of demonstrating standing and a standing challenge is properly raised by a motion to dismiss brought under Rule 12(b)(1). *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016).

When a 12(b)(1) motion to dismiss challenges the sufficiency of the allegations in the complaint regarding standing, that is a facial challenge and the court will essentially apply the standard applicable under Rule 12(b)(6) and ask whether the plaintiff has plausibly pleaded each element of Article III standing. *Carter*, 822 F.3d at 56; *In re Plum Baby Food Litig.*, 2022 WL 16552786, at *5 (D.N.J. Oct. 31, 2022).

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). If a complaint fails to do this, the defendant may move to dismiss it under Rule 12(b)(6). To survive a motion to dismiss, "a complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citation, quotations, and emphasis omitted).

Thus, a complaint that sets forth a mere "formulaic recitation of the elements" will not survive a motion to dismiss; indeed, a plaintiff must provide "enough facts to state a claim to relief that is plausible on its face" and bear the burden of "nudg[ing] their claims across the line from conceivable to plausible." *Id.* at 570. Determining whether a complaint states a plausible claim

**36**

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 13 of 25

for relief is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## IV.    THE COURT SHOULD DISMISS THE COMPLAINT

### A.    Plaintiff Lacks Standing Because She Has Not Alleged She Suffered a Concrete and Particularized Harm

The Complaint should be dismissed because Plaintiff failed to allege facts showing that

she suffered an injury in fact from buying the Ground Starbucks® French Roast coffee. *See

TransUnion LLC v. Ramirez*, 594 U.S. __, 141 S. Ct. 2190, 2203 (2021) (a plaintiff must

adequately plead facts showing a concrete harm to satisfy Article III standing); *Lujan v.

Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992) ("[T]he injury must affect the plaintiff in a

personal and individual way.").   Here, Plaintiff's allegations of injury consist only of

unsupported assertions that the coffee she purchased contained added potassium, and vague

allegations that she would not have purchased it, or paid the price she did, if she had known.

(Complaint, ¶¶ 17, 36.)  These speculative and conclusory allegations do not rise to the level of

an individual and particularized harm.

In *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724 (N.D.N.Y. Mar. 25,

2019), the court granted a Rule 12(b)(1) motion to dismiss because the plaintiff failed to allege

sufficient facts that he suffered an injury in fact.  Specifically, the plaintiff alleged that he bought

a bottle of CVS Krill oil which contained less than the labeled 300 mg of Omega-3 Krill oil.  The

plaintiff cited a *Journal of the Science of Food and Agriculture* article which described a USDA

study that concluded the bottles tested contained only 60% of the amount represented.  The court

dismissed plaintiff's claims under GBL §§ 349 and 350 as well as for breach of express and

implied warranty, unjust enrichment and fraud.  "So here—it is speculation to allege that because

two CVS Krill Oil bottles in a USDA study were found to have less than the stated amount of

**37**

Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 14 of 25

Omega-3 Krill Oil, the bottle that Gaminde [the plaintiff] purchased must have as well." *Id.* at

*2-3 (plaintiff's "failure to allege that he tested his bottle of CVS Krill Oil—indeed, his failure to

make any allegation regarding how he knows that it was mislabeled—is fatal.").

Here, as in *Gaminde,* Plaintiff fails to allege facts showing that she suffered a concrete

and particularized injury from buying the Ground Starbucks® French Roast coffee. Plaintiff

does not allege that she tested the coffee she brewed from the Ground Starbucks® French Roast

coffee that she bought. Rather, she makes opaque references to "[r]ecent reports based on

laboratory analysis", but does not cite or attach the reports or laboratory analysis. (Complaint, ¶

17.) She fails to allege the level of potassium in the coffee that she brewed, even though she

admits a "normal cup of coffee contains about 116 milligrams of potassium." (*Id.*, ¶ 14.) She

does not allege that she suffered an adverse reaction to the coffee (or that she brewed and

consumed the coffee at all). Thus, the allegation that the Ground Starbucks® French Roast

coffee she purchased contained added potassium is speculative.

Plaintiff may argue that she suffered economic injury by paying a price premium for the

Product, but conclusory allegations regarding a supposed price premium are insufficient to

support a claim for economic injury. In two recent putative class actions asserting false

advertising claims against baby food manufacturers based on the alleged presence of undisclosed

heavy metals, the courts held that conclusory price premium allegations were insufficient to find

injury in fact. *See In re Plum Baby Food Litig.*, 2022 WL 16552786, at *8 (D.N.J. Oct. 31,

2022) ("Threadbare allegations that, had the plaintiff known about an alleged deficiency in a

product, they would not have paid that price for said product, without more, is insufficient to find

injury-in-fact."); *Kimca v. Sprout Foods, Inc.*, 2022 WL 1213488, at *8 (D.N.J. Apr. 25, 2022)

(requiring additional factual support for the plaintiff's injury claim beyond a mere allegation that

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 15 of 25

plaintiff would not have paid as much, such as specifically identifying an alternative, cheaper

product).

Here, Plaintiff's allegation that she "paid more for the Product than she would have had

she known the representations were false and misleading, or would not have purchased it," is

very similar to the kinds of allegations rejected in *Plum* and *Kimca*. (Complaint, ¶ 36.) While

Plaintiff alludes to comparable products, stating that the Ground Starbucks® French Roast coffee

is sold at prices "higher than similar products, represented in a non-misleading way," she does

not allege any facts identifying these alternative products, or even allege that they are cheaper.

(*Id.*, ¶ 22.) Accordingly, the Complaint should be dismissed. *Colella v. Atkins Nutritionals, Inc.*,

348 F. Supp. 3d 120, 143 (E.D.N.Y. 2018) (dismissing complaint because plaintiff only

conclusorily asserted that the defendant charged a premium); *Izquierdo v. Mondelez Int'l, Inc.*,

2016 WL 6459832 (S.D.N.Y. Oct. 26, 2016) (allegation that plaintiff paid a premium price is

insufficient to allege injury).

**B.      Plaintiff Fails to Sufficiently Plead that Starbucks Added Potassium To The
Ground Starbucks® French Roast Coffee**

Plaintiff fails to allege sufficient facts to support her conclusion that Starbucks added

potassium to Ground Starbucks® French Roast coffee, and instead relies on speculation and the

possibility that potassium was added. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff

must "state a claim to relief that is plausible on its face." *Ashcroft*, 556 U.S. at 678. "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility

requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* When the

"well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct,

the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.*

**39**

Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 16 of 25

at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  At the motion to dismiss stage, the court must accept

the plaintiff's factual allegations as true and draw all reasonable inferences in its favor.

*Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996).  However, if a plaintiff has "not nudged [its]

claims across the line from conceivable to plausible, the[] complaint must be dismissed.  *Bell Atl.*

*Corp.*, 550 U.S. at 570.

In *Womack v. EVOL Nutrition Assocs.*, 2022 WL 3371216 (N.D.N.Y. Aug. 16, 2022), the

court dismissed a GBL § 349 claim relating to alleged failure to list an ingredient.  Among other

allegations, the plaintiff alleged that the defendant hid the amount of an ingredient in its beverage

and that the ingredient in large doses could cause breathing trouble and unconsciousness.  The

court reasoned that the plaintiff failed to "plausibly allege an amount-based theory of liability"

because there were no allegations regarding the amount of the ingredient or facts from which the

court could infer it was a large amount.  *Id.* at *5.

Similarly, a general reference to laboratory tests has been held insufficient where the

plaintiff does not provide details about the tests.  In *Myers v. Wakefern Food Group*, 2022 WL

603000, *9-10 (S.D.N.Y. Mar. 1, 2022), the court dismissed the complaint alleging that a food

contained artificial flavorings because the plaintiff did not provide any details about what the

laboratory tests entailed and the court was not required to accept the plaintiff's conclusory

statements without more.  In so holding, the court noted that the plaintiff does not "describe the

testing methodology followed, the specific date, time, or place of the testing, who conducted the

testing, the qualifications of the testers, etc." or how the findings arrived at her conclusion that

the food contained artificial flavors.  The same results were reached in four other recent cases

where the plaintiff relied on general references to laboratory tests.  *See Santiful v. Wegmans*

*Food Markets, Inc.*, Case No. 7:20-cv-02933-NSR, 2023 WL _____, at *__ (S.D.N.Y., Mar. 10,

**40**

Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 17 of 25

2023) (dismissing claims because though laboratory results were included in complaint, the results were "interpreted solely by their attorneys, with no support from, or even identification of, the researcher who conducted the analysis, or of any other expert."); *Hoffman v. Kraft Heinz Foods Co.*, 2023 WL 1824795, at \*7-8 (S.D.N.Y. Feb. 7, 2023) (dismissing claims because the plaintiffs failed to allege details about the laboratory tests); *Hawkins v. Coca-Cola Co.*, 2023 WL 1821944, at \*8 (S.D.N.Y. Feb. 7, 2023) (same); *Turnipseed v. Simply Orange Juice Co.*, 2022 WL 657413, \*4 (S.D.N.Y. Mar. 4, 2022) (same).

Here, Plaintiff fails to plausibly allege facts that Starbucks has mislabeled Ground Starbucks® French Roast coffee as "100% Arabica Coffee" because it has "added potassium." Plaintiff acknowledges that brewed coffee normally contains 116 mg of potassium. (Complaint, ¶ 14.) She alleges the Ground Starbucks® French Roast coffee has "greater than expected levels of potassium" but does not specify what level of potassium coffee brewed from it contains. (*Id.*, ¶ 17.) She refers to "recent reports based on laboratory analysis" but fails to plead the levels of potassium shown on those report or attach the reports. (*Id.*, ¶ 17.) Her only basis for claiming that Starbucks adds potassium is speculation that the unspecified higher level of potassium "is likely intentional" to maintain flavor and reducing bitterness. (*Id.*, ¶¶ 16, 18.) Though Plaintiff alleges that added potassium can cause health risks for some in the population, she does not allege *she* suffered an acute reaction from consuming coffee brewed from Ground Starbucks® French Roast coffee. (*Id.*, ¶19.) Given that some level of potassium can be expected in brewed coffee, Plaintiff should be required to plead the level of potassium in the coffee brewed from the Ground Starbucks® French Roast coffee she purchased and explain why that level means Starbucks necessarily added potassium. The "sheer possibility" that Starbucks committed misconduct does not satisfy Plaintiff's Rule 8 obligations. *Iqbal*, 556 U.S. at 678-79.

**41**

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 18 of 25

**C.    Plaintiff's Complaint is Preempted by Federal Law and Regulations Which
Exempt Coffee From Labeling the Quantity of Potassium**

Plaintiff's claims are preempted because the FDA exempted ground coffee from nutrition

facts labeling requirements even though the FDA expects ground coffee to contain declarable

levels of potassium. Whether a claim is preempted turns on Congress's intent and the analysis

begins with statutory text in question. *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 34-35 (2d Cir.

2020) (affirming granting of motion to dismiss GBL §§ 349 and 350 claims on the grounds that

they were preempted by FDA regulations).

The Federal Food, Drug, and Cosmetic Act (the "FDCA") grants the FDA power to

ensure that foods are "safe, wholesome, sanitary, and properly labeled." 21 U.S.C. §§ 331(a)-(c).

In 1990, Congress amended the FDCA with the Nutritional Labeling and Education Act which

includes an express preemption clause:

> (a) Except as provided in subsection (b), no State or political
> subdivision of a State may directly or indirectly establish under
> any authority or continue in effect as to any food in interstate
> commerce-
> ...
>
> **(4)** any requirement for nutrition labeling of food **that is not
> identical to the requirement** of section 343(q) of this title, except
> that this paragraph does not apply to food that is offered for sale in
> a restaurant or similar retail food establishment that is not part of a
> chain with 20 or more locations doing business under the same
> name (regardless of the type of ownership of the locations) and
> offering for sale substantially the same menu items unless such
> restaurant or similar retail food establishment complies with the
> voluntary provision of nutrition information requirements under
> section 343(q)(5)(H)(ix) of this title, or

21 U.S.C. § 343-1 (emphasis added). Section 343(q)(2) authorizes the Secretary of Health and

Human Services to issue regulations regarding labeling nutrient information to assist consumers

in maintaining healthy dietary practices. 21 U.S.C. §343 (q)(2).

**42**

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 19 of 25

In *Critcher*, the Second Circuit affirmed dismissal of a putative class action alleging claims under GBL §§ 349 and 350 relating to cosmetics that were labeled in accordance with FDA regulations concerning net weight, but which plaintiff contended were misleadingly labeled because she could not access the full amount of the cosmetics. *Critcher*, 959 F.3d at 36. The Second Circuit, having reviewed the preemption clause and the regulations, concluded that the claim was preempted because the only way for the defendant to avoid liability would be to make an additional disclosure on the packaging. *Id.* Allowing plaintiffs to "move forward with their claims, they would be using state law to impose labeling requirements on top of those already mandated in the FDCA and the regulations promulgated thereunder." *Id.*

Importantly, the Second Circuit cited with approval *Turek v. General Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011) in the related context of FDCA-food regulations which held that the plaintiff's claims attempting to impose additional labeling requirements regarding the fiber content of a food product were preempted. "In that case, the Seventh Circuit noted that even when additional 'disclaimers [on a product's packaging] would be a good thing" for the consumer, as long as those additional-disclaimer requirements are 'not identical to the labeling requirements imposed on such products by federal law, . . . they are barred.'" *Critcher*, 959 F.3d at 37.

Here, requiring Starbucks to list the level of potassium on the Ground Starbucks® French Roast coffee label would be an additional disclosure not presently required by law or regulation. The FDA exempted coffee from the requirement for nutrition labels on food packaging. 21 C.F.R. §101.9(j)(4); *see also Guidance for Industry: A Food Labeling Guide*, p. 64, L120, 2013 (available at https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-food-labeling-guide, last accessed on Feb. 23, 2023). Recently, in

**43**

Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 20 of 25

mandating potassium disclosures for other foods, the FDA acknowledged that coffee could contain reportable amounts of potassium and deferred the issue. Food Labeling, 81 Fed. Reg. at 33,894; Serving Sizes, 81 Fed. Reg. at 34,027. It also acknowledged the mandatory labeling would be of assistance to patients with chronic kidney disease, but nonetheless did not require that coffee labels disclose potassium levels. Food Labeling, 81 Fed. Reg. at 33,893.

Plaintiff's claims are preempted because Plaintiff seeks to add additional and different obligations on Ground Starbucks® French Roast coffee's label than required by the FDA. Plaintiff contends the "100% Arabica Beans" representation on the label is false because Ground Starbucks® French Roast coffee contains added potassium. (Complaint, ¶ 20.) To avoid liability, Starbucks would need to add a potassium disclosure, which the FDA has already considered and concluded is not required. Accordingly, any claim that Starbucks should have disclosed the potassium content is preempted. *See also Nemphos ex rel. C.G.N. v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 624-25 (4th Cir. 2015) (plaintiff's claim that bottled water contained excess fluoride was preempted by 21 U.S.C. § 343-1 and FDA regulations establishing a standard of identity for bottled water).

**D.    A Reasonable Consumer Would Not Be Materially Misled That 100% Arabica Beans Says Anything about the Potassium (or Any Other Mineral) Content**

Plaintiff is unable to establish her GBL claims because a reasonable consumer would not be misled to think that "100% Arabica Beans" means anything about the potassium content or the content of any other mineral or nutrient in the coffee beans. To state a claim under GBL §§ 349 and 350, Plaintiff must allege that Starbucks "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). To satisfy the materially misleading element, Plaintiff "must plausibly allege that a significant

**44**

**Memorandum of Law In Support of Defendant Starbuck Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 21 of 25

portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 676 (S.D.N.Y. 2021) (citations omitted).

"[I]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (affirming dismissal of claims under GBL §§ 349 and 350 ). "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Id.* at 501 (citing *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019)); *see also Wurtzburger v. Ky. Fried Chicken*, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017) ("[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole."); *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

A reasonable consumer would read "100% Arabica Beans" to mean that the bag contains coffee ground from arabica beans. "Arabica" means "an evergreen shrub or tree (Coffea arabica) yielding seeds that produce a high-quality coffee and form a large portion of the coffee of commerce" and "the seeds of arabica especially roasted and often ground." *See* https://www.merriam-webster.com/dictionary/arabica last accessed on February 26, 2023. The phrase "100% Arabica Beans" makes no reference to the nutritional content of the coffee. Thus, no reasonable consumer would be misled by this designation.

In addition, to the extent Plaintiff claims she believed "100% Arabica Beans" was a representation about the potassium content, she has not alleged there was a material misrepresentation. In *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019), the plaintiff alleged that pet food labeled as "natural" was misleading because

**45**

Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 22 of 25

it contained glyphosate.  The plaintiff did not allege "the amount of glyphosate in the Products or whether that amount is harmful or innocuous."  *Id*.  The court dismissed the complaint for failing to allege a materially misleading representation, and gave the plaintiff an opportunity to amend to plead the amount of glyphosate in the product to support an inference that there was a material amount of glyphosate in the products.  *Id*.  The plaintiff amended the complaint to allege the laboratory results showing the amount of glyphosate.  *Parks v. Ainsworth Pet Nutrition, LLC*, 2020 WL832863, *3 (S.D.N.Y. Feb. 20, 2020) (adding allegation that laboratory testing showed the presence of glyphosate at a level of 19.85 parts per billion).  Nonetheless, even with this additional allegation, the court dismissed the amended complaint, reasoning that the level of glyphosate was negligible and lower than the FDA's limit, such that labeling the food "'natural' is not materially misleading to a reasonable consumer." *Id*.

Here, having not alleged the levels of potassium in the coffee she brewed from the Ground Starbucks® French Roast coffee she purchased, Plaintiff has not alleged facts to support an inference that "100% Arabica Beans" was materially misleading.  Accordingly, the Complaint should be dismissed.

### E.    Plaintiff's Other Claims Also Fail as a Matter of Law

Plaintiff's claims for breach of express warranty, breach of implied warranty, and unjust enrichment are based on the same facts as her GBL claims and can similarly be dismissed because, as explained above, Plaintiff has not plausibly alleged any false or deceptive or materially misleading statements to support these claims.  Plaintiff's claims also suffer from additional fatal defects, as explained below, which provide further independent bases for dismissal.

**46**

Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 23 of 25

1.    <u>Plaintiff Has Failed to State a Claim for Breach of Express Warranty</u>

To state a claim for breach of express warranty under New York law, "a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." *Petrosino v. Stearn's Prods.*, 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018) (citation omitted). However, Plaintiff has failed to plausibly plead facts to support the conclusion that the Ground Starbucks® French Roast coffee contains added potassium. *See Mazella v. Coca-Cola Co.*, 548 F. Supp. 3d 349, 361 (S.D.N.Y. 2021) (dismissing breach of warranty claims because plaintiff failed to plausibly allege any factual misrepresentation on the product label). Accordingly, Plaintiff has failed to satisfy the first element and her claim must be dismissed.

2.    <u>Plaintiff Cannot Allege Facts Sufficient to Support Her Implied Warranty
Claim</u>

Courts have held that a food product is unmerchantable only if it is "unfit for human consumption." *Silva v. Smucker Nat. Foods, Inc.*, 2015 WL 5360022, at *11 (E.D.N.Y. Sep. 14, 2015); *see also Kamara v. Pepperidge Farm, Inc.*, 570 F. Supp. 3d 69, 80 (S.D.N.Y. 2021). The implied warranty of merchantability when made in connection with food relates to whether it is fit for human consumption and does not guarantee that "the product will fulfill a 'buyer's every expectation.'" *Silva*, 2015 WL 5360022, at *11 (citation omitted). Plaintiff does not, and cannot, allege that Ground Starbucks® French Roast coffee is unfit for human consumption. Thus, her breach of implied warranty claim must be dismissed.

3.    <u>Plaintiff's Unjust Enrichment Claim is Entirely Duplicative of Her Other
Claims</u>

Finally, Plaintiff's unjust enrichment claim must be dismissed because it is entirely duplicative of her other claims. *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y.

**47**

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB     Document 14-1     Filed 03/16/23     Page 24 of 25

2012) ("[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim"). Although in some cases a plaintiff may "plead unjust enrichment in the alternative", such claims cannot be "merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017); *Warren v. Stop & Shop Supermarket, LLC*, 592 F. Supp. 3d 268, 287 (S.D.N.Y. 2022). Where, as here, Plaintiff's unjust enrichment claim is based on the same underlying conduct – i.e., the allegation that the Ground Starbucks® French Roast coffee contains added potassium – courts routinely dismiss unjust enrichment claims as duplicative. *See e.g., Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 290-91 (S.D.N.Y. 2014). Plaintiff's unjust enrichments claim should be dismissed.

**F.     Plaintiff's "State Consumer Fraud" Claim is Not Cognizable**

Plaintiff's vague references to "State Consumer Fraud Acts" are insufficient to meet the requirements of Rule 8(a). (*See* Complaint, ¶¶ 38, 49-51); Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim"). Courts in the Second Circuit routinely dismiss claims which merely list state consumer fraud statutes without addressing the elements of the claims. *See In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4743425, at *1 (S.D.N.Y. Sep. 15, 2014) (dismissing claims where plaintiffs failed to identify elements or explain "how their factual allegations establish valid claims for relief under them") (collecting cases); *In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 124 (D. Conn. 2014) ("[m]erely listing possible causes of action without providing a 'short and plain statement of the claim' as it relates to these statutes, is not sufficient . . . under Rule 8(a)").

Here, Plaintiff's allegations do not even identify the alleged "consumer fraud acts", let alone list the elements of each claim. (Complaint ¶¶ 38, 49-51.) Further, Plaintiff makes no effort to explain how Starbucks allegedly violated each of these unidentified "acts."

**48**

**Memorandum of Law In Support of Defendant Starbuck Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 14-1    Filed 03/16/23    Page 25 of 25

Accordingly, Plaintiff has failed to meet the basic pleading requirements of Rule 8(a) and her "multi-state" claims should be dismissed. *In re Aluminum*, 2014 WL 4743425, at *1; *In re Trilegiant*, 11 F. Supp. 3d at 124.

**V.    CONCLUSION**

For the foregoing reasons, Starbucks respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety.

DATED:    March 16, 2023                    Respectfully submitted,

                                            SHEPPARD, MULLIN,RICHTER &
                                            HAMPTON LLP


                                            By:  /s/ *Sascha Henry*
                                            Sascha Henry
                                            CA State Bar No. 191914
                                            *Pro Hac Vice*
                                            shenry@sheppardmullin.com
                                            Robert J. Guite
                                            CA State Bar No. 244590
                                            *Pro Hac Vice Application Forthcoming*
                                            rguite@sheppardmullin.com
                                            Paul Garrity
                                            NY State Bar No. 2756419
                                            pgarrity@sheppardmullin.com


                                            30 Rockefeller Plaza
                                            New York, New York 10112-0015
                                            212.653.8700

                                            Attorneys for Defendant Starbucks Corporation

**49**

**Memorandum of Law In Support of Defendant Starbuck
Corporation's Motion to Dismiss Complaint, Filed March 16, 2023.**
Case 5:22-cv-01199-FJS-ATB     Document 14-2     Filed 03/16/23     Page 1 of 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kristie Brownell, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>Starbucks Coffee Company,<br><br>Defendant. | 5:22-cv-01199-FJS-ATB<br><br>**CERTIFICATE OF SERVICE** |

I, Sascha Henry, hereby certify that, on March 16, 2023, the Defendant Starbucks Corporation's Notice of Motion to Dismiss Complaint and Memorandum of Law in Support of Defendant Starbucks Corporation's Motion to Dismiss Complaint were filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or this District Court's Local Rules, and/or this District Court's Rules on Electronic Service upon the following parties and participants:

Spencer Sheehan, Esq.
spencer@spencersheehan.com,
*Attorney for Plaintiff*

DATED:     March 16, 2023

                                                    /s/ *Sascha Henry*
                                                    Sascha Henry

**50**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 1 of 24

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Kristie Brownell, individually and on behalf of all others similarly situated, | 5:22-01199-FJS-ATB |
| Plaintiff, | |
| - against - | |
| Starbucks Coffee Company, | |
| Defendant | |

Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Dismiss the Complaint

**51**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 2 of 24

## TABLE OF CONTENTS

TABLE OF CONTENTS .......................................................................................... ii

TABLE OF AUTHORITIES ................................................................................... iv

INTRODUCTION ................................................................................................... 1

FACTUAL BACKGROUND .................................................................................. 1

LEGAL STANDARDS .......................................................................................... 2

ARGUMENT .......................................................................................................... 2

I.    PLAINTIFF HAS PLAUSIBLY ALLEGED DECEPTION ............................ 2

    A.    Plaintiff is Not Required to Submit Specific Facts About Laboratory Testing........................................................................................................ 2

    B.    Defendant's Cited Authority is Inapposite ............................................ 3

    C.    "100% Arabica Coffee" Statement Misled Consumers .......................... 6

II.    PRICE PREMIUM ALLEGATIONS ESTABLISH INJURY ......................... 8

III.    PREEMPTION DOES NOT APPLY ............................................................. 9

    A.    Plaintiff Does Not Seek to Impose Non-Identical Requirements ............. 9

    B.    Reliance on Coffee "Exemption" is Misplaced ..................................... 10

IV.    PLAINTIFF CAN PURSUE MULTI-STATE CLAIMS ............................... 12

V.    PLAINTIFF'S WARRANTY CLAIMS SATISFY THE ELEMENTS .......... 13

    A.    "100% Arabica Coffee" was "Affirmation of Fact" of Product's Contents .............................................................................................. 13

    B.    Alternative Criteria for Implied Warranty Satisfied ............................ 13

    C.    Plausible Warranty Allegations Support MMWA Violation ................. 14

VI.    COMMON LAW CLAIMS ARE ADEQUATELY PLED ............................ 14

    A.    Allegations Satisfy Requirements of Rule 9(b) .................................... 14

    B.    Unjust Enrichment is Permitted ........................................................... 14

ii

52

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**

CONCLUSION.................................................................................................................... 15

**53**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 4 of 24

## TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)............................................................................................ 17

*Arista Recs., LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010)................................................................................. 3

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................... 2, 3

*Beardsall v. CVS Pharmacy, Inc.*,
   953 F.3d 969 (7th Cir. 2020) ............................................................................. 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................... 2, 3, 6

*Bell v. Publix Super Mkts., Inc.*,
   982 F.3d 468 (7th Cir. 2020) ............................................................................. 9

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341 (2001)............................................................................................ 13

*Chance v. Armstrong*,
   143 F.3d 698 (2d Cir. 1998)................................................................................. 4

*Chen v. Dunkin' Brands, Inc.*,
   954 F.3d 492 (2d Cir. 2020)................................................................................. 9

*Corsello v. Verizon N.Y., Inc.*,
   18 N.Y.3d 777 (2012) ......................................................................................... 19

*Critcher v. L'Oreal USA, Inc.*,
   959 F.3d 31 (2d Cir. 2020)................................................................ 12, 13, 14, 15

*Dependable Sales & Serv., Inc. v. Truecar, Inc.*,
   No. 15-cv-1742, 2016 WL 79992 (S.D.N.Y. Jan. 6, 2016) .............................. 7

*Duran v. Henkel of Am., Inc.*,
   450 F. Supp. 3d 337 (S.D.N.Y. 2020)........................................................... 8, 11

*Eternity Glob. Master Fund v. Morgan Guar. Trust*,
   375 F.3d 168 (2d Cir. 2004)................................................................................. 7

*Fishon v. Peloton Interactive, Inc.*,
   No. 19-cv-11711, 2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020).......................... 11

iv

**54**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 5 of 24

*Gaminde v. Lang Pharma Nutrition, Inc.,*
No. 18-cv-300, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ............................................. 10

*Goldman v. Belden,*
754 F.2d 1059 (2d Cir. 1985)..................................................................................................... 3

*Gordon v. Hain Celestial Grp., Inc.,*
No. 16-cv-6526, 2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) .................................................. 19

*Hawkins v. Coca-Cola Co.,*
No. 21-cv-8788, 2023 WL 1821944 (S.D.N.Y. Feb. 7, 2023) ............................................. 6, 11

*Hishon v. King,*
467 U.S. 69 (1984)...................................................................................................................... 2

*Hoffman v. Kraft Heinz Foods Co.,*
No. 22-cv-397, 2023 WL 1824795 (S.D.N.Y. Feb. 7, 2023) ..................................................... 6

*Housey v. Procter & Gamble Co.,*
No. 21-cv-2286, 2022 WL 874731 (S.D.N.Y. Mar. 24, 2022)................................................. 19

*In re Aluminum Warehousing Antitrust Litig.,*
No. 13-md-2481, 2014 WL 4743425 (S.D.N.Y. Sept. 15, 2014)....................................... 15, 17

*In Re Pepsico, Inc., Bottled Water Mktg. & Sales Pracs. Litig.,*
588 F. Supp. 2d 527 (S.D.N.Y. 2008)...................................................................................... 12

*In re Plum Baby Food Litig.,*
No. 21-cv-02417, 2022 WL 16552786 (D.N.J. Oct. 31, 2022) ............................................... 10

*In re Trilegiant Corp.,*
11 F. Supp. 3d 82 (D. Conn. 2014).......................................................................................... 16

*Jackson v. Dole Packaged Foods, LLC,*
No. 22-cv-1448, 2022 WL 18027600 (S.D. Ill. Dec. 30, 2022) ................................................ 9

*Kacocha v. Nestle Purina Petcare Co.,*
No. 15-cv-5489, 2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016)............................................... 11

*Kamara v. Pepperidge Farm, Inc.,*
570 F. Supp. 3d 69 (S.D.N.Y. 2021)........................................................................................ 18

*Koenig v. Boulder Brands, Inc.,*
995 F. Supp. 2d 274 (S.D.N.Y.2014)....................................................................................... 10

*Kyszenia v. Ricoh USA, Inc.,*
583 F. Supp. 3d 350 (2022) ....................................................................................................... 5

v

55

**Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Dismiss Complaint, Filed April 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 6 of 24

*Lyons v. Litton Loan Servicing LP,*
  158 F. Supp. 3d 211 (S.D.N.Y. 2016)................................................................... 17

*Mantikas v. Kellogg Co.,*
  910 F.3d 633 (2d Cir. 2018)................................................................................ 9

*Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.,*
  631 F.3d 57 (2d Cir. 2011)............................................................................. 3, 6

*Myers v. Wakefern Food Corp.,*
  No. 20-cv8470, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022) ................................ 5, 6

*Nemphos v. Nestle Waters N. Am., Inc.,*
  775 F.3d 616 (4th Cir. 2015) .............................................................................. 15

*Orlander v. Staples, Inc.,*
  802 F.3d 289 (2d. Cir. 2015)............................................................................. 2, 8

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
  85 N.Y.2d 20 (1995)....................................................................................... 8, 10

*Parks v. Ainsworth Pet Nutrition, LLC,*
  377 F. Supp. 3d 241 (S.D.N.Y. 2019)................................................................. 8

*Pelman ex rel. Pelman v. McDonald's Corp.,*
  396 F.3d 508 (2d Cir. 2005)............................................................................... 11

*Petrosino v. Stearn's Prods., Inc.,*
  No. 16-cv-7735, 2018 WL 1614349 (S.D.N.Y. Mar. 30, 2018).............................. 17

*Rivera v. Navient Sols., LLC,*
  No. 20-cv-1284, 2020 WL 4895698 (S.D.N.Y. August 19, 2020)............................ 8

*Roth v. Jennings,*
  489 F.3d 499 (2d Cir. 2007)............................................................................... 4

*Santiful v. Wegmans Food Mkts., Inc.,*
  No. 20-cv-2933, 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022) ................................ 5

*Seaboard Air Line Ry. v. Koennecke,*
  239 U.S. 352 (1915)......................................................................................... 16

*Singleton v. Fifth Generation, Inc.,*
  No. 15-cv-474, 2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ................................ 12

*Smith v. Apple,*
  583 F. Supp. 3d 554 (2022) .............................................................................. 18

**56**

**Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Dismiss Complaint, Filed April 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 7 of 24

*Steiner v. Southmark Corp.*,
   734 F. Supp. 269 (N.D. Tex. 1990) ....................................................................... 16

*Stevens v. Walgreen Co.*,
   No. 21-cv-10603, 2022 WL 3681279 (S.D.N.Y. Aug. 24, 2022)........................... 17

*Thompson v. Allstate Ins. Co.*,
   476 F.2d 746 (5th Cir. 1973) ................................................................................. 16

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021)........................................................................................... 10

*Turek v. Gen. Mills, Inc.*,
   662 F.3d 423 (7th Cir. 2011) ................................................................................. 13

*Turnipseed v. Simply Orange Juice Co.*,
   No. 20-cv-8677, 2022 WL 657413 (S.D.N.Y. Mar. 4, 2022)................................... 6

*Walker v. Schult*,
   717 F.3d 119 (2d Cir. 2013)..................................................................................... 7

*White v. Holland Furnace Co.*,
   31 F. Supp. 32 (S.D. Ohio 1939) ........................................................................... 15

*Womack v. EVOL Nutrition Assocs., Inc.*,
   No. 21-cv-00332, 2022 WL 3371213 (N.D.N.Y. Aug. 16, 2022)....................... 4, 5

**Statutes**

15 U.S.C. § 2301(6)(A)................................................................................................. 18

N.Y. G.B.L. § 349................................................................................................... 1, 8, 9

N.Y. G.B.L. § 350................................................................................................... 1, 8, 9

N.Y. U.C.C. § 2-313(1)(b)............................................................................................ 17

N.Y. U.C.C. § 2-314 ..................................................................................................... 18

N.Y. U.C.C. § 2-314(2)(a)............................................................................................ 18

N.Y. U.C.C. § 2-314(2)(c)............................................................................................ 18

**Rules**

Fed. R. Civ. P.  8........................................................................................................... 15

Fed. R. Civ. P.  8(a) ................................................................................................. 3, 10

vii

57

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 20     Filed 04/12/23     Page 8 of 24

Fed. R. Civ. P. 8(d)(2) ........................................................................................ 19

Fed. R. Civ. P. 9(b) ............................................................................................. 10

Fed. R. Civ. P. 12(b)(6) ................................................................................. 2, 4, 6

**Regulations**

21 C.F.R. § 101.9(j)(4) ............................................................................. 13, 14, 15

21 C.F.R. § 104.20(a) ..................................................................................... 14, 15

**Other Authorities**

Field Code of 1848 ............................................................................................. 16

Food Labeling: Revision of the Nutrition and Supplement Facts Labels,
81 Fed. Reg. 33,742 (May 27, 2016) ........................................................ 14, 15

Food Labeling: Serving Sizes of Foods That Can Reasonably Be Consumer At
One Eating Occasion,
81 Fed. Reg. 34,000 (May 27, 2016) ............................................................. 14

58

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 9 of 24

### INTRODUCTION

Plaintiff Kristie Brownell ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion by Defendant Starbucks Coffee Company ("Defendant") to Dismiss the Complaint ("Compl."). ECF Nos. 1, 14.

Plaintiff brings claims for damages for violations of GBL §§ 349 and 350 and the consumer protection laws of Alaska, Idaho, Iowa, South Carolina, South Dakota, Texas, Utah, Virginia, and Wyoming, Compl. ¶¶ 45-51, breaches of warranty, Compl. ¶¶ 52-65, and common law claims, Compl. ¶¶ 66-68, on behalf of consumers who purchased Defendant's French Roast "Ground 100% Arabica Coffee" (the "Product"). Compl. ¶ 1. Plaintiff seeks monetary relief, expenses, and reasonable attorneys' fees. Compl. at 9, Prayer for Relief, ¶¶ 2-4.

Defendant argues that the claims should be dismissed because, among other reasons, a reasonable consumer would not be misled in this manner. ECF No. 14-1, Defendant's Memorandum of Law in Support of its Motion to Dismiss ("Def. Mem.") at 7. None of its arguments are a basis for dismissal and its Motion should be denied.

### FACTUAL BACKGROUND

Defendant "manufactures, labels, markets, and sells French Roast 'Ground 100% Arabica Coffee.'" Compl. ¶ 1. Plaintiff expected the Product represented as "100% Arabica Coffee" to contain only ground coffee, and not any additives. Compl. ¶ 34. However, while "[a] normal cup of coffee contains about 116 milligrams of potassium," "[r]ecent reports based on laboratory analysis indicated the Product has significantly greater than expected levels of potassium." Compl. ¶¶ 14, 17. Had Plaintiff known that the Product contained "added potassium," she "would not have purchased [it] or paid as much." Compl. ¶ 48.

**59**

**Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 10 of 24

## LEGAL STANDARDS

To proceed beyond a motion made pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. *Hishon v. King*, 467 U.S. 69, 73 (1984).

## ARGUMENT

### I. PLAINTIFF HAS PLAUSIBLY ALLEGED DECEPTION

To successfully assert a claim under GBL §§ 349 and 350, Plaintiff "must allege that [D]efendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d. Cir. 2015).

### A. Plaintiff is Not Required to Submit Specific Facts About Laboratory Testing

Defendant's contention that Plaintiff must allege "sufficient facts to support her conclusion that Starbucks added potassium to [the Product]" inverts the "notice pleading standard [under] Federal Rule[] [8(a)]." Def. Mem at 15 citing *Iqbal*, 556 U.S. at 678; *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 72 (2d Cir. 2011).

Moreover, "the notion that *Twombly* imposed a heightened standard that require[d] [Plaintiff] to include specific evidence [and] factual allegations," such as "specifi[cally] what level of potassium coffee brewed from [the Product] contains," or "the levels of potassium shown on

2

**60**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 11 of 24

th[e] reports," "is belied by the *Twombly* opinion itself." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) ; citing *Twombly*, 550 U.S. at 555; Def. Mem. at 17.

Since "[the] [C]omplaint provide[d] fair notice of [her] claim[s]" by asserting Plaintiff and consumers understand "the '100% Arabica Coffee' statement to [mean] the contents included only ground coffee and not any additives," she "need not also allege specific facts establishing [her] 'prima facie case.'" *Matson*, 631 F.3d at 72 quoting *Arista Recs.*, 604 F.3d at 119-20; Compl. ¶ 34.

This "[C]ourt's function on a Rule 12(b)(6) motion is not to weigh the evidence" about whether information provided by small businesses "lack[s] reliability and authority," "but merely to determine whether the [C]omplaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985) *compare with* Def. Mem. at 17.

In fact, "[t]he pleading of additional evidence, beyond what is required to enable [] [D]efendant to respond, is not only unnecessary but in contravention of proper pleading procedure." *Roth v. Jennings*, 489 F.3d 499, 512 (2d Cir. 2007).

In considering Defendant's Rule 12(b)(6) Motion, "[t]he issue is not whether [] [P]laintiff is likely to prevail ultimately" and show that a significant number of consumers share her understanding of "100% Arabica Coffee," "but whether [she] is entitled to offer evidence to support the[s] claims." *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998).

B.    Defendant's Cited Authority is Inapposite

Defendant relies on *Womack v. EVOL Nutrition Assocs., Inc.*, for the proposition that Plaintiff cannot "plausibly allege an amount-based theory of liability" because there are "no allegations regarding the amount of the ingredient or facts from which the court could infer it was a large amount." Def. Mem. at 16 citing *Womack v. EVOL Nutrition Assocs., Inc.*, No. 21-cv-00332, 2022 WL 3371213, at *5 (N.D.N.Y. Aug. 16, 2022).

3

**61**

## Plaintiff's Memorandum of Law In Opposition to Defendant's Motion to Dismiss Complaint, Filed April 12, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 12 of 24

However, the court in *Womack* determined that the claims were insufficient because that plaintiff failed to plead that "consumers could not have reasonably discovered that the Products contained Phenibut or that the existence of Phenibut in the Products was exclusively within Defendant's knowledge," due to "public discussion" of the purported issue. Def. Mem. at 16 citing *Womack*, 2022 WL 3371213, at *5 citing *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 360 (2022).

Here, there was no allegation "about the public discussion" surrounding the "greater than expected levels of potassium" in the Product, and nothing about the "laboratory analysis" cited by Plaintiff suggests that "consumers were 'entirely capable of discovering th[is] information on their own.'" *Womack*, 2022 WL 3371213, at *5 citing *Kyszenia*, 583 F. Supp. 3d at 360.

Further, the "laboratory analysis" relied on by Plaintiff is not "insufficient" for the same reasons as the testing relied upon in *Myers v. Wakefern*, which "d[id] not purport to identify the source of vanillin as natural or artificial," where that plaintiff alleged that the Product contained "vanillin [] from artificial sources." Def. Mem. at 16 citing *Myers v. Wakefern Food Corp.*, No. 20-cv8470, 2022 WL 603000, at *4 (S.D.N.Y. Mar. 1, 2022).

That the plaintiff in *Myers* did not "describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, [or] the qualifications of the testers" was not fatal to her showing of deception, but rather her "fail[ure] to substantiate how exactly the [] findings from the purported lab test helped her arrive at th[at] conclusion." Def. Mem. at 16 citing *Myers*, 2022 WL 603000, at *4 citing *Santiful v. Wegmans Food Mkts., Inc.*, No. 20-cv-2933, 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022).

4

**62**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB   Document 20   Filed 04/12/23   Page 13 of 24

Here, Plaintiff alleged that "[a] normal cup of coffee contains about 116 milligrams of potassium," and that "[r]ecent reports based on laboratory analysis indicated the Product has significantly grater than expected levels of potassium." Compl. ¶¶ 14, 17.

Based on these allegations, when "viewed in a light most favorable to [her] and drawing all reasonable inferences in her favor," the "conclusion [that] would evidently follow" is that "this [greater] level is likely intentional, because of potassium's recognized use" for "maintain[ing] the coffee beans' flavor and aroma, while reducing and eliminating any bitterness." Def. Mem. at 16 citing *Myers*, 2022 WL 603000, at *4; *Matson*, 631 F.3d at 72 quoting *Twombly*, 550 U.S. 544 (reciting standard under Rule 12(b)(6)); Compl. ¶¶ 16, 18.

Indeed, the "other recent cases where the plaintiff relied on general references to laboratory tests" cited by Defendant were all dismissed for reasons other than a purported "fail[ure] to allege details about [such] tests." Def. Mem. at 16-17 citing *Hoffman v. Kraft Heinz Foods Co.*, No. 22-cv-397, 2023 WL 1824795, at *6 (S.D.N.Y. Feb. 7, 2023) (referencing "a set of relevant cases cited throughout district courts in the Second Circuit that are fatal to Plaintiff's allegations that malic acid is 'artificial'"); *Hawkins v. Coca-Cola Co.*, No. 21-cv-8788, 2023 WL 1821944, at *7 (S.D.N.Y. Feb. 7, 2023) (explaining that the allegations could not establish "that the purportedly artificial flavors [we]re in fact artificial"); *Turnipseed v. Simply Orange Juice Co.*, No. 20-cv-8677, 2022 WL 657413, at *3 (S.D.N.Y. Mar. 4, 2022) (referencing "[n]*umerous* other courts" which "have already dismissed near-identical challenges to the use of the word 'vanilla' on food labels because there is nothing in the word 'vanilla' itself that would lead a reasonable consumer to understand a product's flavor to be derived mostly or exclusively from the vanilla bean") (emphasis in original).

5

**63**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 14 of 24

Since "a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence," Plaintiff was not required to "allege the levels of potassium in the coffee she brewed." Def. Mem. at 22; *Eternity Glob. Master Fund v. Morgan Guar. Trust*, 375 F.3d 168, 176 (2d Cir. 2004); *Dependable Sales & Serv., Inc. v. Truecar, Inc.*, No. 15-cv-1742, 2016 WL 79992, at \*5 (S.D.N.Y. Jan. 6, 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

Notwithstanding whether Plaintiff is required to provide such information, she nonetheless attaches the laboratory analysis she relied upon in the Complaint as "Exhibit A."[1]

C.    "100% Arabica Coffee" Statement Misled Consumers

While Defendant argues that "a reasonable consumer would not be misled to think that '100% Arabica Coffee' means anything about the potassium content or the content of any other mineral or nutrient," whether a representation is likely to mislead a reasonable consumer "is generally a question of fact not suited for resolution at the motion to dismiss state." Def. Mem. at 20 citing *Orlander*, 802 F.3d at 300; *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 345 (S.D.N.Y. 2020) (listing cases in which motion to dismiss was denied); *see also Rivera v. Navient Sols., LLC*, No. 20-cv-1284, 2020 WL 4895698, at \*7 (S.D.N.Y. August 19, 2020) ("a determination of whether a particular act or practice is misleading is not ordinarily appropriate for decision on a motion to dismiss") (listing cases in which motion to dismiss was denied).

Defendant's promotion of its ground French Roast coffee beans as "100% Arabica Coffee" even though it contains not only ground coffee, but additives, is contrary to GBL §§ 349 and 350, which provide for "[c]onsumers['] [] right to an honest market place where trust prevails between

---

[1] Joshua Rhett Miller, *Starbucks secret: Dark French Roast 'is not 100% coffee,' says complaint*, NEW YORK POST, https://nypost.com/2022/11/01/starbucks-dark-french-roast-is-not-100-coffee-complaint/ (last updated Nov. 1, 2022) citing *What is Good Coffee? Its Certainly Not Starbucks Dark French Roast Laced with Potassium*, PUROAST COFFEE (last visited Mar. 17, 2023) (Ex. A).

6

**64**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 15 of 24

buyer and seller." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995).

In contrast to the plaintiff in *Parks v. Ainsworth Pet Nutrition, LLC*, who failed to set forth whether "the amount of glyphosate in the [p]roducts" was "harmful or innocuous," Plaintiff alleged that the "[a]dded potassium can cause health risks for coffee drinkers with kidney issues, who are generally aware of the amount of potassium in coffee, and excess intake can cause hyperkalemia." Def. Mem. at 21-22 citing *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) (noting that "[t]he presence of negligible amounts of glyphosate in a dog food product ... is not likely to affect consumers' decisions in purchasing the product and is thus not material); Compl. ¶ 19.

The present facts are more analogous to a handful of decisions from Illinois District Courts relying on *Mantikas*, as the "problem [here] lies in the '100%,' especially since the pleadings provide reason to think that consumers understand '100% [Arabica Coffee]' to mean that the [Product] does not have additives." *See, e.g., Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 473 (7th Cir. 2020) (finding that consumer plausibly alleged claims for deceptive labeling based on the "100%" statement on front labels) citing *Mantikas v. Kellogg Co.*, 910 F.3d 633, 638-39 (2d Cir. 2018); *Jackson v. Dole Packaged Foods, LLC*, No. 22-cv-1448, 2022 WL 18027600, at *4 (S.D. Ill. Dec. 30, 2022) (finding that consumer stated plausible theory of deception where a product labeled "100% fruit juice" contained other added ingredients); *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 971 (7th Cir. 2020) (motion to dismiss denied for product represented as "100% Pure Aloe Vera Gel").

While "context is crucial" "in determining whether a reasonable consumer would be misled," GBL §§ 349 and 350 require that "[c]onsumers have the right to an honest market place

7

**65**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB     Document 20     Filed 04/12/23     Page 16 of 24

where trust prevails between buyer and seller." Def. Mem. at 21 citing *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020); *Oswego Laborers'*, 85 N.Y.2d at 25.

## II. PRICE PREMIUM ALLEGATIONS ESTABLISH INJURY

Defendant argues that Plaintiff "fails to allege facts showing that she suffered a concrete and particularized injury" because she "does not allege that she tested" the Product, and her "conclusory price premium allegations [a]re insufficient to find injury in fact." Def. Mem. at 13-14 citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021), *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 18-cv-300, 2019 WL 1338724, at *2 (N.D.N.Y. Mar. 25, 2019), *In re Plum Baby Food Litig.*, No. 21-cv-02417, 2022 WL 16552786, at *8 (D.N.J. Oct. 31, 2022), and *Kimca v. Sprout Foods, Inc.*, No. 21-cv-12977, 2022 WL 1213488, at *3 (D.N.J. Apr. 25, 2022).

However, Plaintiff "adequately alleg[ed] injury under GBL § 349 by claiming that [she] paid a premium for [the P]roduct based on the allegedly misleading representations," as a GBL action "is not subject to the pleading-with-particularity requirements of Rule 9(b) but need only meet the bare-bones pleading requirements of Rule 8(a)." *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 287-88 (S.D.N.Y.2014); *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).

At this early stage of the case, New York courts have consistently held that the allegation that Plaintiff "would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it" "suffice[s] to allege a price premium theory of injury." *Hawkins*, 2023 WL 1821944, at *4; *see also Fishon v. Peloton Interactive, Inc.*, No. 19-cv-11711, 2020 WL 6564755, at *10-11 (S.D.N.Y. Nov. 9, 2020) (allegations that the plaintiffs "would not have purchased the [product], or would not have purchased it on the same terms, [had] they kn[o]w[n] the truth," were sufficient to survive dismissal, because "[n]o more is necessary at this stage"); *Duran*, 450 F. Supp. 3d at 351 (finding that the plaintiff adequately pled

8

**66**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 17 of 24

a price premium theory of injury where he alleged that he and other customers "paid full price for the [p]roduct but received something inferior to what [the defendant] had promised, and that, had [the plaintiff] known that the [p]roduct [was inferior], he would not have purchased the [p]roduct, or would have only paid significantly less for it"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-cv-5489, 2016 WL 4367991, at \*14 (S.D.N.Y. Aug. 12, 2016) (allegation that the plaintiff "would not have paid the premium price he paid" for the product had he "known the truth" was sufficient to state injury based on price premium theory); *Singleton v. Fifth Generation, Inc.*, No. 15-cv-474, 2016 WL 406295, at \*10 (N.D.N.Y. Jan. 12, 2016) (finding that the plaintiff stated a claim under § 349 where he alleged that, had he "known 'the truth,' " he "would not have bought the vodka, or would have paid less for it"); *compare with* Compl. ¶ 48 ("Plaintiff would not have purchased the Product or paid as much if the true facts had been known.").

**III.    PREEMPTION DOES NOT APPLY**

    A.    <u>Plaintiff Does Not Seek to Impose Non-Identical Requirements</u>

While Defendant misconstrues the allegations as "using state law to impose labeling requirements on top of those already mandated in the FDCA and the regulations promulgated thereunder," Plaintiff's allegations are based on Defendant's failure to abide by the "identical requirements" of federal and state law. Def. Mem. at 19 citing *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 34-38 (2d Cir. 2020); *In Re Pepsico, Inc., Bottled Water Mktg. & Sales Pracs. Litig.*, 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008).

The allegations of the Complaint are distinct from *Critcher*, where those plaintiffs alleged that certain cosmetics were deceptively marketed because the defendant did not disclose that some of the product could not be retrieved from its container, whereby the court concluded that they were attempting to impose labeling requirements on top of those already mandated by the FDCA. *Critcher*, 959 F.3d at 35.

9

67

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB     Document 20     Filed 04/12/23     Page 18 of 24

In contrast to claims seeking to impose "additional disclaimer requirements [that] are 'not identical to the labeling requirements imposed on such products by federal law," Plaintiff's claims are "based on state law tort principles," in the context of the "historic primacy of state regulation of matters of health and safety." Def. Mem. at 19 citing *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 427 (7th Cir. 2011); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 344 (2001).

Accordingly, Plaintiff is not "attempting to impose different labeling requirements regarding the [potassium] content of a [the] [P]roduct," because the representations about the Product's contents were made to her, not to the FDA. Def. Mem. at 19 citing *Turek*, 662 F.3d at 427 and *Critcher*, 959 F.3d at 37.

B.     Reliance on Coffee "Exemption" is Misplaced

Defendant argues that the claims are preempted because "the FDA exempted ground coffee from nutrition facts labeling requirements even though the FDA expects ground coffee to contain declarable levels of potassium." Def. Mem. at 18-19 citing 21 C.F.R. § 101.9(j)(4). However, this section explains that this exemption only applies "[*p*]*rovided* [t]hat the food bears no nutrition claims or other nutrition information in any context on the label or in labeling or advertising." 21 C.F.R. § 101.9(j)(4)(emphasis in original).

That "[t]he FDA exempted coffee from the requirement for nutrition labels on food packaging" disregards that the Product bears the claim "100% Arabica Coffee," meaning that this claim was "subject [] to the provisions of this section." Def. Mem. at 19; 21 C.F.R. § 101.9(j)(4).

Further, Defendant's argument that the FDA "did not require that coffee labels disclose potassium levels," disregards its "fortification policy," by which "random fortification of foods could result in over – or under fortification in consumer diets and create imbalances in the food supply," in addition to "result[ing] in deceptive or misleading claims for certain foods." Def. Mem.

10

**68**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 19 of 24

at 20 citing Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33,742, 33,898 (May 27, 2016); *see* 21 C.F.R. § 104.20(a).

By requiring Defendant to indicate that it added potassium to the Product, Plaintiff's claims are consistent with "Congress's intent and the analysis [of] the statutory text in question," which recognized that "coffee could contain reportable amounts of potassium," and "acknowledged th[at] mandatory labeling would be of assistance to patients with chronic kidney disease." Def. Mem. at 18-20 citing *Critcher*, 959 F.3d at 34-35, 81 Fed. Reg. at 33,894, and Food Labeling: Serving Sizes of Foods That Can Reasonably Be Consumer At One Eating Occasion, 81 Fed. Reg. 34,000, 34,027 (May 27, 2016).

Further, since "the FDA has [not] already considered" Defendant's "100% Arabica Coffee" representation with respect to the Product's added potassium, it has not "concluded [that a disclaimer or lower levels of potassium] [are] not required," and the claims are not subject to preemption. Def. Mem. at 20 citing *Nemphos v. Nestle Waters N. Am., Inc.*, 775 F.3d 616, 624-25 (4th Cir. 2015).

Accordingly, Plaintiff is not "using state law to impose labeling requirements on top of those already mandated in the FDCA," because the "100% Arabica Coffee" representation was neither required nor permitted by federal regulations, and because the "fortification" of the ground coffee beans with added potassium meant the Product was not "exempt from nutritional labeling." Def. Mem. at 18-20 citing *Critcher*, 959 F.3d at 36; 21 C.F.R. § 101.9(j)(4); 21 C.F.R. § 104.20(a); 81 Fed. Reg. 33,894.

Lastly, Defendant is incorrect that "[t]o avoid liability, Starbucks would need to add a potassium disclosure," because it could similarly avoid liability by ceasing its practice of adding potassium to the Product. Def. Mem. at 20 citing *Nemphos*, 775 F.3d at 624.

11

**69**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 20 of 24

### IV.    PLAINTIFF CAN PURSUE MULTI-STATE CLAIMS

While Defendant argues that Plaintiff's multi-state claims must be dismissed because she "merely list[ed] state consumer fraud claims without addressing the elements of the claims," or "identify the alleged 'consumer fraud acts,'" Fed. R. Civ. P. 8 "adopted the words 'claim' or 'claim for relief' in place of the term 'cause of action,'" in contrast to the ossified technicalities of the Field Code. Def. Mem. at 24 citing *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481, 2014 WL 4743425, at *1 (S.D.N.Y. Sept. 15, 2014); *White v. Holland Furnace Co.*, 31 F. Supp. 32, 34 (S.D. Ohio 1939) quoting Fed. R. Civ. P. 8(a)(2) *compare with* Field Code of 1848 (requiring the pleader to provide "[a] statement of the facts constituting the cause of action.").[2]

What matters is not whether Plaintiff "f[ound] just exactly the prescribed combination of words and phrases" by "identify[ing] the alleged 'consumer fraud acts" or "list[ing] the elements of each claim" but "the specified conduct of [the] [D]efendant upon which the [P]laintiff tries to enforce h[er] claim." Def. Mem. at 24-25 citing *In re Trilegiant Corp.*, 11 F. Supp. 3d 82, 124 (D. Conn. 2014); *Thompson v. Allstate Ins. Co.*, 476 F.2d 746, 749 (5th Cir. 1973); *see also Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D. Tex. 1990) (requiring to "only apprise the defendant of the time, place, and nature of fraudulent behavior and defendant's relationship thereto.").

Here, "[t]he facts constituting the tort were the same," because consumers beyond this State's borders shared Plaintiff's expectation that the Product would "include[] only ground coffee and not any additives." *Seaboard Air Line Ry. v. Koennecke*, 239 U.S. 352, 354 (1915); Compl. ¶ 46.

---

[2] The Field Code was intended to simplify pleadings, and was successful for a time, until it became as arthritic as what it sought to replace.

12

**70**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB     Document 20     Filed 04/12/23     Page 21 of 24

Though Defendant contends that "Courts in the Second Circuit routinely dismiss [these] claims," the prudent course is "to defer standing objections until after class certification where [as here] certification issues are 'logically antecedent to Article III concerns.'" Def. Mem. at 24 citing *In re Aluminum*, 2014 WL 4743425, at *1; *Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 221 (S.D.N.Y. 2016) quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997)

**V.     PLAINTIFF'S WARRANTY CLAIMS SATISFY THE ELEMENTS**

A.     <u>"100% Arabica Coffee" was "Affirmation of Fact" of Product's Contents</u>

While Defendant argues that Plaintiff's express warranty claim fails because she cannot demonstrate "the existence of a material statement amounting to a warranty," the representation "100% Arabica Coffee" was an "affirmation of fact" that the Product "included only ground coffee and not any additives." Def. Mem. at 23 citing *Petrosino v. Stearn's Prods., Inc.*, No. 16-cv-7735, 2018 WL 1614349, at *8 (S.D.N.Y. Mar. 30, 2018); *Stevens v. Walgreen Co.*, No. 21-cv-10603, 2022 WL 3681279, at *4 (S.D.N.Y. Aug. 24, 2022) quoting N.Y. U.C.C. § 2-313(1)(b); Compl. ¶¶ 1, 34.

B.     <u>Alternative Criteria for Implied Warranty Satisfied</u>

Defendant's attempt to dismiss the implied warranty claim because Plaintiff has not alleged "that the [Product] is unfit for human consumption" disregards that there are other factors considered. Def. Mem. at 23 citing *Kamara v. Pepperidge Farm, Inc.*, 570 F. Supp. 3d 69, 80 (S.D.N.Y. 2021); *see* N.Y. U.C.C. § 2-314 (listing six factors).

First, the Product could not "pass without objection in the trade" as "100% Arabica Coffee" because it contained added potassium, instead of consisting of only ground coffee. N.Y. U.C.C. § 2-314(2)(a); Compl. ¶ 34. Second, the Product was not "fit for the ordinary purpose" of "100% Arabica Coffee" because consumers believe this to mean "the contents included only ground coffee and not any additives." N.Y. U.C.C. § 2-314(2)(c); Compl. ¶ 46.

13

**71**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**
Case 5:22-cv-01199-FJS-ATB     Document 20     Filed 04/12/23     Page 22 of 24

C.     Plausible Warranty Allegations Support MMWA Violation

While Defendant does not address Plaintiff's Magnuson Moss Warranty Act ("MMWA")

claim, her express and implied warranty claims support her MMWA claim. *See Smith v. Apple*,

583 F. Supp. 3d 554, 567 (2022); 15 U.S.C. § 2301(6)(A).

VI.     **COMMON LAW CLAIMS ARE ADEQUATELY PLED**

A.     Allegations Satisfy Requirements of Rule 9(b)

Though Defendant's does not address Plaintiff's common law fraud claim, she nonetheless

satisfied Rule 9(b)'s heightened pleading requirement by providing the "who, what, where, when,

and how" of the fraud, "the first paragraph of any newspaper story." *Housey v. Procter & Gamble*

*Co.*, No. 21-cv-2286, 2022 WL 874731, at *3 (S.D.N.Y. Mar. 24, 2022).

The "who" is "Starbucks Corporation." Compl. ¶ 31. The "what" was the label statement

"Ground 100% Arabica Coffee." Compl. ¶ 1. The "where" and "when" was at "Walmart, 8064

Brewerton Rd, Cicero NY 13039 and [] Target, 8061 Brewerton Rd, Cicero, NY 13039 between

2020 and 2022." Compl. ¶ 33. The "how" was containing "significantly greater than expected

levels of potassium" compared to a normal cup of coffee. Compl. ¶¶ 14, 17.

B.     Unjust Enrichment is Permitted

Defendant's argument, that Plaintiff's "unjust enrichment claim must be dismissed because

it is entirely duplicative of her other claims," disregards that Fed. R. Civ. P. 8(d)(2) permits him

to "set out 2 or more statements of a claim or defense alternatively or hypothetically," and her

"pleading is sufficient if any one of them is sufficient." Def. Mem. at 23-24 citing *Corsello v.*

*Verizon N.Y., Inc.*, 18 N.Y.3d 777, 791 (2012); *Gordon v. Hain Celestial Grp., Inc.*, No. 16-cv-

6526, 2017 WL 213815, at *5 (S.D.N.Y. Jan. 18, 2017).

14

**72**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 23 of 24

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendant's Motion or in the alternative

grant leave to file an Amended Complaint.

Dated:        April 12, 2023

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Theodore Hillebrand
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
thillebrand@spencersheehan.com

Spencer Sheehan
60 Cuttermill Rd Ste 412
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

15

**73**

**Plaintiff's Memorandum of Law In Opposition to Defendant's
Motion to Dismiss Complaint, Filed April 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 20    Filed 04/12/23    Page 24 of 24

### Certificate of Service

I certify that on April 12, 2023, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ Theodore Hillebrand

74

**Exhibit "A" - Article, "What is Good Coffee? Its Certainly Not Starbucks Dark French Roast Laced with Potassium".**

Case 5:22-cv-01199-FJS-ATB    Document 20-1    Filed 04/12/23    Page 1 of 4

# EXHIBIT A

75

**Exhibit "A" - Article, "What is Good Coffee? Its Certainly Not Starbucks Dark French Roast Laced with Potassium".**
Case 5:22-cv-01199-FJS-ATB    Document 20-1    Filed 04/12/23    Page 2 of 4



## What is Good Coffee?

## Its Certainly Not Starbucks Dark French Roast

## Laced with Potassium

All coffee drinkers have a favorite coffee, and what the favorite is today might not be a year from now, or ten years from now. It all depends on tastes, what's the latest innovation in CoffeeWorld, and what you happen to try at any given fortuitous moment. Whatever good coffee is though, it can't be one using chemicals to artificially change it. That's simply wrong. And this is what we at Puroast Coffee uncovered in the course of our routine checking into coffee chemistry.

### *Starbucks Coffee is Adding Potassium to Their Coffee*

**So Why and How did we find out?**

The founders of Puroast Coffee learned that among all of the things that can affect the taste of coffee, where the beans are from, what flavoring or sweetener you use, the preferred milk or milk-like style, the particular grind and clearly how its brewed, the most important of all is ROASTING.

Roasting converts a raw, green ag product that looks and tastes like a dried pea in its harvested state, into something magical, a fruit that is grown in over 70 countries and consumed ritually the world over. Half the planet is hooked on brews from the roasted seed of this coffee tree fruit.

Puroast came upon a roasting technique left behind by the modern world. A method used mostly by coffee growers on their farms who had kept this age-old roasting practice in daily use. Why? Flavor. And also, as we later discovered, that certain feeling that comes from boosted antioxidants and less acid. This method of roasting is really a Holy Grail in coffee – it naturally produces smooth, rich flavor, with lower acid and an antioxidant boost. Puroast Coffee has all of this.

This lowering of acid levels is big – either you suffer from coffee acidity or know someone that does. Coffee is just a lot better when it's not acidic. Puroast does this *naturally* through its authentic, painstaking roast. So we confirmed this in research published in a scientific journal (www.puroast.com/the-story) , say it on our packaging, and generally let people know:

### *It's possible to make coffee naturally smooth, without chemicals*



70% Less Acid    7 Times more antioxidants    100% Pure Coffee

Than other brands    Than green tea

# 76

**Exhibit "A" - Article, "What is Good Coffee? Its Certainly Not Starbucks Dark French Roast Laced with Potassium".**

Case 5:22-cv-01199-FJS-ATB    Document 20-1    Filed 04/12/23    Page 3 of 4

Meanwhile Starbucks created a phenomenal global brand of coffee over the years, but for some reason of late, felt that they needed to add potassium, to their Dark French Roast Coffee.  And not just a dash, a whole lot of potassium – a large cup of Starbucks Dark French brewed at home has 1600 ppm of additional potassium. Not what anyone would expect in their morning brew.

So Puroast discovered this potassium doping because our company routinely checks the pH of brewed coffee.  Low acid coffee is a key attribute in our products, and we are constantly checking the pH of Puroast against other brands.  Among other reasons, we do these tests to confirm the veracity of other brands' low acid claims - many claim to have lower acid, and in fact do not (more on that later).

### *Routine Test Reveals Something Strange*

In March, 2022 in Puroast facility labs, a routine check of many coffees including Starbucks, showed this brands French Roast to have a pH of 5.74.   pH is a well-known and accepted measure of acid.  This Starbucks acid level was nearly 70% lower than their historical norm of approximately 5.2 (a paper published by UC Davis showed this).  This same paper confirmed Puroast exhibited a pH of 5.99.  All roasted coffee has a pH in the range of 4.9 – 5.2, depending on the bean type (robusta vs arabica), the bean origin (country) and level of roast, dark roasts have slightly less acid (pH 5.25) than house blends (pH 5.1)– assuming the same coffee bean.

**The Smoking Gun**

After checking and rechecking its internal data to ensure accuracy, Puroast went to the University of North Carolina A&T food science department, led by Dr. Salam Ibrahim to seek academic-level pH analysis.   Dr. Ibrahim agreed to conduct pH tests on a set of blind samples that include 3 Puroast coffees, and 2 Starbucks flavors including their Dark French anomaly.  NC A&T's blind tests confirmed the a pH reading for Starbucks Dark French Roast of 5.74, parallel to Puroast's French Roast with a pH of 5.8.   Interestingly Starbucks House Blend measured conventional 5.2 pH, so nothing added here.

It was clear Starbucks was doing something different to at least their Dark French Roast (another product is now added to the mix, Starbucks Espresso).

OK, so here is Puroast with a method of coffee making, producing *naturally* smooth tasting, lower acid coffee, basically invented the category of low acid coffee, and now Starbucks comes along and we find out they're cheating, artificially changing the character of their coffee with a chemical additive.

How? – how is Starbucks making an historically low acid coffee, with no mention of it – anywhere?  Not on packaging, website, advertising, no where to be found that Starbucks 2022 version Dark French Roast for the first time ever has 70% less acid than it's prior year versions.

Puroast's technical history and work with such esteemed scientists as Dr. Taka Shibamoto and Arthur Euler, MD, taught us that there were certain ways, *other than through Puroast's roasting,* to lower acid.  Add substitutes, like barley or wheat.  Or add buffers, like salts containing Sodium, Calcium or Potassium, or potentially with Phosphorus.

With no reference other than the basic science, Puroast engaged again Dr. Ibrahim and his NC A&T research team.  Their labs established a test program to analyze 6 different coffees, including the culprit Starbucks Dark French, and tested for the aforementioned elements.   All showed common base levels of these chemicals except Starbucks Dark French.

### *Starbucks adds Potassium to Coffee and Doesn't Tell Anyone*

77

**Exhibit "A" - Article, "What is Good Coffee? Its Certainly Not Starbucks Dark French Roast Laced with Potassium".**
Case 5:22-cv-01199-FJS-ATB    Document 20-1    Filed 04/12/23    Page 4 of 4



The chart shows all coffees, including Starbucks' own Veranda and House Blends have pH and potassium levels within a predictable and narrow range.  The baseline averages 6000 ppm for potassium, and 5.15 for pH.  But look at Starbucks French Roast – 6800 ppm.   This is the equivalent over the baseline of the coffees tested of 180 mg of potassium in an 8oz cup of coffee.  This is consistent with the abnormally high pH of 5.74 of the Starbucks Dark French Roast coffee.

Its clear Starbucks is adding potassium to coffee, it alters the acid chemistry and probably other things as well.  The facts are:

> ➤ Starbucks Dark French Roast shows abnormally low acid/high pH

> ➤ Abnormal levels of potassium of 800ppm detected in the same coffee

> ➤ Starbucks says nothing - not on packaging, website, advertising, nowhere – about this additive

So what happens now?

### *Puroast is the only coffee that's naturally smooth tasting and low acid*

Puroast has built a brand around the natural roasting of smooth tasting, lower acid coffee.  It comes from a traditional roasting craft, made commercial by our advanced technology, but preserving the great flavor and wellness that the age-old method is known for.

Now a big company is basically cheating – throwing chemicals into their coffee so that it will imitate the same smooth taste and low acid, that we, Puroast, make naturally.

Since Starbucks told no one about this, well then its up to us.  So we filed a complaint with the North Carolina (our home state) Attorney General who has referred this for further investigation to the NC State Department of Agriculture.

If Starbucks or anyone else wants to make their coffee smoother with chemicals, fine but just tell us.  In the meantime Puroast will continue delivering their smooth tasting, low acid coffee the traditional way.  Naturally.

## "FEEL BETTER NOT BITTER!"™

**78**

**Defendant Starbucks's Reply In Support of Motion to
Dismiss Complaint, Filed April 25, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 23     Filed 04/25/23     Page 1 of 15

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Kristie Brownell, individually and on behalf of all others similarly situated,<br><br>              Plaintiff,<br><br>        -against-<br><br>Starbucks Coffee Company,<br><br>           Defendant. | Case No.: 5:22-cv-01199-FJS-ATB |

**REPLY IN SUPPORT OF
STARBUCKS CORPORATION'S MOTION TO DISMISS COMPLAINT**

**79**

### Defendant Starbucks's Reply In Support of Motion to Dismiss Complaint, Filed April 25, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 23    Filed 04/25/23    Page 2 of 15

### TABLE OF CONTENTS

Page

I.  INTRODUCTION ................................................................................................1

II. PLAINTIFF'S BELATED ATTACHMENT OF AN INTERNET POSTING AS THE "LABORATORY ANALYSIS" CONFIRMS SHE HAS NO PLAUSIBLE BASIS TO ALLEGE STARBUCKS MISLABELS ITS COFFEE.................................2

III. THE COURT SHOULD DISMISS THE COMPLAINT ....................................2

    A.  The Court Should Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(1) Because Plaintiff Has Not Alleged She Suffered a Concrete and Particularized Harm ........................................................................................2

    B.  The Court Should Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) Because Plaintiff Fails to Sufficiently Plead Facts Beyond a "Mere Possibility" that Starbucks Mislabeled its Coffee.........................................5

        1.  Plaintiff's Reliance on "Notice Pleading" Standards is Misplaced. ...........5

        2.  Plaintiff Fails to Plausibly Plead Facts That Starbucks Mislabels Its Ground French Roast. ................................................................................5

    C.  A Reasonable Consumer Would Not Be Materially Misled That 100% Arabica Beans Says Anything about Potassium Content ...............................7

    D.  Plaintiff's Claims Are Preempted by Federal Law and Regulations Which Exempt Coffee From Labeling the Quantity of Potassium...................................8

    E.  Plaintiff's Other Claims Also Fail as a Matter of Law ...............................9

    F.  Plaintiff's "State Consumer Fraud" Claim is Not Cognizable.....................9

IV. CONCLUSION...................................................................................................10

**80**

**Defendant Starbucks's Reply In Support of Motion to
Dismiss Complaint, Filed April 25, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 23     Filed 04/25/23     Page 3 of 15

<u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Allen v. Mattingly*
  2011 WL 1261103 (E.D.N.Y. Mar. 29, 2011)...........................................................9

*In re Aluminum Warehousing Antitrust Litig.*
  2014 WL 4743425 (S.D.N.Y. Sep. 15, 2014)...........................................................9

*Anderson v. Aset Corp.*
  329 F. Supp. 2d 380 (W.D.N.Y. 2004).....................................................................2

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009)..........................................................................5, 6, 7, 10

*Bell v. Pubix Super Mkts., Inc.*
  982 F.3d 468 (7th Cir. 2020) ...................................................................................8

*Bynum v. Family Dollar Stores, Inc.*
  592 F. Supp. 3d 304 (S.D.N.Y. 2022).......................................................................9

*Chance v. Armstrong*
  143 F.3d 698 (2d Cir. 1998).....................................................................................5

*Critcher v. L'Oreal USA, Inc.*
  959 F.3d 31 (2d Cir. 2020).......................................................................................8

*Duran v. Henkel of Am., Inc.*
  450 F. Supp. 3d 337 (S.D.N.Y. 2020).......................................................................4

*Fishon v. Peloton Interactive, Inc.*
  2020 WL 6564755 (S.D.N.Y. Nov. 9, 2020).............................................................4

*Gaminde v. Lang Pharma Nutrition, Inc.*
  2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019) ...............................................1, 2, 3

*Goldman v. Belden*
  754 F.2d 1059 (2d Cir. 1985)....................................................................................5

*Hawkins v. Coca-Cola Co.*
  2023 WL 1821944 (S.D.N.Y. Feb. 7, 2023)..........................................................4, 7

*Hoffman v. Kraft Heinz Foods Co.*
  2023 WL 1824795 (S.D.N.Y. Feb. 7, 2023).............................................................7

# 81

## Defendant Starbucks's Reply In Support of Motion to Dismiss Complaint, Filed April 25, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 23    Filed 04/25/23    Page 4 of 15

*Howze v. Mondelez Glob. LLC*
    2023 WL 122307 (W.D.N.Y. Jan. 5, 2023)................................................................9

*Kacocha v. Nestle Purina Petcare Co.*
    2016 WL 4367991 (S.D.N.Y. Aug. 12, 2016)..........................................................4

*Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*
    631 F.3d 57 (2d Cir. 2011)......................................................................................5

*Melendez v. One Brands*
    2020 WL 1283793 (E.D.N.Y. Mar. 16, 2020)........................................................9

*Myers v. Wakefern Food Group*
    2022 WL 603000 (S.D.N.Y. Mar. 1, 2022)............................................................6

*Onaka v. Shiseido Am. Corp.*
    2023 WL 2663877 (S.D.N.Y. Mar. 28, 2023).....................................................3, 4

*Parks v. Ainsworth Pet Nutrition, LLC*
    2020 WL 832863 (S.D.N.Y. Feb. 20, 2020)..........................................................7

*Parks v. Ainsworth Pet Nutrition, LLC*
    377 F. Supp. 3d 241 (S.D.N.Y. 2019)....................................................................7

*Pelman ex rel. Pelman v. McDonald's Corp*
    396 F.3d 508 (2d Cir. 2005)....................................................................................4

*Records Ltd. Liab. Co. v. Doe*
    604 F.3d 110 (2d Cir. 2010)....................................................................................5

*Roth v. Jennings*
    489 F.3d 499 (2d Cir. 2007)....................................................................................5

*Seaboard Air Line Ry. v. Koennecke*
    239 U.S. 352 (1915).............................................................................................3, 9

*Singleton v. Fifth Generation, Inc.*
    2016 WL 406295 (N.D.N.Y. Jan. 12, 2016)..........................................................4

*Steiner v. Southmark Corp.*
    734 F. Supp. 269 (N.D. Tex. 1990).......................................................................10

*Thompson v. Allstate Ins. Co.*
    476 F.2d 746 (5th Cir. 1973).................................................................................10

*Turnipseed v. Simply Orange Juice Co.*
    2022 WL 657413 (S.D.N.Y. Mar. 4, 2022)............................................................7

**82**

**Defendant Starbucks's Reply In Support of Motion to
Dismiss Complaint, Filed April 25, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 23     Filed 04/25/23     Page 5 of 15

*White v. Holland Furnace Co.*
  31 F. Supp. 32 (S.D. Ohio 1939) .............................................................................9

*Womack v. EVOL Nutrition Assocs.*
  2022 WL 3371213 (N.D.N.Y. Aug. 16, 2022) ........................................................6

**Statutes and Regulations**

81 Fed. Reg. 33982 ........................................................................................................2

**Federal Rules of Civil Procedure**

Rule 8 ...............................................................................................................................9

Rule 8(a) ..........................................................................................................................1

Rule 12(b)(1) ..........................................................................................................1, 2, 5

Rule 12(b)(6) ..............................................................................................................1, 5

**83**

**Defendant Starbucks's Reply In Support of Motion to
Dismiss Complaint, Filed April 25, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 23    Filed 04/25/23    Page 6 of 15

## I.    **INTRODUCTION**

Plaintiff fails to establish that she has suffered an injury in fact under Article III, and for that reason, her Complaint should be dismissed pursuant to Rule 12(b)(1). Plaintiff ignores a recent case in which the plaintiff – as here – based a mislabeling claim on an article reciting a study. *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019). Just as it was speculative in that case to presume that the product purchased suffered from the same alleged defect as the product tested in the study, so too is it speculative that the Plaintiff bought Ground Starbucks® French Roast with added or heightened levels of potassium. As in *Gaminde*, Plaintiff's failure to test her product precludes her claims from going forward.

Plaintiff's Opposition impermissibly refers to material not alleged in her Complaint, but even "Exhibit A" shows that she has not plausibly alleged that Starbucks mislabeled its Ground Starbucks® French Roast. Accordingly, she cannot to survive a motion pursuant to Rule 12(b)(6).[1] Exhibit A (ECF No. 20-1) is a confusing recitation of a purported single test of the levels of potassium in 6 different coffees. At most, it states that the tested Starbucks coffee contains 13% more potassium than the average baseline or 180 mg of potassium per 8-ounce cup of brewed coffee. Plaintiff does not dispute that FDA has concluded that potassium plays an important role in reducing certain chronic diseases, potassium is under-consumed in the United States and adults should consume 4200 mg per day. Thus, even if given full credit, Exhibit A suggests that the coffee tested provides 4% of FDA's recommended daily intake. Plaintiff's reliance on "reports based on laboratory analysis" is insufficient to meet her pleading obligations under Rule 8(a) that Starbucks mislabels Ground Starbucks® French Roast.

Plaintiff's unjust enrichment claim should be dismissed as duplicative, and her vague references to unidentified "State Consumer Fraud Acts" fail to place Starbucks on notice of which statutes Plaintiff contends it violated. For all these reasons, the Motion should be granted.

---

[1] Starbucks denies that it adds potassium to Ground Starbucks® French Roast and contends Plaintiff has not plausibly alleged sufficient facts to support the allegation or to require that it be treated as true for purposes of this Motion.

**84**

**Defendant Starbucks's Reply In Support of Motion to
Dismiss Complaint, Filed April 25, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 23    Filed 04/25/23    Page 7 of 15

## II. PLAINTIFF'S BELATED ATTACHMENT OF AN INTERNET POSTING AS THE "LABORATORY ANALYSIS" CONFIRMS SHE HAS NO PLAUSIBLE BASIS TO ALLEGE STARBUCKS MISLABELS ITS COFFEE

A plaintiff is not permitted to amend her complaint through allegations which are not plead in the complaint and they must be disregarded by the court in deciding a motion to dismiss. *See Anderson v. Aset Corp.*, 329 F. Supp. 2d 380, 383 (W.D.N.Y. 2004). Plaintiff impermissibly attaches the "laboratory analysis she relied upon in the Complaint" as Exhibit A. ECF No. 20 ("Opp."), p. 6. Exhibit A should be ignored.

Even if considered, Exhibit A further demonstrates that Plaintiff has not plausibly alleged Starbucks mislabels its coffee. Exhibit A is an internet posting by a company purporting to compare its coffee to Starbucks coffee and to summarize test results analyzing the parts per million (ppm) of potassium in six coffees. ECF No. 20-1 ("Exhibit A"), p. 4. Noting that the "baseline averages 6000 ppm for potassium", it states that Starbucks® French Roast contains 6800 ppm which is approximately 13% more than the baseline. *Id.* Without explanation, Exhibit A asserts this is the equivalent of 180 mg of potassium in an 8-ounce cup of coffee even though Plaintiff states that an 8-ounce cup provides 116 mg. *Id.*

For comparison, a banana is expected to provide 411 mg of potassium. *See* U.S. Dept. of Ag., Ag. Res. Svc., https://fdc.nal.usda.gov/fdc-app.html#/food-details/2344720/nutrients (last accessed on April 24, 2023). FDA recommends adults consume 4200 mg daily. 81 Fed. Reg. 33741, 33982. Thus, 180 mg would provide only 4% of the recommended daily amount.

## III. THE COURT SHOULD DISMISS THE COMPLAINT

### A. The Court Should Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(1) Because Plaintiff Has Not Alleged She Suffered a Concrete and Particularized Harm

Plaintiff does not distinguish *Gaminde v. Lang Pharma Nutrition, Inc.*, 2019 WL 1338724 (N.D.N.Y. Mar. 25, 2019), where the court granted a Rule 12(b)(1) motion to dismiss

**85**

**Defendant Starbucks's Reply In Support of Motion to
Dismiss Complaint, Filed April 25, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 23    Filed 04/25/23    Page 8 of 15

because the plaintiff failed to sufficiently allege that he suffered an injury in fact. *See* Opp., p. 8

(citing but not addressing *Gaminde*). There, the plaintiff alleged that the bottle of CVS Krill oil

he purchased contained less than the labeled 300 mg of Omega-3 Krill oil. *Gaminde,* 2019 WL

1338724, at *2. The basis for his claim was not his personal experience with the product, but an

article describing a USDA study finding that certain similar bottles tested contained only 60% of

the stated amount. *Id.*

Just as it was speculation to assume the product the plaintiff purchased in *Gaminde* would

have test results similar to those referenced in an article, so too is it speculation to assume that

the Ground Starbucks® French Roast that Plaintiff purchased would have similar test results as

the "[r]ecent reports based on laboratory analysis" referred to in the Complaint. *See* ECF No. 1,

¶ 17. Plaintiff's failure to test the Ground Starbucks® French Roast she purchased is "fatal" to

establishing that she suffered an injury in a personal and individual way. *Gaminde,* 2019 WL

1338724, at *2-3 (plaintiff's "failure to allege that he tested his bottle of CVS Krill Oil—indeed,

his failure to make any allegation regarding how he knows that it was mislabeled—is fatal.").

Instead of alleging facts showing that the Ground Starbucks® French Roast she

purchased contained added or heightened levels of potassium, Plaintiff relies solely on her

conclusory allegation that she paid a price premium for the coffee. Opp., pp. 8-9. Courts have

previously found such allegations insufficient to establish harm. For example, in *Onaka v.*

*Shiseido Am. Corp.,* 2023 WL 2663877, at *6 (S.D.N.Y. Mar. 28, 2023), the court granted a

12(b)(1) motion to dismiss a false advertising case relating to allegedly undisclosed PFAS

chemicals in cosmetics. There, the court found that a single test of the *line* of cosmetics was

insufficient to plausibly allege that the products plaintiffs bought were misbranded. *Id.* at *4.

The court further found that, despite plaintiffs alleging they paid a price premium, "they must

86

**Defendant Starbucks's Reply In Support of Motion to
Dismiss Complaint, Filed April 25, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 23    Filed 04/25/23    Page 9 of 15

plead enough facts to make it plausible that they did indeed suffer the sort of injury that would

entitle them to relief." *Id.* (quotations omitted). Because they had not plausibly alleged the

cosmetics they bought contained PFAS, conclusory allegations of economic injury were

insufficient on their own to establish standing. *Id.* at *5-6.

Plaintiff cites a series of cases where the plaintiff alleged an economic injury, but in

every case there were factual allegations of deceptive advertising that, if true, applied to the

plaintiff's purchase. For example, in *Koenig v. Boulder Brands, Inc.*, the court concluded the

plaintiff alleged product was mislabeled where it stated "fat free" but also listed one gram of fat

in a less conspicuous part of the label. 995 F. Supp. 2d 274, 287-88 (S.D.N.Y. 2014). Thus,

having plausibly alleged how the product the plaintiff purchased was mislabeled, conclusory

allegations of paying a price premium were sufficient. *Id.*; *see also Pelman ex rel. Pelman v.

McDonald's Corp*, 396 F.3d 508, 510 (2d Cir. 2005) (plaintiffs who ate at McDonald's 3 to 5

times a week and suffered adverse health effects were misled by advertising that McDonald's

food could be part of a healthy lifestyle); *Fishon v. Peloton Interactive, Inc.,* 2020 WL 6564755,

at *10-11 (S.D.N.Y. Nov. 9, 2020) ("ever-growing" library exercise classes allegedly misleading

because Peloton removed 57% of available classes); *Duran v. Henkel of Am., Inc.*, 450 F. Supp.

3d 337, 343 (S.D.N.Y. 2020) ("no flakes" hair gel allegedly mislabeled because plaintiff

experienced white flakes); *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991 (S.D.N.Y.

Aug. 12, 2016) (ad misled plaintiff to believe dog treats had bacon as the primary ingredient, but

label showed otherwise); *Singleton v. Fifth Generation, Inc.*, 2016 WL 406295 (N.D.N.Y. Jan.

12, 2016) (allegedly deceptive to name vodka as "Handmade" when mass produced). Plaintiff

also cites *Hawkins*, 2023 WL 1821944, at *10, which Starbucks addresses *infra* at p. 7.

Here, Plaintiff has not plausibly alleged facts that the Ground Starbucks® French Roast

**87**

**Defendant Starbucks's Reply In Support of Motion to
Dismiss Complaint, Filed April 25, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 23     Filed 04/25/23     Page 10 of 15

she bought contained heightened levels of potassium. Her conclusory allegations that she paid a

price premium thus do not satisfy her burden of pleading she suffered a concrete injury.

Accordingly, the Court should grant the Motion pursuant to Rule 12(b)(1).

> **B.     The Court Should Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6)
> Because Plaintiff Fails to Sufficiently Plead Facts Beyond a "Mere
> Possibility" that Starbucks Mislabeled its Coffee**

> **1.     Plaintiff's Reliance on "Notice Pleading" Standards is Misplaced.**

Plaintiff argues she is not required to plead "additional evidence" at this stage to support

her claims. *See* Opp., pp. 2-3. However, Plaintiff conflates two concepts: (1) whether she must

present prima facie "evidence" at the pleadings stage (not at issue) and (2) whether she has met

the plausibility standard under Rule 12(b)(6) (at issue here).

Plaintiff cites several cases involving improper considerations by district courts of the

*weight* of the parties' evidence at the pleading stage. *See* Opp., p. 3; *Chance v. Armstrong*, 143

F.3d 698, 702 (2d Cir. 1998) (court improperly evaluated strength of plaintiff's medical

evidence); *Roth v. Jennings*, 489 F.3d 499, 512 (2d Cir. 2007); *Goldman v. Belden*, 754 F.2d

1059, 1067 (2d Cir. 1985). Unlike in these cases, however, Starbucks is not asking the Court to

weigh the *strength* of Plaintiff's proffered evidence at this stage. Rather, as further discussed

below, Starbucks challenges Plaintiff's failure to plead facts which would "permit the court to

infer more than the *mere possibility* of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)

(emphasis added).[2] Accordingly, her claims must be dismissed.

> **2.     Plaintiff Fails to Plausibly Plead Facts That Starbucks Mislabels Its
> Ground French Roast.**

[2] This plausibility analysis is reflected in the other two cases cited by Plaintiff. *See Records Ltd.
Liab. Co. v. Doe*, 604 F.3d 110, 120-22 (2d Cir. 2010) (exhibit to the complaint identified on
"Defendant-by-Defendant basis" details supporting each infringement action); *see also Matson v.
Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 73 (2d Cir. 2011).

88

**Defendant Starbucks's Reply In Support of Motion to
Dismiss Complaint, Filed April 25, 2023.**
Case 5:22-cv-01199-FJS-ATB     Document 23     Filed 04/25/23     Page 11 of 15

Plaintiff fails to persuasively distinguish the cases cited in the Motion where courts have held that a general reference to laboratory tests is insufficient to plausibly plead a claim. First, Plaintiff misreads and misapplies *Womack v. EVOL Nutrition Assocs.*, 2022 WL 3371213 (N.D.N.Y. Aug. 16, 2022). Opp., pp. 3-4. Plaintiff argues that the court dismissed the GBL claim because there was "'public discussion' of the purported issue." *Id.*, p. 3. While true for the second of the three theories of liability (namely that the defendant hid Phenibut by using its chemical name on the label), the plaintiff also alleged that the defendant hid the *amount* of Phenibut. *Womack*, 2022 WL 3371213, at *5. The court dismissed the *amount*-based claim, reasoning that there were no allegations regarding the amount of the ingredient or facts from which the court could infer it was a large amount. *Id.*

Here, Plaintiff impermissibly asks the Court to accept two inferences: (1) she purchased coffee with a heightened level of potassium, and, (2) 13% higher potassium means Starbucks added potassium to the coffee. Mere possibility of Starbucks adding potassium is insufficient to plead Starbucks mislabels its Ground French Roast. *Iqbal*, 556 U.S. at 679.

Second, Plaintiff argues that *Myers v. Wakefern Food Group*, 2022 WL 603000 (S.D.N.Y. Mar. 1, 2022), is distinguishable because the plaintiff failed to substantiate how the lab tests helped her arrive at her conclusion the product had been mislabeled. Opp., pp. 4-5. Plaintiff ignores the immediately preceding paragraph where the court stated: "To begin, Plaintiff claims that the Product was allegedly subjected to a laboratory test, but she fails to provide any details whatsoever about this laboratory test entailed [. . .] She does not, for instance, describe the testing methodology followed, the specific date, time, or place of the testing, who conducted the testing, the qualifications of the testers, etc." *Myers*, at *4.

Plaintiff asserts that the other cases cited by Starbucks were dismissed for reasons other

**89**

**Defendant Starbucks's Reply In Support of Motion to**
**Dismiss Complaint, Filed April 25, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 23     Filed 04/25/23     Page 12 of 15

than a purported failure to allege details about the laboratory tests on which they relied. Not so. In *Hoffman v. Kraft Heinz Foods Co.*, 2023 WL 1824795 (S.D.N.Y. Feb. 7, 2023), the court held, under *Iqbal*, it was not required to accept that the product had been mislabeled based on the plaintiff's conclusory allegations regarding "laboratory analysis." *Id.* at *7-8; *accord Hawkins v. Coca-Cola Co.*, 2023 WL 1821944, at *7 (S.D.N.Y. Feb. 7, 2023) (court not required to accept conclusory statements regarding "laboratory analysis" citing *Iqbal*); *Turnipseed v. Simply Orange Juice Co.*, 2022 WL 657413, at *4 (S.D.N.Y. Mar. 4, 2022) (same).

Plaintiff infers that the coffee she purchased had heightened levels of potassium, and further infers that those levels mean Starbucks added potassium. Her claims are not plausible.

**C.** **A Reasonable Consumer Would Not Be Materially Misled That 100% Arabica Beans Says Anything about Potassium Content**

Plaintiff attempts to distinguish a lawsuit that was dismissed because the plaintiff failed to allege that pet food was materially misrepresented as "natural" when it contained glyphosate. Opp., p. 7. The court first dismissed the complaint because the plaintiff did not allege the *amount* of glyphosate present. *Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 247 (S.D.N.Y. 2019). After the plaintiff amended the complaint to allege the amount, the court again dismissed, reasoning that the level of glyphosate was negligible and lower than the FDA's limit; thus, labeling the food "'natural' is not materially misleading to a reasonable consumer." *Parks v. Ainsworth Pet Nutrition, LLC*, 2020 WL 832863, at *3 (S.D.N.Y. Feb. 20, 2020).

Plaintiff responds that she has alleged that added potassium can present health risks for those with kidney issues, but Plaintiff's argument misses the point that she must allege a material misrepresentation. Opp., p. 7. Vague allegations about "recent reports based on laboratory analysis" are too conclusory to plausibly allege Starbucks added potassium. Even if the coffee Plaintiff bought had the same level of potassium (180 mg for an 8-ounce cup) as shown in ECF

**90**

**Defendant Starbucks's Reply In Support of Motion to
Dismiss Complaint, Filed April 25, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 23     Filed 04/25/23     Page 13 of 15

20-1, she was not materially misled by slightly more potassium given it is only 4% of the FDA daily recommended amount.

Plaintiff argues that the facts in this case are analogous to a "handful of decisions from Illinois District Courts." Opp., p. 7. None of those cases involved arabica beans or coffee. *Compare*, Opp., p. 7 ("100% [Arabica Coffee]") *with Bell v. Pubix Super Mkts., Inc.*, 982 F.3d 468, 473 (7th Cir. 2020) (relating to "100% grated parmesan cheese", not coffee).

In context, a reasonable consumer expects "100% arabica beans" to mean that the bag contains coffee ground from arabica beans.

### D.     Plaintiff's Claims Are Preempted by Federal Law and Regulations Which Exempt Coffee From Labeling the Quantity of Potassium

To respond to the Motion's preemption arguments, Plaintiff makes two arguments, and both are unpersuasive. First, Plaintiff argues that "100% arabica beans" is a nutrition claim or other nutrition information, and thus, the coffee is not exempt. Opp., p. 10 (citing 21 C.F.R. 101.9(j)(4)). Plaintiff cites no authority for her proposition that specifying the type of plant from which the beans were grown constitutes a "nutrition claim" or "nutrition information." If Plaintiff were correct, the exemption for tea and coffee would subsume the rule because many teas and coffees specify the plant origin, such as chamomile and peppermint teas.

Second, Plaintiff asserts that preemption does not apply because Starbucks has fortified its coffee with potassium (Opp., p. 10), but this argument ignores that Plaintiff fails to allege plausible facts that Starbucks added potassium to its coffee. *See supra,* III(A) and (B). Without plausible facts that Starbucks adds potassium, Plaintiff's claims are preempted. Plaintiff cannot require Starbucks to add a potassium disclosure to its label by way of this lawsuit. *Critcher v. L'Oreal USA, Inc.*, 959 F.3d 31, 37 (2d Cir. 2020) (affirming dismissal of GBL claims on preemption grounds in cosmetics case and observing that in a food case the disclaimer is barred

**91**

**Defendant Starbucks's Reply In Support of Motion to
Dismiss Complaint, Filed April 25, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 23    Filed 04/25/23    Page 14 of 15

by federal law where it is not identical to labeling requirements).

### E.    Plaintiff's Other Claims Also Fail as a Matter of Law

Plaintiff's other common law claims are based on the same facts as her GBL claims and are subject to dismissal because Plaintiff has not plausibly alleged any materially misleading statements to support the claims.  Plaintiff's argument that she may "alternatively" plead her GBL and unjust enrichment claims (Opp., p. 14) disregards the wealth of case law in this circuit dismissing duplicative unjust enrichment claims.  *See*, e.g., *Bynum v. Family Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 316-17 (S.D.N.Y. 2022) ("Plaintiff's unjust enrichment claim must be dismissed because it merely duplicates his other claims"); *accord Melendez v. One Brands*, 2020 WL 1283793, at *8 (E.D.N.Y. Mar. 16, 2020); *Howze v. Mondelez Glob. LLC*, 2023 WL 122307, at *7 (W.D.N.Y. Jan. 5, 2023).  Plaintiff's claim should similarly be dismissed.

### F.    Plaintiff's "State Consumer Fraud" Claim is Not Cognizable

Plaintiff argues that she has provided Starbucks sufficient notice of her "multi-state" claims because she has "specified conduct of [the] [D]efendant."  Opp., pp. 12-13.  However, courts have repeatedly dismissed claims where a plaintiff fails to provide the defendant notice of *what* state laws it purportedly violated and/or *how* they were violated.  *See In re Aluminum Warehousing Antitrust Litig.*, 2014 WL 4743425, at *1 (S.D.N.Y. Sep. 15, 2014); *Allen v. Mattingly*, 2011 WL 1261103, at *17 (E.D.N.Y. Mar. 29, 2011) (Rule 8 not met where a "plaintiff fails to allege what section(s) of that statute defendants allegedly violated or any factual allegations upon which that claim rests").

None of the authorities cited by Plaintiff relieve her of these requirements.  Two of the cases Plaintiff cites do not even address notice pleading.  *See White v. Holland Furnace Co.*, 31 F. Supp. 32, 33 (S.D. Ohio 1939) (involving motion for leave to file an amended complaint); *Seaboard Air Line Ry. v. Koennecke*, 239 U.S. 352 (1915) (involving challenge to due process

**92**

**Defendant Starbucks's Reply In Support of Motion to
Dismiss Complaint, Filed April 25, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 23    Filed 04/25/23    Page 15 of 15

under 14th Amendment at trial).  The other authorities cited by Plaintiff *identified* the purported

claims at issue.  *See Thompson v. Allstate Ins. Co.*, 476 F.2d 746, 748 (5th Cir. 1973) (discussing

"cause of action in tort for intentional interference with another's business"); *Steiner v.

Southmark Corp.*, 734 F. Supp. 269, 272 (N.D. Tex. 1990) (discussing "claims for relief pursuant

to § 11 of the Securities Act of 1933, 15 U.S.C. § 77k, and Texas common law theories").

In contrast, Plaintiff's vague allegations appear to seek certification in nine different

states for unidentified "Consumer Fraud Acts." *See* ECF No. 1, ¶¶ 38, 49, 50 and 51.  Without

identifying *which laws* Starbucks has purportedly violated, Plaintiff's allegations are insufficient

to put Starbucks on notice.  Accordingly, her "multi-state" claims should be dismissed.

## IV.    CONCLUSION

Because plausibility requires "more than a sheer possibility that a defendant has acted

unlawfully" (*Ashcroft*, 556 U.S. at 678) and for the other reasons stated herein, the Motion

should be granted and the Complaint dismissed.

DATED:    April 25, 2023             Respectfully submitted,
                                     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP


                                     By:        /s/ *Sascha Henry*
                                     _____
                                     Sascha Henry
                                     CA State Bar No. 191914, *Pro Hac Vice*
                                     shenry@sheppardmullin.com
                                     Robert J. Guite
                                     CA State Bar No. 244590, *Pro Hac Vice*
                                     rguite@sheppardmullin.com
                                     Paul Garrity
                                     NY State Bar No. 2756419
                                     pgarrity@sheppardmullin.com

                                     30 Rockefeller Plaza
                                     New York, New York 10112-0015
                                     212.653.8700

                                     *Attorneys for Defendant Starbucks Corporation*

**93**

**Memorandum Decision and Order, Filed July 12, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 24     Filed 07/12/23     Page 1 of 20

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

KRISTIE BROWNELL, *individually and
on behalf of all others similarly situated,*

Plaintiff,

v.                                                                          5:22-CV-1199
                                                                                (FJS/ATB)
STARBUCKS COFFEE COMPANY,

Defendant.

_____

APPEARANCES                                         OF COUNSEL

SHEEHAN & ASSOCIATES, P.C.            SPENCER SHEEHAN, ESQ.
60 Cuttermill Road                               THEODORE T. HILLEBRAND, ESQ.
Suite 412
Great Neck, New York 11021
Attorneys for Plaintiff

SHEPPARD MULLIN RICHTER &         PAUL W. GARRITY, ESQ.
HAMPTON LLP                                     ROBERTY J. GUITE, ESQ.
30 Rockefeller Plaza                             SASCHA HENRY, ESQ.
39th Floor
New York, New York 10112-0002
Attorneys for Defendant

SCULLIN, Senior Judge

MEMORANDUM-DECISION AND ORDER

I. BACKGROUND

Plaintiff Kristie Brownell commenced this diversity action on behalf of herself and all

others similarly situated against Defendant Starbucks Coffee Company, alleging that

Defendant's French Roast Ground 100% Arabica Coffee ("the Product"), as sold in stores and

online, is not actually 100% ground coffee because it contains added potassium at greater than

**94**

**Memorandum Decision and Order, Filed July 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 24    Filed 07/12/23    Page 2 of 20

expected levels. *See* Dkt. No. 1, Compl., at ¶¶ 1, 17-22. Plaintiff asserts that added potassium can cause health risks for coffee drinkers with kidney issues, who are generally aware of the amount of potassium in coffee, and excess intake can cause hyperkalemia. *See id.* at ¶ 19. Plaintiff also alleges that Defendant sells the Product at a premium price that is higher than similar products, approximately $10.99 for a twelve-ounce bag excluding tax, based on its misrepresentation that the Product is "100% Arabica Coffee." *See id.* at ¶¶ 20, 22.

Plaintiff contends that she "read and relied on the '100% Arabica Coffee' statement to believe the contents included only ground coffee and not any additives," and she "paid more for the Product than she would have had she known the representations were false and misleading," or she would not have purchased it at all. *See id.* at ¶¶ 34, 36. Plaintiff seeks to represent a "New York Class," including "[a]ll persons in the State of New York who purchased the Products during the statutes of limitations for each cause of action alleged" and a "Consumer Fraud Multi-State Class," which would include "[a]ll persons in the States of Texas, South Dakota, Wyoming, Idaho, Alaska, Iowa, Virginia, South Carolina, and Utah who purchased the Products during the statutes of limitations for each cause of action alleged." *See id.* at ¶ 38.

Plaintiff alleges the following causes of action against Defendant: (1) violations of Sections 349 and 350 of New York's General Business Law ("GBL") for false, misleading, and deceptive representations and omissions; (2) violations of various states' Consumer Fraud Acts, which prohibit the use of unfair or deceptive business practices; (3) breaches of express warranty, implied warranty of merchantability and fitness for a particular purpose, and the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, because Defendant described the Product so that Plaintiff believed its contents included only ground coffee and not any additives; (4) fraud based on Defendant's misrepresentation that the Product only contained ground coffee;

## 95

**Memorandum Decision and Order, Filed July 12, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 24     Filed 07/12/23     Page 3 of 20

and (5) unjust enrichment based on the fact that Defendant obtained benefits and monies because the Product was not as represented and expected. *See id.* at ¶¶ 45-68.

Pending before the Court is Defendant's motion to dismiss Plaintiff's complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 14. Plaintiff opposes the motion. *See* Dkt. No. 20.

## II. DISCUSSION

### A. Legal standards governing motions to dismiss

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the material facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *LMC Indus. Contrs., Inc. v. Dominion Energy Transmission, Inc.,* No. 5:20-CV-677 (FJS/ATB), 2021 U.S. Dist. LEXIS 159441, *3 (N.D.N.Y. Aug. 24, 2021) (citing *Interpharm, Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted)). However, the court is not required to credit legal conclusions, bare assertions, or conclusory allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citations omitted). As such, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S.] at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007]). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929). Therefore, under this standard, a plaintiff must support her claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Thus, if the plaintiff has not "'nudged [her] claims' . . . 'across the line from

## 96

**Memorandum Decision and Order, Filed July 12, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 24     Filed 07/12/23     Page 4 of 20

conceivable to plausible,'" the court must dismiss the complaint. *Id.* at 680 (quoting [*Twombly*, 550 U.S. at 570]).

"'The standard for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is "substantively identical" to the 12(b)(6) standard.'" *Rehab. Support Servs., Inc. v. City of Albany*, No. 1:14CV0499 (LEK/RFT), 2015 U.S. Dist. LEXIS 86081, *6 (N.D.N.Y. July 2, 2015) (Kahn, J.) (quoting *Berkovitz v. Vill. of S. Blooming Grove*, No. 09 CIV 0291, 2010 U.S. Dist. LEXIS 93563, 2010 WL 3528884, at *5 (S.D.N.Y. Sept. 3, 2010) (quoting *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003))). "'To survive a defendant's Rule 12(b)(1) motion to dismiss for lack of standing, plaintiffs must allege facts that affirmatively and plausibly suggest that [they have] standing to sue.'" *Id.* at *12 (quoting *Kiryas Joel Alliance v. Village of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012) (alteration in original) (internal quotation marks omitted)).

### B. Plaintiff's standing to pursue this action

"The Constitution limits federal courts' jurisdiction to actual cases or controversies." *Brokamp v. James*, 66 F.4th 374, 386 (2d Cir. 2023) (citing U.S. Const. art. III, § 2). "'The doctrine of standing gives meaning to these constitutional limits,' *Susan B. Anthony List v. Dreihaus*, 573 U.S. 149, 157, 134 S. Ct. 2334, 189 L. Ed. 2d 246 (2014), by requiring a plaintiff to 'allege[] such a personal stake in the outcome of the controversy as to warrant h[er] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on h[er] behalf,' *Warth v. Seldin*, 422 U.S. 490, 498-99, 95 S. Ct. 2197, 45 L. Ed. 3d 343 (1975) (internal quotation marks omitted)." *Id.* "To satisfy the constitutional requirement of standing, plaintiffs in federal court bear the burden of establishing that (1) they have suffered an 'injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b)

**97**

**Memorandum Decision and Order, Filed July 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 24    Filed 07/12/23    Page 5 of 20

actual or imminent, not conjectural or hypothetical'; (2) the injury is 'fairly traceable to the challenged action of the defendant'; and (3) it is 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Soule v. Conn. Ass'n of Sch., Inc.*, 57 F.4th 43, 50 (2d Cir. 2022) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citations and internal quotation marks omitted)). "'Particularized' injuries 'affect the plaintiff in a personal and individual way.'" *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 442 (2d Cir. 2022) (quoting [*Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)] (internal quotation marks omitted)). "Concrete injuries are 'physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts.'" *Id.* at 442-43 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. ___, ___, 141 S. Ct. 2190, 2206, 210 L. Ed. 2d 568 (2021); *see also Maddox v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 63-64 (2d Cir. 2021)).

Defendant requests that the Court dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure because Plaintiff lacks standing to pursue this action since she has not alleged that she suffered a concrete and particularized harm. *See* Dkt. No. 14-1, Def's Memorandum in Support, at 13. Defendant's argument relies on *Gaminde v. Lang Pharma Nutrition, Inc.*, No. 1:18-cv-300 (GLS/DEP), 2019 U.S. Dist. LEXIS 48595 (N.D.N.Y. Mar. 25, 2019) (Sharpe, S.J.), to assert that Plaintiff does not have standing because she did not have the Product she purchased tested for added potassium.[1] *See id.* at 13-14. Additionally,

---

[1] In its reply, Defendant further agued that "Plaintiff's failure to test the [Product] she purchased is 'fatal' to establishing that she suffered an injury in a personal and individual way." *See* Dkt. No. 23, Def's Reply, at 8 (quoting *Gaminde*, 2019 WL 1338724, at *2-3 (parenthetical omitted)). The Court rejects this interpretation of *Gaminde*, which relies on caselaw from the 8th Circuit and does not directly address injuries based on price premiums.

98

**Memorandum Decision and Order, Filed July 12, 2023.**
Case 5:22-cv-01199-FJS-ATB     Document 24     Filed 07/12/23     Page 6 of 20

Defendant argues that Plaintiff does not allege any facts to support her alleged "price premium" injury, such as identifying alternative products that are cheaper. *See id.* at 14-15.

In Plaintiff's response, she appears to conflate a concrete and particularized injury sufficient for Article III standing with suffering an injury as an element of a cause of action. Plaintiff points to allegations in her complaint that she paid a premium price for the Product believing that it contained "Ground 100% Arabica Coffee" without any additives, including potassium. *See* Dkt. No. 20, Pl's Memorandum in Opposition, at 16 (citing Dkt. No. 1 at ¶¶ 34-37). According to Plaintiff, because these statements show that she allegedly suffered an injury under GBL § 349, she has also shown that she suffered a concrete and particularized injury to satisfy constitutional standing requirements. *See id.*

"[M]ultiple courts have held that allegations that a plaintiff suffered a price premium injury is sufficient to support Article III standing at the motion to dismiss stage." *Fishon v. Peloton Interactive, Inc.*, No. 19-cv-11711 (LJL), 2022 U.S. Dist. LEXIS 143930, *18 (S.D.N.Y. Aug. 11, 2022) (collecting cases); *see also Clinger v. Edgewell Pers. Care Brands, LLC*, No. 3:21-cv-1040 (JAM), 2023 U.S. Dist. LEXIS 41461, *17 (D. Conn. Mar. 13, 2023) (noting that "[o]verpayment for mislabeled products is a recognized injury-in-fact." *See Patane v. Nestlé Waters North America, Inc. (Patane I)*, 314 F. Supp. 3d 375, 380 (D. Conn. 2018)); *Duchimaza v. Niagara Bottling, LLC*, 619 F. Supp. 3d 395, 409 (S.D.N.Y. 2022) (holding that a plaintiff's allegation that he paid a "price premium" for a product because of the defendant's allegedly false and misleading claim is "sufficient to plead an injury in fact."). Courts within the Second Circuit have found that a plaintiff has alleged facts to satisfy constitutional standing requirements as long as the plaintiff's complaint plausibly alleges that she bought a product at an inflated price, and she would not have paid that price if the product had not been falsely

**99**

**Memorandum Decision and Order, Filed July 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 24    Filed 07/12/23    Page 7 of 20

labeled. *See, e.g., Duchimaza,* 619 F. Supp. 3d at 409; *Kacocha v. Nestle Purina Petcare Co.,* No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, *25 (S.D.N.Y. Aug. 11, 2016); *Segedie v. Hain Celestial Grp., Inc.,* No. 14-cv-5029 (NSR), 2015 U.S. Dist. LEXIS 60739, *31 (S.D.N.Y. May 7, 2015).

In Plaintiff's complaint, she specifically alleges that she "read and relied on the '100% Arabica Coffee' statement to believe the contents included only ground coffee and not any additives." *See* Dkt. No. 1 at ¶ 34. Plaintiff claims that she bought the Product at or exceeding $10.99 for twelve ounces, excluding tax, which was a "premium price" that was "higher than similar products, represented in a non-misleading way, and higher than [the Product] would be sold for absent the misleading representations and omissions." *See id.* at ¶¶ 22, 35. Plaintiff further asserts that she "paid more for the Product than she would have had she known the representations were false and misleading, or would not have purchased it." *See id.* at ¶ 36. Although she has narrowly done so, when considering this early stage of litigation and that the Court must view these facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has plausibly asserted an injury in fact in that she allegedly paid a premium price for the Product based on Defendant's misrepresentation that it did not contain additives, including potassium. Accordingly, the Court finds that Plaintiff has shown constitutional standing at this juncture to pursue her claims.

**C. Whether Plaintiff has adequately alleged facts to support each of her claims**

*1. GBL §§ 349 and 350*

"Section 349 of the GBL declares deceptive acts and practices unlawful and section 350 declares false advertising unlawful." *Barreto v. Westbrae Nat., Inc.,* 518 F. Supp. 3d 795, 802 (S.D.N.Y. 2021); *see* N.Y. Gen. Bus. L. §§ 349, 350. "'The standard for recovery under

**100**

**Memorandum Decision and Order, Filed July 12, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 24    Filed 07/12/23    Page 8 of 20

[section] 350, while specific to false advertising, is otherwise identical to Section 349.'" *Id.*
(quoting *Denenberg v. Rosen*, 71 A.D.3d 187, 194, 897 N.Y.S.2d 391 (1st Dep't 2010) (quoting
*Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324 n.1, 774 N.E.2d 1190, 746 N.Y.S.2d
858 (2002))). "There are three requirements for a claim under [New York's] GBL: 1) the
challenged act or practice was consumer-oriented; 2) the act was misleading in a material way;
and 3) the plaintiff suffered injury as a result of the challenged act." *Womack v. EVOL*
*Nutrition Assocs., Inc.*, No. 6:21-CV-00332 (BKS/TWD), 2021 U.S. Dist. LEXIS 238347, *21
(N.D.N.Y. Dec. 14, 2021) (Sannes, J.) (citing *Stutman v. Chemical Bank*, 95 N.Y.2d 24, 29, 731
N.E.2d 608, 709 N.Y.S.2d 892 (2000)).

With respect to the first element, "[c]onsumer-oriented conduct encompasses acts or
practices that 'have a broad impact on consumers at large[.]'" *Tomassini v. FCA US, LLC*, No.
3:14-cv-1226 (MAD/DEP), 2016 U.S. Dist. LEXIS 202635, *12 (N.D.N.Y. Nov. 23, 2016)
(D'Agostino, J.) (quoting *N.Y. Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (1995) (quotation
omitted)). "Conduct that is sufficiently consumer oriented includes practices that constitute 'a
standard or routine practice that was "consumer-oriented in the sense that [it] potentially
affect[ed] similarly situated consumers."'" *Id.* (quoting *N. State Autobahn, Inc. v. Progressive*
*Ins. Group Co.*, 102 A.D.3d 5, 12, 953 N.Y.S.2d 96 (2d Dept. 2012) (internal citations
omitted)). The parties do not appear to dispute that the Product's labeling was consumer-
oriented.

"With regard to the second element, the New York Court of Appeals has adopted 'an
objective definition of deceptive acts and practices.'" *Id.* (quoting *Oswego [Laborers' Local 214*
*Pension Fund v. Marine Midland Bank, N.A.]*, 85 N.Y.2d [20,] 26 [(N.Y. 1995)]). "The test is
whether the misrepresentation or omission is 'likely to mislead a reasonable consumer acting

## 101

### Memorandum Decision and Order, Filed July 12, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 24    Filed 07/12/23    Page 9 of 20

reasonably under the circumstances.'" *Id.* (quoting [*Oswego*, 85 N.Y.2d] at 26). "In determining whether a reasonable consumer would be misled, '[c]ourts view each allegedly misleading statement in light of its context on the product label or advertisement as a whole.'" *Barreto*, 518 F. Supp. 3d at 802 (quoting *Pichardo v. Only What You Need, Inc.*, 20-cv-493 (VEC), 2020 U.S. Dist. LEXIS 199791, 2020 WL 6323775, at *2 (S.D.N.Y. Oct. 27, 2020) (citing *Wurtzburger v. Kentucky Fried Chicken*, 16-cv-08186, 2017 U.S. Dist. LEXIS 205881, 2017 WL 6416296, at *3 (S.D.N.Y. Dec. 13, 2017)); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (parenthetical omitted)).

"'To plead an injury pursuant to either §§ 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase."'" *Womack*, 2021 U.S. Dist. LEXIS 238347, at *21-*22 (quoting *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021) (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015))). "'[C]onsumers who buy a product that they would not have purchased, absent a manufacturer's deceptive commercial practices[,] have not suffered an injury under [GBL] § 349.'" *Id.* at *22 (quoting *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 292 (S.D.N.Y. 2015) (internal quotations and annotations omitted) (quoting *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 679 (S.D.N.Y. 2012))). "'Instead, a plaintiff must plead something more than the defendant's deception; for example, that the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health.'" *Id.* (quoting *Colpitts*, 527 F. Supp. 3d at 576 (citing *Preira*, 885 F. Supp. 2d at 677); *see also Stutman v. Chemical Bank*, 95 N.Y.2d 24, 731 N.E.2d 608, 612, 709 N.Y.S.2d 892 (N.Y. 2000) (parenthetical omitted)).

**102**

**Memorandum Decision and Order, Filed July 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 24    Filed 07/12/23    Page 10 of 20

Plaintiff's complaint includes a photograph of the Product at issue; and, in the lower left-hand corner of the photograph of the bag of coffee, Plaintiff has circled the phrase "Ground 100% Arabica Coffee." *See* Dkt. No. 1 at ¶ 1. As part of Plaintiff's cause of action under GBL §§ 349 and 350, she alleges that she "saw and relied on the '100% Arabica Coffee' statement to believe the contents included only ground coffee and not any additives." *See id.* at ¶ 46. Plaintiff further alleges that "Defendant's false, misleading, and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions." *See id.* at ¶ 47. Plaintiff then claims that she "would not have purchased the Product or paid as much if the true facts had been known, suffering damages." *See id.* at ¶ 48. Elsewhere in her complaint, Plaintiff asserts that she paid a premium price of "approximately no less than $10.99 for 12 oz, excluding tax and sales," which was "higher than similar products." *See id.* at ¶ 22. She also alleges that "[a] normal cup of coffee contains about 116 milligrams of potassium," and that "added potassium maintains the coffee beans' flavor and aroma, while reducing and eliminating any bitterness." *See id.* at ¶¶ 14, 16. Plaintiff alleges that "[r]ecent reports based on laboratory analysis indicated the Product has significantly greater than expected levels of potassium"; and, "[a]ccording to those knowledgeable about coffee production, this level is likely intentional, because of potassium's recognized use for this purpose." *See id.* at ¶¶ 17-18.

Plaintiff does not cite to any of those reports or attach them to her complaint.[2] She does not point to any figure or other data set showing the amount of potassium in the Product. She

---

[2] Because Plaintiff did not cite to or identify them in any way in her complaint, she cannot later "incorporate by reference" studies or articles pertaining to those analyses. Thus, although Plaintiff attaches a "study" to her memorandum of law in response, the Court cannot consider it as part of the pleadings at this stage of litigation. The Court further notes that, even if it could consider the "study" Plaintiff provided, such "study" appears to be an advertisement for Puroast, a competitor in the coffee market, rather than a scientific study. *See* Dkt. No. 20-1.

## 103

**Memorandum Decision and Order, Filed July 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 24    Filed 07/12/23    Page 11 of 20

does not allege that she suffered any kind of reaction as a result of heightened levels of potassium in the coffee, or that she has kidney issues and may have suffered a reaction. To the extent Plaintiff has alleged that she paid a prime premium for coffee free from added potassium, her vague allegations do not show that the Product, in fact, contains added potassium. The Court therefore finds that a vague reference to "[r]ecent reports based on laboratory analysis" without identifying those reports or results of that analysis are bare and conclusory assertions that, even if accepted as true, does not plausibly state a claim for relief as required under Rule 8 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hoffman v. Kraft Heinz Foods Co.*, No. 22-CV-397 (KMK), 2023 U.S. Dist. LEXIS 20929, *24-*25 (S.D.N.Y. Feb. 7, 2023).

Nonetheless, even if Plaintiff plausibly alleged that there was heightened potassium in the Product, the Court finds that she has not shown that a reasonable person would believe that "100% Arabica Coffee" meant that the Product contained ground coffee beans without any vitamins or minerals, including added potassium. As Plaintiff herself admits, even a "normal" cup of coffee allegedly contains 116 milligrams of potassium. *See* Dkt. No. 1 at ¶ 14. Furthermore, as Defendant points out in its memorandum of law, the word "arabica" simply refers to the plant from which the coffee bean was harvested. *See* Dkt. No. 14-1 at 21. The word "arabica" refers to a "coffee tree, *Coffea arabica*, native to Ethiopia but extensively cultivated in tropical climates" and also sometimes refers to "the coffee beans produced by this tree, and the typically mild-flavoured, high-quality coffee obtained from them." *Arabica,*

## 104

### Memorandum Decision and Order, Filed July 12, 2023.

*Oxford English Dictionary* (3rd ed. 2013).[3]  The Court therefore finds that a reasonable consumer acting under reasonable circumstances would understand the labeling of "100% Arabica Coffee" on the Product to mean that the ground coffee beans are exclusively from the arabica plant, and the Product does not contain coffee beans from any other type of coffee bean producing plant.  Thus, the Court finds that a reasonable consumer would not assume "100% Arabica Coffee" means coffee without additives, vitamins, or minerals.  *See Barreto*, 518 F. Supp. 3d at 802-06.  Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's causes of action under GBL §§ 349 and 350 for failure to state a claim.[4]

#### 2.  *State Consumer Fraud Acts*

In Plaintiff's complaint, she alleges that "[t]he Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive business practices in the conduct of commerce."  *See* Dkt. No. 1 at ¶ 49.  Plaintiff further alleges that "[t]he members of the Consumer Fraud Multi-State Class reserve their rights to assert their consumer protection claims under the Consumer Fraud Acts of the States they represent and/or the consumer protection statute invoked by Plaintiff."  *See id.* at ¶ 50.  Finally, Plaintiff asserts that

---

[3] Defendant relies on *Merriam-Webster*'s online dictionary definition of "arabica," which similarly provides that it is "an evergreen shrub or tree (*Coffea arabica*) yielding seeds that produce a high-quality coffee and form a large portion of the coffee of commerce," as well as meaning "the seeds of arabica especially roasted and often ground."  *Arabica, Merriam-Webster's Dictionary*, https://www.merriam-webster.com/dictionary/arabica (last accessed July 6, 2023).

[4] The Court does not address Defendant's alternative defense that the Food, Drug, and Cosmetic Act preempts Plaintiff's GBL §§ 349 and 350 claims as it found that Plaintiff failed to state a claim on the face of her pleadings.  *See Barreto*, 518 F. Supp. 3d at 806.

**105**

**Memorandum Decision and Order, Filed July 12, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 24    Filed 07/12/23    Page 13 of 20

"Defendant intended that members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, which they did, suffering damages." *See id.* at ¶ 51. Plaintiff never identifies the "Consumer Fraud Acts" that she alleges Defendant violated or how Defendant allegedly did so. Without providing factual contentions or the grounds upon which she bases her alleged entitlement to relief, Plaintiff has made it "impossible for [D]efendant to assess what she ultimately hopes to prove." *Male v. Tops Friendly Mkts.*, No. 07-CV-6573, 2008 U.S. Dist. LEXIS 33004, *10-*11 (W.D.N.Y. Apr. 22, 2008). Thus, the Court finds that this cause of action falls short of satisfying Rule 8's pleading requirements and grants Defendant's motion to dismiss Plaintiff's "Consumer Fraud Acts" claim.

### 3. *Breaches of Express Warranty, Implied Warranty of Merchantability/Fitness for a Particular Purpose, and Magnuson Moss Warranty Act*

Plaintiff generally alleges that Defendant breached an express warranty, breached the implied warranties of merchantability and fitness for a particular purpose, and violated the Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq. See* Dkt. No. 1 at ¶¶ 52-65.

"To adequately state a claim for breach of an express warranty under New York law, plaintiffs must plead '(1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by this breach.'" *Hawkins v. Coca-Cola Co.*, No. 21-CV-8788 (KMK), __ F. Supp. 3d __, 2023 U.S. Dist. LEXIS 20931, *27 (S.D.N.Y. Feb. 7, 2023) (quoting *Wynn*, 2021 U.S. Dist. LEXIS 9714, 2021 WL 168541, at *7 (quoting *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014))). The Court finds that Plaintiff's express warranty claim fails as Plaintiff has not shown

## 106

**Memorandum Decision and Order, Filed July 12, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 24     Filed 07/12/23     Page 14 of 20

that Defendant added potassium to the Product or that a reasonable consumer would interpret "100% Arabica Coffee" to mean that there were no additives, including vitamins and minerals. *See Barreto*, 518 F. Supp. 3d at 806.

"'Implied warranties include the implied warranty of merchantability and the implied warranty of fitness for a particular purpose.'" *Lahey v. Bev. Mktg. USA, Inc.*, No. CV 19-1902 (SJF) (ARL), 2020 U.S. Dist. LEXIS 68049, *18 (E.D.N.Y. Apr. 16, 2020) (quoting *Jackson v. Eddy's LI RV Ctr., Inc.*, 845 F. Supp. 2d 523, 530-31 (E.D.N.Y. 2012)). "'In New York, any implied warranty of merchantability is governed by Section 2-314 of the New York Uniform Commercial Code ("UCC"),' which provides, '"a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."'" *Id.* (citing [*Jackson*, 845 F. Supp. at 530-31] (citing N.Y. U.C.C. § 2-314(1))). "'[W]here the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for human consumption to be of merchantable quality.'" *Id.* at *19 (quoting [*Silva v. Smucker Natural Foods, Inc.*, No. 14-CV-6154 (JG) (RML), 2015 U.S. Dist. LEXIS 122186, *28 (E.D.N.Y. Sept. 14, 2015)] (citation omitted)). Although Plaintiff alleges that the Product did not conform to the promise of her interpretation of "100% Arabica Coffee," she does not allege that the Product is unfit for human consumption; and, thus, the Court grants Defendant's motion to dismiss Plaintiff's claim for breach of an implied warranty of merchantability. *See id.* at *19-*20.

Furthermore, under New York law, "'no implied warranty will extend from a manufacturer to a remote purchaser not in privity with the manufacturer where only economic loss and not personal injury is alleged.'" *Anderson v. Unilever United States, Inc.*, 607 F. Supp. 3d 441, 458-59 (S.D.N.Y. 2022) (quoting *Colangelo v. Champion Petfoods USA, Inc.*, No. 18-

**107**

**Memorandum Decision and Order, Filed July 12, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 24     Filed 07/12/23     Page 15 of 20

CV-1228, 2020 U.S. Dist. LEXIS 26919, 2020 WL 777462, at *11 (N.D.N.Y. Feb. 18, 2020) (quotation marks and other citations omitted)).  Courts applying New York law have routinely held that this extends to both alleged breaches of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose. *See id.* at 459.  "[R]emote purchasers, like Plaintiff, definitionally are not in privity with the manufacturers of the products that they buy." *Id.* (citations omitted).  Thus, the Court additionally dismisses Plaintiff's claims for breach of the implied warranties of merchantability and fitness for a particular purpose because Plaintiff, as an end-consumer, does not have privity with Defendant, a manufacturer. *See id.* at 460.

"The MMWA provides for a private right of action if a consumer is damaged based on a supplier's failure to comply with its obligations under a written or implied warranty." *Clemmons v. Upfield US, Inc.*, No. 22-cv-355 (PKC), 2023 U.S. Dist. LEXIS 57135, *25-*26 (S.D.N.Y. Mar. 31, 2023) (citing 15 U.S.C. § 2310(d)(1)).  Because Plaintiff's complaint fails to plausibly allege a breach of warranty, the Court finds that she necessarily fails to state a claim pursuant to the MMWA as well. *See id.* (citing *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562, 587 (S.D.N.Y. 2021) ("[T]he absence of a qualifying warranty necessitates dismissal of the MMWA claim."); *Garcia v. Chrysler Grp. LLC*, 127 F. Supp. 3d 212, 232 (S.D.N.Y. 2015) ("To state a claim under the MMWA, plaintiffs must adequately plead a cause of action for breach of written or implied warranty under state law.").

### 4. *Common law claims for fraud and unjust enrichment*

"Under New York law, stating a claim for fraud requires alleging (1) a material misrepresentation or omission of fact, (2) made with knowledge of its falsity, (3) with an intent

## 108

### Memorandum Decision and Order, Filed July 12, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 24    Filed 07/12/23    Page 16 of 20

to defraud, and (4) reasonable reliance on the part of the plaintiff, (5) that causes damage to the plaintiff." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104 (RA), 2021 U.S. Dist. LEXIS 9714, *21-*22 (S.D.N.Y. Jan. 19, 2021) (citing *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997)). Putting aside the question as to whether Plaintiff alleged fraud with the requisite level of specificity under Rule 9(b) of the Federal Rules of Civil Procedure, the Court finds that Plaintiff has failed to allege a material misrepresentation of fact or omission since, as discussed above, a reasonable consumer would not conclude that the phrase "100% Arabica Coffee" on the Product's label communicates that it did not contain additives, such as potassium. *See id.* at *22. Thus, the Court grants Defendant's motion to dismiss Plaintiff's common law claim for fraud.

"A claim for unjust enrichment under New York State law requires that [p]laintiffs 'plead: 1) "that the defendant benefitted; 2) at plaintiff's expense[;] and 3) that equity and good conscience require restitution."'" *Gilleo v. J.M. Smucker Co.*, No. 20-CV-02519 (PMH), 2021 U.S. Dist. LEXIS 182299, *25 (S.D.N.Y. Sept. 23, 2021) (quoting *Yak v. BiggerPockets, L.L.C.*, No. 19-CV-05394, 2020 U.S. Dist. LEXIS 165759, 2020 WL 5505351, at *9 (S.D.N.Y. Sept. 10, 2020) (quotation omitted)). The Court finds that Plaintiff's unjust enrichment claim also fails because, as discussed above, she has not plausibly alleged that Defendant made any misleading or incorrect statements. *See Wynn*, 2021 U.S. Dist. LEXIS 7914, at *22. Additionally, "[a]ccording to the New York State Court of Appeals, '[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.'" *Gilleo*, 2021 U.S. Dist. LEXIS 182299, at *25 (quoting *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 967 N.E.2d 1177, 1185, 944 N.Y.S.2d 732 (N.Y. 2012)). Therefore, because Plaintiff's unjust enrichment claim is that Defendant enriched itself by misrepresenting

**109**

**Memorandum Decision and Order, Filed July 12, 2023.**
Case 5:22-cv-01199-FJS-ATB   Document 24   Filed 07/12/23   Page 17 of 20

the Product, which is duplicative of Plaintiff's "'core theory of deception,'" the Court additionally grants Defendant's motion to dismiss Plaintiff's unjust enrichment claim as duplicative.

### D. Rule 11 sanctions

"A court may sanction counsel for signing pleadings whose legal theories are not 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Weiss v. David Benrimon Fine Art LLC*, ___ F. App'x ___, 2021 U.S. App. LEXIS 38395, *4 (2d Cir. 2021) (summary order) (quoting Fed. R. Civ. P. 11(b)(2); *see also id.* 11(c)). "'[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend . . . the law as it stands.'" *Id.* (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990)). "The inquiry is one of 'objective unreasonableness and is not based on the subjective beliefs of the person making the statement.'" *Id.* at *5 (quoting *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (citation omitted)).

In considering Defendant's motion to dismiss and preparing this Memorandum-Decision and Order, the Court learned that Plaintiff's counsel, Spencer Sheehan, Esq. of Sheehan & Associates, P.C., has filed no fewer than 18 actions in this District alone since 2021, all of which are class action lawsuits; and, of those that have been considered in a dispositive motion, none have proceeded past the motion to dismiss phase of litigation. *See e.g., Lumbra v. Suja Life, LLC*, No. 1:22-CV-893 (MAD/DJS), 20223 WL 3687425 (N.D.N.Y. May 26, 2023) (granting the defendant's motion to dismiss class action complaint for failing to state a claim that the labeling on Suja Organic Juice falsely represents that it is "cold-pressed"); *Greco v.*

## 110

### Memorandum Decision and Order, Filed July 12, 2023.
Case 5:22-cv-01199-FJS-ATB    Document 24    Filed 07/12/23    Page 18 of 20

*TikTok, Inc.*, No. 5:22-cv-916 (BKS/ML), 2023 WL 3092861 (N.D.N.Y. Apr. 26, 2023) (granting the defendant's motion to dismiss class action complaint for lack of subject-matter jurisdiction). For many other cases, Plaintiff's counsel appears to swiftly seek voluntary dismissals before the defendant files an answer or a dispositive motion. *See e.g., Hoover v. The Price Chopper, Inc.*, No. 1:21-CV-228 (BKS/ML), Dkt. No. 13 (voluntarily dismissing class action complaint alleging that the defendant mislabeled the vanilla flavoring in its PICS-brand yogurt); *McMenamy v. Nestle USA, Inc.*, No. 5:22-CV-1053 (TJM/ATB), Dkt. No. 6 (voluntarily dismissing class action complaint alleging mislabeled nutritional information on Ovaltine chocolate malt drink).

This Court also discovered that a court in the Southern District of New York recently admonished Mr. Sheehan for filing dozens of cases similar to this one in the past several years throughout the Second Circuit, with numerous courts dismissing near-identical challenges. *See Hoffman v. Kraft Heinz Foods Co.*, No. 22-CV-397 (KMK), 2023 U.S. Dist. LEXIS 20929, *18-*20 (S.D.N.Y. Feb. 7, 2023) (collecting cases). In addition, courts in the Southern District of New York have also twice threatened Mr. Sheehan with Rule 11 sanctions for filing "plainly frivolous claim[s.]" *Turk v. Rubbermaid Inc.*, No. 21-CV-270 (KMK), 2022 U.S. Dist. LEXIS 50230, *16 n.1 (S.D.N.Y. Mar. 21, 2022); *see Gordon v. Target Corp.*, No. 20-CV-9589 (KMK), 2022 U.S. Dist. LEXIS 48769, *25 n.3 (S.D.N.Y. Mar. 18, 2022). The Court therefore believes that Mr. Sheehan is aware that he files class action lawsuits primarily pertaining to allegedly false labeling on consumer products -- including causes of action for violations of GBL §§ 349 and 350, breach of express and implied warranties and the MMWA, and common law fraud and unjust enrichment -- that plainly do not meet the pleading requirements for such claims on their faces. Nonetheless, Mr. Sheehan continues to file these frivolous actions in

**111**

**Memorandum Decision and Order, Filed July 12, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 24     Filed 07/12/23     Page 19 of 20

violation of Rule 11(b)(2) of the Federal Rules of Civil Procedure.  Accordingly, given Mr. Sheehan's history and experience in similar cases, which courts have dismissed for failure to state a claim as this Court does here, this Court orders that Mr. Sheehan must show cause as to why this Court should not sanction him for continually filing frivolous lawsuits in this District. *See* Fed. R. Civ. P. 11(c)(3); *Optigen, LLC v. Animal Genetics, Inc.*, No. 5:10-CV-940 (FJS/DEP), 2011 U.S. Dist. LEXIS 174811, *15-*16 (N.D.N.Y. May 23, 2011) (stating that "[a] court may initiate a sanction proceeding *sua sponte* by issuing a show-cause order" (citing *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003))).

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion to dismiss, *see* Dkt. No. 14, is **GRANTED**; and the Court further

**ORDERS** that Mr. Sheehan show cause why he has not violated Rule 11(b)(2) in the manner noted above and why, if the Court finds that he has violated said Rule, the Court should not impose sanctions against him for such violation.  In this regard, the Court instructs Mr. Sheehan to file with the Court a letter brief, not to exceed five pages, setting forth his position regarding this matter **on or before July 28, 2023**; and the Court further

## 112

### Memorandum Decision and Order, Filed July 12, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 24    Filed 07/12/23    Page 20 of 20

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case.

**IT IS SO ORDERED.**

Dated:  July 12, 2023
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

**113**

**Letter from Spencer Sheehan to the Honorable Frederick J. Scullin, Jr., Filed July 23, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 26    Filed 07/23/23    Page 1 of 6

July 23, 2023

District Judge Frederick J. Scullin, Jr.
United States District Court
Northern District of New York

Re:    *Brownell v. Starbucks Coffee Co.*, No. 22-cv-1199,
2023 WL 4489494 (N.D.N.Y. July 12, 2023)

Dear District Judge Scullin:

Plaintiff's Counsel submits this letter brief in Response to the Court's Order, pursuant to Fed. R. Civ. P. 11(c)(3), that it "show cause why [Mr. Sheehan has] not violated Rule 11(b)(2) in the manner noted." *Brownell*, 2023 WL 4489494, at *8. For procedural and substantive reasons, sanctions are neither warranted nor authorized.

***Legal Standards.*** Procedurally, whether sanctions are sought under Rule 11, a court's inherent power or 28 U.S.C. § 1927, "due process require[s] that 'the subject of a sanctions motion be informed of: (1) the source of authority for the sanctions being considered; and (2) the specific conduct or omission for which the sanctions are being considered so that the subject of the sanctions motion can prepare a defense.'" *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999).

Substantively, Rule 11(b) requires that any document in the litigation must not "be[] presented for any improper purpose," "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" and "factual contentions have evidentiary support." *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 388 (2d Cir. 2003) quoting Fed. R. Civ. P. 11(b)(1)-(3).

***No Notice of Sanctionable Conduct.*** While Rule 11(c)(3) allowed the Court, *sua sponte*, to direct Plaintiff's Counsel to "show cause why conduct specifically described in [its] [O]rder has not violated Rule 11(b)," the absence of "the 'safe harbor' provision" "require[d] a finding of subjective bad faith" that is absent. *Brownell*, 2023 WL 4489494, at *8 citing *In re Pennie & Edmonds LLP*, 323 F.3d 86, 87 (2d Cir. 2003); *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009).

As "show cause orders will ordinarily be issued only in situations that are akin to a contempt of court," the Order failed to approach a "high degree of specificity in [its] factual findings." *ATSI Communications, Inc.*, 579 F.3d at 150 quoting Fed. R. Civ. P. 11, Advisory Committee's Notes (1993 Amendments); *Schlaifer Nance*, 194 F.3d at 338.

Instead of "specific findings so that 'the objectionable conduct [can] be identified sufficiently to make the opportunity to respond meaningful' and to assist the appellate court in reviewing the basis for imposition of the sanction," "it is apparent that the [C]ourt relied on factors other than those pertinent to the application of the bad-faith exception." *Sanko SS Co., Ltd. v. Galin*, 835 F.2d 51, 53 (2d Cir. 1987); *Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir. 1986).

**114**

**Letter from Spencer Sheehan to the Honorable Frederick J. Scullin, Jr., Filed July 23, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 26    Filed 07/23/23    Page 2 of 6

This is evident because the Order "neglected to explain why the [Complaint] was not 'well grounded in fact' or 'warranted by existing law,'" instead admitting that "the Court learned" and "This Court also discovered" that Plaintiff's Counsel "fil[ed] dozens of cases [about misleading labeling] in the past several years throughout the Second Circuit, with numerous courts dismissing near-identical challenges." *Sanko*, 835 F.2d at 53; *Brownell*, 2023 WL 4489494, at *5.[1]

This colloquy goes beyond "*suggest*[ing] that the [C]ourt relied on a number of matters other than the conduct of the present litigation," "broadly refer[ing] to [Plaintiff's Counsel] 'strategy' and 'tactics,'" observing that "For many other cases, [it] appears to swiftly seek voluntary dismissals before the defendant files an answer or a dispositive motion." *Dow Chemical Pacific Ltd.*, 782 F.2d at 344 (emphasis added); *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1268 (2d Cir. 1987); *Brownell*, 2023 WL 4489494, at *5 citing *Hoover v. The Price Chopper, Inc.*, No. 21-cv-228 (S.D.N.Y. Feb. 7, 2023), and *McMenamy v. Nestle USA, Inc.*, No. 22-cv-1053 (S.D.N.Y. Feb. 7, 2023).

However, these "Broad findings of frivolous litigation [] or bad faith are insufficient to support the award of sanctions under Rule 11," because "The rule applies only to assertions contained in papers filed with or submitted to th[is] [C]ourt." *Coltrade Intern'l, Inc. v. U.S.*, 973 F.2d 128, 132 (2d Cir. 1992); *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996) citing Advisory Committee's Notes (1993 Amendments).

Even accepting that "[Plaintiff's Counsel] is aware that he files class action lawsuits primarily pertaining to allegedly false labeling on consumer products [] that plainly do not meet the pleading requirements for such claims on their faces," this conflates the standard under Rule 12(b)(6) with 11(b)(2), notwithstanding that none have ever been deemed frivolous. *Brownell*, 2023 WL 4489494, at *8 citing *Hoffman*, 2023 WL 1824795.

In effect, the Court seeks "to judicially obviate the American Rule in the context of everyday commercial litigation, where the policies which underlie the limited judicially created departures from the rule are inapplicable," portraying Plaintiff's Counsel's motives as tantamount to "[o]ld fashioned piracy." *Dow Chemical Pacific Ltd.*, 782 F.2d at 344. However, Rule 11 "does not license [the] [C]ourt to sanction any action by an attorney or party that it disapproves of," as "Congress 'has [not] extended any roving authority to the Judiciary to allow counsel fees as costs or otherwise whenever the courts might deem them warranted." *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 22 (2d Cir.1990); *Bandes v. Harlow & Jones, Inc.*, 852 F.2d 661, 671 (2d Cir. 1988) quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 260 (1975).

***No Violations of Rule 11(b) Based on Precedent***. While the Court concluded that "Mr. Sheehan continues to file these frivolous actions in violation of Rule 11(b)(2)," its reliance on "[D]istrict court decisions [like *Hoffman*, *Lumbra* and *Greco*]" is misplaced, because "unlike the decisions of States' highest courts and federal courts of appeals, [they] are not precedential in the technical sense…[and] create no rule of law binding on other courts." *Brownell*, 2023 WL 4489494,

---

[1] Citing *Lumbra v. Suja Life, LLC*, No. 22-cv-893, 2023 WL 3687425 (N.D.N.Y. May 26, 2023), *Greco v. TikTok, Inc.*, No. 22-cv-916, 2023 WL 3092861 (N.D.N.Y. Apr. 26, 2023), *Hoffman v. Kraft Heinz Foods Co.*, No. 22-cv-397, 2023 WL 1824795, at *8 (S.D.N.Y. Feb. 7, 2023), *Turk v. Rubbermaid Inc.*, No. 21-cv-270, 2022 WL 836894, at *6 n.1 (S.D.N.Y. Mar. 21, 2022) and *Gordon v. Target Corp.*, No. 20-cv-9589, 2022 WL 836773, at *9 n.3 (S.D.N.Y. Mar. 18, 2022).

2

**115**

**Letter from Spencer Sheehan to the Honorable Frederick J. Scullin, Jr., Filed July 23, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 26    Filed 07/23/23    Page 3 of 6

at *8; *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 112 n. 4 (2d Cir. 2008).

This is because "whether [Rule 11(b)(2)] has been violated," "the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account." Advisory Committee's Notes (1993 Amendments).

While *Hoffman* deemed allegations that the MiO water enhancer "contain[ed] artificial flavors [] conclusory statements that the Court [wa]s not required to accept" based on "amorphous 'laboratory analysis,'" it cannot be said "that there [wa]s no chance of success." *Hoffman*, 2023 WL 1824795, at *8; *Pierce v. F.R. Tripler & Co.*, 955 F.2d 820, 831 (2d Cir. 1992) (denying sanctions based on reliance on Washington Supreme Court decision).

Plaintiff's Counsel "had a good faith basis for arguing otherwise," as "The mere fact that [other district courts in *Adams* and *McCall*]" reached the opposite conclusion about a different MiO product and store brand water enhancer "support[ed] a good faith argument for extension or modification of existing law." *Pierce*, 955 F.2d at 831; *Adams v. Kraft Heinz Co.*, No. 22-cv-290, 2022 WL 18776273, at *7 (M.D. Fla. Jan. 9, 2022) (finding that Plaintiff's Counsel's allegations that "DL-malic acid is an artificial compound that Defendant uses to flavor its Products, supported by laboratory tests [which] crosse[d] the line from 'conceivable to plausible.'"); *see also McCall v. Publix Super Mkts., Inc.*, No. 22-cv-584, 2023 WL 2362542, at *5 (M.D. Fla. Feb. 28, 2023) (in case filed by Plaintiff's Counsel, declining to accept identical laboratory analysis argument adopted by *Hoffman* for similar water enhancer).[2]

While the court in *Lumbra* based its dismissal, in part, "because a reasonable consumer would know or expect that the juice has been processed," this was contrary to the principle that a "Court may not resolve questions regarding 'the background knowledge, experience[,] and understanding of reasonable consumers' as a matter of law." *Lumbra*, 2023 WL 3687425, at *6; *Cooper v. Anheuser-Busch, LLC*, 553 F. Supp. 3d 83, 104 (S.D.N.Y. 2021).

Though dismissal in *Greco* expressed "skeptic[ism] about whether there is any viable basis to amend," it acknowledged that "it may be possible for Plaintiff to establish subject matter jurisdiction with better pleading." *Greco*, 2023 WL 3092861, at *6.

Though the Court ruled against Plaintiff Brownell's expectation "that a reasonable person would believe that '100% Arabica Coffee' meant that the Product contained ground coffee beans without [] added potassium," imposing sanctions would be "an erroneous view of the law" because her claims "were [not] clearly against Circuit precedent." *Brownell*, 2023 WL 4489494, at *5 citing Compl. ¶ 14; *Gorss Motels, Inc. v. FCC*, 20 F.4th 87, 103 (2d Cir. 2021); *Perpetual Securities, Inc. v. Tang*, 290 F.3d 132, 135 (2d Cir. 2002); *Gurary v. Winehouse*, 235 F.3d 792, 798 (2d Cir. 2000) quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990); *Schlaifer Nance*, 194 F.3d at 333.

Plaintiff's claims were consistent with the controlling authority of *Mantikas*, which held that "[R]easonable consumers should [not] be expected to look beyond misleading representations on the front of the [product] to discover the truth from the [] small print on the side." *Mantikas v.*

---

[2] Citing *Gouwens v. Target Corp.*, No. 22-cv-50016, 2022 WL 18027524, at *2 (N.D. Ill. Dec. 30, 2022) (granting dismissal in similar water enhancer case by Plaintiff's Counsel).

**116**

**Letter from Spencer Sheehan to the Honorable Frederick J. Scullin, Jr., Filed July 23, 2023.**
Case 5:22-cv-01199-FJS-ATB     Document 26     Filed 07/23/23     Page 4 of 6

*Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018).

Unlike "in *Mantikas*, [where] it was undisputed that the Nutrition Facts panel was accurate," "the existence of [added potassium], the substance [P]laintiff[] allege[d]" makes the "100% Arabica" front label claim misleading, "[wa]s never explicitly disclosed to consumers." *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 102 (E.D.N.Y. 2020) (denying dismissal in case brought by Plaintiff's Counsel because despite claim soda was "made with aged vanilla," vanilla taste was provided by the undisclosed synthetic chemical of ethyl vanillin) citing *Mantikas*, 910 F.3d at 637; Compl. ¶ 20.

***Decisions About "100%" Claims Support Extension of Law Under Rule 11(b)***. Though the Court concluded that "a reasonable consumer acting under reasonable circumstances would understand the labeling of '100% Arabica Coffee' on the Product to mean that the ground coffee beans are exclusively from the arabica plant," imposing sanctions elides the "distinction [] between a position which is 'merely 'losing' and one which is both 'losing and sanctionable.'" *Brownell*, 2023 WL 4489494, at *5; *Securities Indus. Ass'n v. Clarke*, 898 F.2d 318, 321 (2d Cir. 1990).

Here, "'[t]he mere fact that' [numerous] court[s] in [] different jurisdiction[s] agreed with [Plaintiff]" that "'100% Arabica Coffee' meant that the Product contained ground coffee beans without any [added] vitamins or minerals, including added potassium" "is enough, in the absence of controlling authority to the contrary, to support a good faith argument for extension…of existing law." *Weiss v. David Benrimon Fine Art LLC*, No. 20-cv-3842, 2021 WL 6128437, at *3 (2d Cir. Dec. 28, 2021) (reliance on district court case from District of Columbia); *Brownell*, 2023 WL 4489494, at *5 citing Compl. ¶ 14;

Like the plaintiffs in *Weiss* and *Pierce*, Plaintiff cited *Bell*, *Beardsall*, and *Jackson* in support of her claim that she and "Consumers [we]re misled by the representation … '100% Arabica Coffee' because it is false, deceptive and/or misleading as a result of added potassium." Compl. at ¶ 20; *see* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss, ECF No. 20 at 7.[3]

In *Bell*, the court found that in context of "100% Grated Parmesan Cheese," "it was certainly a plausible reading [] that '100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated," even though it contained "between four and nine percent added cellulose powder and potassium sorbate." *Bell*, 982 F.3d at 473, 476-77. *Bell* noted that its decision in *Beardsall*, where the plaintiffs challenged labeling of "100% Pure Aloe Vera Gel," "did not suggest, however, that the 100% claim could have been deemed not deceptive on the pleadings." *Bell*, 982 F.3d at 482 citing *Beardsall*, 953 F.3d at 977.[4]

More recently, courts denied dismissal of "100%" claims for mixed fruit and applesauce,

---

[3] Citing *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 473 (7th Cir. 2020) (adopting *Mantikas*), *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 971 (7th Cir. 2020) and *Jackson v. Dole Packaged Foods, LLC*, No. 22-cv-1448, 2022 WL 18027600, at *4 (S.D. Ill. Dec. 30, 2022).

[4] Plaintiff's Memorandum in Opposition incorrectly and inadvertently cited the holding from *Beardsall* as from a motion to dismiss, because the Seventh Circuit considered the claims on appeal from summary judgement in favor of defendants.

4

**117**

**Letter from Spencer Sheehan to the Honorable Frederick J. Scullin, Jr., Filed July 23, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 26    Filed 07/23/23    Page 5 of 6

declining to find that reasonable consumers could not be misled with respect to the presence of added ingredients like ascorbic acid. Plaintiff Mem. at 7 citing *Jackson*, 2022 WL 18027600, at *1 (mixed fruit); *see also Schneider v. Mott's LLP*, No. 21-cv-1251, 2022 WL 4314207, at *2, *5 (S.D. Ill. Sept. 19, 2022) (applesauce).

Just as "A normal cup of coffee contains about 116 milligrams of potassium," "the added ingredients [of] ascorbic acid and citric acid ... naturally occur in fruits albeit in allegedly different concentrations." Compl. at ¶ 14; *Jackson*, 2022 WL 18027600, at *4 citing *Bell*, 982 F.3d at 478 citing *Mantikas*, 910 F.3d at 638-39.

***"Threatened Sanctions" in Two SDNY Cases Unrelated to Issues Here***. While Rule 11 authorizes courts to consider "whether the person has engaged in similar conduct in other litigation," the reference to how "courts in the Southern District of New York have also twice threatened Mr. Sheehan with Rule 11 sanctions for filing 'plainly frivolous claim[s]'" indicates the Court failed to read those decisions or read them and ignored their context to make its point. Advisory Committee's Notes (1993 Amendments); *Brownell*, 2023 WL 4489494, at *8 citing *Turk*, 2022 WL 836894, at *6 n.1 and *Gordon*, 2022 WL 836773, at *9 n.3.

First, the warnings in *Turk* and *Gordon* were only to "claim[s] for injunctive relief on behalf of [] past purchaser[s]," unrelated to the substantive claims the Court finds "frivolous" here. *Turk*, 2022 WL 836894, at *6 n.1 and *Gordon*, 2022 WL 836773, at *8 quoting *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020) (dismissing injunctive relief because those buyers "'will not again be under the illusion that' the product[s] meet[] the standard[s] they alleged was promised on the deceptive label[s].").

Second, the plaintiffs in *Turk* "voluntarily dismiss[ed] [their] claims for injunctive relief" prior to that court's decision. *Turk*, ECF No. 27 at 4 n.1 (Sept. 20, 2021). Third, the operative pleadings in *Turk* and *Gordon* were filed less than a year after *Berni*, when it was not clear how broadly district courts would apply its holding. *Turk*, ECF No. 18, Amended Complaint (June 16, 2021) and *Gordon*, ECF No. 11, Amended Complaint (May 4, 2021).

Though the plaintiff in *Gordon* acknowledged the "existing precedent[s]," her attempt to distinguish it "for purposes of class certification" was a "reasonable argument to extend ... the law as it stands." *Gordon*, ECF No. 20, at 32 citing *Berni*, 964 F.3d at 141; *Mareno*, 910 F.2d at 1047. Thank you.

Respectfully submitted,

/s/Spencer Sheehan

5

## 118

**Letter from Spencer Sheehan to the Honorable Frederick J. Scullin, Jr., Filed July 23, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 26    Filed 07/23/23    Page 6 of 6

### Certificate of Service

I certify that on July 23, 2023, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|                        | CM/ECF | First-Class Mail | Email | Fax |
|------------------------|:------:|:----------------:|:-----:|:---:|
| Defendant's Counsel    |   ☒    |        ☐         |   ☐   |  ☐  |
| Plaintiff's Counsel    |   ☐    |        ☐         |   ☐   |  ☐  |
| Courtesy Copy to Court |   ☒    |        ☐         |   ☐   |  ☐  |

/s/ Spencer Sheehan

6

**119**

**Letter from Paul G. Ferrara to the Honorable Frederick J. Scullin, Jr., Filed August 14, 2023.**

# COSTELLO
### COONEY & FEARON, PLLC

Experience Innovation

211 W. Jefferson St., Suite 1
Syracuse, NY 13202
Tel: 315.422.1152 I Fax: 315.422.1130

www.ccf-law.com

**Paul G. Ferrara,** *Partner*
pferrara@ccf-law.com

August 14, 2023

Hon. Frederick J. Scullin, Jr.
Senior United States District Judge
Federal Building and U.S. Courthouse
P.O. Box 7336
Syracuse, New York 13261-7336

> **Re:** ***Brownell v. Starbucks Coffee Co.***
> **Civil Action No. 5:22-CV-1199(FJS/ATB)**

Dear Honorable Sir:

As the Court is aware, we represent Spencer I. Sheehan, Esq. in connection with this Court's Order to Show Cause regarding Rule 11 sanctions. Please allow the following to serve as Mr. Sheehan's supplemental submission in response to the Court's Order of July 12, 2023.

**Standard of Review.** "Due process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions." *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (emphasis in original). "At a minimum, the notice requirement mandates that the subject of a sanctions motion be informed of . . . the source of authority for the sanctions being considered . . . ." *Id.*

In the *sua sponte* Order to Show Cause, this Court cites Rule 11 exclusively as the source of authority under which it is considering sanctions against Mr. Sheehan. Pursuant to Rule 11(b), an attorney warrants to the Court when he signs a pleading that the claims and other legal contentions contained therein are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, and that the factual contentions have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Fed. R. Civ. P. 11(b)(2)–(3). The relevant inquiry is whether the pleading or paper was "reasonable under the circumstances," and liability for Rule 11 violations requires a showing of objective unreasonableness on the part of the attorney signing the papers. *Ted Lapidus, S.A. v. Vann*, 112 F.3d 91, 96 (2d Cir. 1997). However, the Second Circuit has recognized that in cases where a District Court *sua sponte* initiates Rule 11 sanctions " 'long after' the sanctioned lawyer had an opportunity to correct or withdraw the challenged submission. . . . a lawyer may be sanctioned only upon a finding of subjective bad faith." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 149 (2d Cir. 2009) (quoting *In re Pennie & Edmonds LLP*, 3323 F.3d 86, 91 (2d Cir. 2003)).

Even should the Court determine the appropriate standard in this case is "objective reasonableness," the relevant inquiry should focus on "[i]f at the time a complaint is signed, it is not well grounded in fact and warranted by either existing law or a *good faith* argument for the extension or modification or the law." *Knipe v. Skinner*, 146 F.R.D. 58, 60 (N.D.N.Y. 1993). To be

**120**

## Letter from Paul G. Ferrara to the Honorable Frederick J. Scullin, Jr., Filed August 14, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 34    Filed 08/14/23    Page 2 of 5

Hon. Frederick J. Scullin, Jr.
August 14, 2023
Page 2

sure, where counsel reaffirms his position to the court in motions, the inquiry continues to the time such position is advocated. *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996). "In determining whether a pleading lacked a good faith basis the court must be mindful of the fine 'line between zealous advocacy and frivolous conduct.' " *Knipe*, 146 F.R.D. at 60 (quoting *United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 1338, 1343 (2d Cir. 1991)). "Only where it is 'patently clear' at the time of the signing that a claim has no chance of success *under existing law*, and where no reasonable argument can be advanced to modify existing law are sanctions warranted." *Id.* As previously noted in Mr. Sheehan's initial filing, Rule 11 sanctions apply "only to assertions contained in papers filed with or submitted to the court." *O'Brien*, 101 F.3d at 1480.

Mr. Sheehan further recognizes that cases requiring a "high degree of specificity in [the Court's] factual findings" apply only to actual determinations imposing sanctions, which have not yet been imposed. (*See* Dkt. No. 26 at 1).

Here, the Complaint was filed with this Court on November 13, 2022. Defendant brought its motion to dismiss on March 16, 2023. Plaintiff's response to the motion was filed on April 12, 2023. The Court granted defendant's motion in its Decision and Order entered July 12, 2023, eight (8) months after the Complaint was filed. Defendant did not seek Rule 11 sanctions through the safe harbor provisions, and the Court instead *sua sponte* initiated this proceeding in the same decision granting the motion to dismiss. It is therefore submitted the relevant standard is whether there was subjective bad faith. *See ATSI Commc'ns, Inc.*, 579 F.3d at 149.

**Good-Faith Basis for the Complaint.** In addition to the various case law relied upon in Mr. Sheehan's initial response setting forth how claims similar to Ms. Brownell's "100%" claim have been sustained by various District Courts, it is important to note that Mr. Sheehan himself has had some level of success in overcoming motions to dismiss on similar theories to those raised in the instant action before other District Courts, both within and outside of New York State.

As the Court is well aware, Mr. Sheehan has a practice of advocating for consumers and against misleading product labels and similar false advertising. These cases have their genesis in a variety of sources, whether it be reports from consumer watchdogs, investigations undertaken by governmental agencies or other public filings. Prior to commencing any action, Mr. Sheehan undertakes an independent investigation, including reviewing the offending labels and retaining private laboratory testing of the product, where appropriate. In Brownell's case, he did retain such testing of the product. Thereafter, Mr. Sheehan researches any and all applicable regulations to determine if the product may be in violation. In the instant case, in addition to the aforementioned private testing, Mr. Sheehan undertook a review of regulations regarding additives in coffee products and those that control labelling of coffee beans or grounds to determine if added nutrients required disclosure. He then undertook review of regulations regarding fortification, to the extent the added potassium may be considered as such. Mr. Sheehan then also confirmed that the potassium did not qualify as a processing aid. Following all of this independent research and testing, and determining there could be viable claims, Mr. Sheehan prepares and files the Complaint and arranges for service on defendants. If these Complaints are met with a motion to dismiss, Mr. Sheehan then has the task of opposing said motion. Each such filing necessarily also involves filing fees and hiring process servers. In short, each action Mr. Sheehan undertakes involves significant effort and expense. If these actions were all frivolous and therefore inevitably

**121**

## Letter from Paul G. Ferrara to the Honorable Frederick J. Scullin, Jr., Filed August 14, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 34    Filed 08/14/23    Page 3 of 5

Hon. Frederick J. Scullin, Jr.
August 14, 2023
Page 3

doomed from the outset, it would be a fool's errand to continue to prosecute these claims and advocate on behalf of these consumers.

To that end, although this Court identified in its Order two (2) adverse decisions from the Northern District on similar facts and legal theories (both of which post-dated Mr. Sheehan's reaffirmation of his pleadings in the *Brownell* action on April 12, 2023 [Dkt. No. 20]), at the time of the pleading and reaffirmation,[1] Mr. Sheehan had successfully overcome motions under Rule 12(b)(6) elsewhere within the Second Circuit and in other Districts across the country on similar legal theories.

A.    **General Business Law §§ 349–50.** Although this Court disagreed that the Starbucks label in the instant action might be deceptive to a reasonable consumer, a not-insignificant number of other courts have found Mr. Sheehan's similar allegations of consumer deception to state claims under these statutes. *See, e.g., Wargo v. Hillshire Brands Co.*, 599 F. Supp. 3d 164, 172–75 (S.D.N.Y. 2022); *Bardsley v. Nonni's Food LLC*, No. 20 Civ. 2979 (NSR), 2022 WL 814034, at *6–*8 (S.D.N.Y. Mar. 16, 2022) ("[G]iven that the Product's ingredient panel does in fact list butter and sugar but not lemon zest oil, '[t]hat representation is adequately pleaded to have been misleading [to a reasonable consumer] because it falsely implies that [lemon zest oil] is the primary [source of the lemon flavoring]."); *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 272, 277–80 (S.D.N.Y. 2021); *Gavilanes v. Gerber Prods. Co.*, No. 1:20-cv-05558, 2021 WL 5052896, at *5–*6 (E.D.N.Y. Nov. 1, 2021); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 338–43 ("Because it violates FDA labeling requirements, a reasonable consumer may be misled into believing that Cranberry Apple juice has more cranberry juice than apple."); *see also Duchnik v. Tops Mkts., LLC*, 22-CV-399 (JLS)(HKS), 2023 WL 4828141, at *1 (W.D.N.Y. July 26, 2023). As such, there was a reasonable argument that defendant's label claiming the package contained "100% ground Arabica" could be found to be deceptive to a reasonable consumer, as the products in the above cases were deemed to state a cause of action under those statutes. It is respectfully submitted Mr. Sheehan cannot be held to have had subjective bad faith in pursuing the action against defendant on behalf of Ms. Brownell, even if the suit was unsuccessful and lacked merit, as this Court found.

B.    **Sister States' Consumer Fraud Statutes.** Similarly, Mr. Sheehan has pursued deceptive labeling and consumer protection actions in other states and regularly had claims under those states' consumer protection statutes sustained on motions under Rule 12(b)(6). For example, Federal Courts in Illinois regularly permit Mr. Sheehan's pleadings under that state's Consumer Fraud and Deceptive Business Practices Act to proceed.[2] *See, e.g., Connor v. Abbott Labs., Inc.,*

---

1 The Court noted in its Order to Show Cause that Mr. Sheehan has filed fifteen (15) additional actions which have *not* been dismissed, as of the date of this filing. The fate of those cases is yet unknown.

Moreover, with respect to Mr. Sheehan's identified discontinuance of certain matters, those actions may be discontinued for a variety of reasons, including: (a) a quick resolution of the dispute with the defendant before any response is required; (b) disclosure by the defendant of certain information which renders the action unlikely to succeed; or (c) as in the case of *Hoover v. The Price Chopper, Inc.*, No. 1:21-CV-228 (BKS/ML), discontinuance in favor of litigating in a more appropriate forum—State Court, in the case of *Hoover*, where subject-matter jurisdiction in Federal Court was lacking.

2 Illinois's statute requires not only deceptive acts in the conduct of business (just as in New York), but also the defendant's intent the plaintiff rely on the deceptive or unfair practice. *See, e.g., Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). Thus, by requiring this extra element, Illinois' statutes is more exacting than New York's deceptive trade practices equivalent.

## 122

## Letter from Paul G. Ferrara to the Honorable Frederick J. Scullin, Jr., Filed August 14, 2023.

Hon. Frederick J. Scullin, Jr.
August 14, 2023
Page 4

No. 21-cv-1463-SMY, 2023 WL 2690853, at *2–*3 (S.D. Ill. Mar. 29, 2023); *Crawford v. AriZona Beverages USA LLC*, No. 22-cv-220-DWD, 2023 WL 1100260, at *3–*6 (S.D. Ill. Jan. 30, 2023); *Shirley v. Reynolds Consumer Prods., LLC*, No. 22 C 278, 2022 WL 13831598, at *2–*3 (N.D. Ill. Oct. 21, 2022); *Strow v. B&G Foods, Inc.*, 633 F. Supp. 3d 1090 (N.D. Ill. 2022) (delivering a scathing rebuke of defendant's "butter" cooking spray that contained no actual butter); *Davis v. Ricola USA, Inc.*, No. 22-cv-3071, 2022 WL 4131588, at *3–*4 (C.D. Ill. Sep. 12, 2022); *Sanders v. Hillshire Brands Co.*, No. 21-cv-1155-SMY, 2022 WL 2643974, at *2–*3 (S.D. Ill. July 8, 2022); *Harris v. Kashi Sales, LLC*, 609 F. Supp. 3d 633, 640–42 (N.D. Ill. July 1, 2022) (defendant's "mixed berry" bars also contained pear juice concentrate, apple powder, cane sugar, and corn starch); *Elder v. Bimbo Bakeries USA, Inc.*, No. 3:21-cv-637-DWD, 2022 WL 816631, at *1–*2 (S.D. Ill. Mar. 17, 2022); *see also Clark v. Blue Diamond Growers*, No. 22-cv-1591, 2023 WL 4351464, at *4–*5 (N.D. Ill. July 5, 2023); *Acosta v. Hopper (USA), Inc.*, No. 22 C 3974, 2023 WL 3072358, at *2–*4 (N.D. Ill. Apr. 25, 2023) (denying motion to dismiss *in toto*).

Moreover, although not his primary jurisdictions of practice, Mr. Sheehan has also had some success in overcoming motions to dismiss state consumer fraud claims in other states. *See, e.g., McCall v. Publix Super Mkts., Inc.*, No. 8:22-cv-584-MSS-CPT, 2023 WL 2362542, at *2–*6 (M.D. Fla. Feb. 28, 2023) (denying motion to dismiss claims under Florida's Deceptive and Unfair Trade Practices Act); *Ablaza v. Sanofi-Aventis U.S. LLC*, No. 21-cv-01942-JST, 2022 WL 19517298, at *6 (N.D. Cal. July 12, 2022) (sustaining claim under California's Unfair Competition Law); *Warren v. Whole Foods Mkt. Cal., Inc.*, No. 21-cv-04577-EMC, 2022 WL 2644103, at *4–*7 (N.D. Call. July 8, 2022) (relying on plaintiff's product testing to sustain claims under various consumer protect acts based on violation of Federal Food, Drug and Cosmetic Act); *Vizcarra v. Unilever U.S., Inc.*, 4:20-cv-02777-YGR, 2020 WL 4016810, at *2–*5 (N.D. Cal. July 16, 2020) (denying motion to dismiss, including claims under California's Consumer Legal Remedies Act and Unfair Competition Law).

In sum, Mr. Sheehan had successfully pleaded numerous claims which have survived a motion to dismiss under both New York's and other states' deceptive business practice and/or unfair competition statutes, based on misleading product labels, at the time he filed the *Brownell* Complaint and reaffirmed that pleading in his opposition to defendant's motion. It has been Mr. Sheehan's experience that these causes of action are more likely to survive a motion to dismiss than others he regularly pleads on behalf of his client. Nevertheless, Mr. Sheehan has had each of the theories pleaded in Brownell's Complaint upheld by other courts in the past. It is therefore submitted that the *Brownell* pleading was both objectively reasonable, and subjectively in good faith based upon past experience.

C.      **Warranty Claims.** In the same vein, Mr. Sheehan has also pleaded claims for breaches of express and implied warranty and under the Magnuson Moss Warranty Act which have survived motions to dismiss. *See, e.g., Kelly v. Beliv LLC*, 21-cv-08134, 2022 WL 16836985, at *8 (E.D.N.Y. Nov. 9, 2022) (upholding consumer fraud and express warranty claims, and dismissing MMWA claim only because said warranty did not meet that statute's definition of "written warranty"); *Gavilanes v. Gerber Prods. Co.*, No. 1:20-cv-05558, 2021 WL 5052896, at *6–*7 (E.D.N.Y. Nov. 1, 2021) (denying motion to dismiss as to all claims except MMWA, on grounds plaintiff did not plead sufficient amount in controversy under that Act); *Berger v. MFI Holding Corp.*, No. 17-CV-06728-JFB-ARL, 2019 WL 10528306, at *3–*6 (E.D.N.Y. Apr. 3, 2019) (denying motion with respect to General Business Law, express warranty and fraud causes of action). Other states have also allowed these claims to proceed to discovery. *See Acosta*, 2023 WL

**123**

## Letter from Paul G. Ferrara to the Honorable Frederick J. Scullin, Jr., Filed August 14, 2023.

Case 5:22-cv-01199-FJS-ATB     Document 34     Filed 08/14/23     Page 5 of 5

Hon. Frederick J. Scullin, Jr.
August 14, 2023
Page 5

3072358 at * *McCall*, 2023 WL 2362542, at *6 (denying motion as to all warranty and MMWA claims); *Ablaza*, 2022 WL 19517298, at *7 (denying motion with respect to express warranty cause of action).

     **D.**    **Theories of Unjust Enrichment and Fraud.** Furthermore, Mr. Sheehan has successfully pleaded claims of unjust enrichment and fraud, which have survived motions to dismiss, in New York Federal Court. *See, e.g.*, *Gavilanes*, 2021 5052896, at *8–*9 (allowing both claims to proceed); *Casio v. Vineyard Vines, LLC*, No. 19-CV-5135 (JMA) (AYS), 2021 WL 466039, at *3–*6, *8 (E.D.N.Y. Feb. 9, 2021) (denying motion to dismiss General Business Law and unjust enrichment causes of action); *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 101–04 (E.D.N.Y. 2020); *Berger*, 2019 WL 10528306, at *5 (fraud claim survived). As elsewhere, other states have also permitted these common-law theories of liability to proceed past Rule 12(b) motion practice. *See McCall*, 2023 WL 2362542, at *6 (both theories of liability proceeded); *Connor*, 2023 WL 2690853, at *5 (unjust enrichment claim succeeds or fails with consumer fraud claim); *Crawford*, 2023 WL 1100260, at *9 (same); *Shirley*, 20222 WL 13831598, at *4–*5 (both common-law theories survived); *Davis*, 2022 WL 4131588, at *6 (unjust enrichment); *Sanders*, 2022 WL 2643974, at *4 (same); *Harris*, 609 F. Supp. 3d at 644 (same); *Elder*, 2022 WL 816631, at *5 (allowing both claims); *see also Clark*, 2023 WL 4351464, at *8–*9.[3]

     **E.**    **Injunctive Relief.** Finally, as noted in Mr. Sheehan's initial submission, the Southern District's threats to impose sanctions were related only to claims for injunctive relief following the Second Circuit's ruling in *Berni v. Barilla S.p.A.*, 964 F.3d 141 (2d Cir. 2020). After that decision, Mr. Sheehan continued to seek injunctive relief to explore the bounds of the Second Circuit's decision and how broadly it would be interpreted, as a reasonable extension of the law. Since it has become clear that District Courts are interpreting *Berni* to bar injunctive relief for all past purchasers, Mr. Sheehan has ceased requesting injunctive relief within the Second Circuit.

     Based upon the foregoing, it is submitted that while the Northern District of New York has thus far uniformly rejected Mr. Sheehan's legal theories, they are not wholly without basis in prior case law both within and without this State, from a substantive analysis of the product labels and from Mr. Sheehan's past experience.

     As a final note, while this Court notes the comments from Judge Karas, it is notable that Mr. Sheehan is admitted to and does practice in twenty-four (24) Federal Districts, and admitted to many of those for several years. At no time has Mr. Sheehan been sanctioned or disciplined by any of those Courts.

              Respectfully submitted,

              COSTELLO, COONEY & FEARON, PLLC

              Paul G. Ferrara
              Federal Bar No. 101638

PGF/cc

---

3   Admittedly, Illinois' jurisprudence regarding unjust enrichment claims where they duplicate other substantive claims differs from New York's.

**124**

## Declaration of Spencer Sheehan, Esq., In Opposition to Order to Show Cause, Filed August 29, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 38    Filed 08/29/23    Page 1 of 7

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **KRISTIE BROWNELL,** *individually and on behalf of all other similarly situated,* | Civil Action No.: 5:22-CV-1199 (FJS/ATB) |
| Plaintiff, | |
| -vs- | |
| **STARBUCKS COFFEE COMPANY,** | |
| Defendant. | |

### DECLARATION OF SPENCER SHEEHAN, ESQ. IN OPPOSITION TO ORDER TO SHOW CAUSE

I, **SPENCER SHEEHAN**, hereby declare and state under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1.      I was counsel to Plaintiff in the above-referenced action until its dismissal by Order of this Court on July 12, 2023. I make this Declaration in further response to the Court's Order to Show Cause why it should not *sua sponte* impose Rule 11 sanctions on me based upon the Complaint in this action. (Dkt. 24 at 17–19).

A.    **Puroast's Investigation of Starbucks Dark French Roast Coffee**

2.      On November 1, 2022, the *New York Post* ("Post") published an article entitled, "Starbucks secret: Dark French Roast 'is not 100% coffee,' " in which the newspaper reported about a complaint filed with the North Carolina Department of Justice's Consumer Protection Division claiming Starbucks Dark French Roast Coffee " 'significantly exceed[ed]' " expected levels of potassium, compared with other similar coffee beans sold at retail locations.[1]

---

[1] Joshua Rhett Miller, *Starbucks Secret: Dark French Roast 'is not 100% coffee,' says Complaint*, New York Post, Nov. 1, 2022, available at https://nypost.com/2022/11/01/starbucks-dark-french-roast-is-not-100-coffee-complaint/.

# 125

## Declaration of Spencer Sheehan, Esq., In Opposition to Order to Show Cause, Filed August 29, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 38    Filed 08/29/23    Page 2 of 7

3.    The North Carolina complaint was filed by Puroast, a purveyor of high-antioxidant coffee allegedly seventy percent (70%) less acidic than other brands of retail coffee. It made logical sense to me that a company specializing in low acid coffee would know when competitors sought to manipulate the acidity of their coffee.

4.    Puroast was represented by David Puryear, Esq., who informed the Post of his belief the "significant addition" was intentional, to "lower[] the acidity of the brewed product." My independent research on his firm's website revealed Mr. Puryear was a member of the North Carolina bar in good standing for the past thirty (30) years, who has focused his practice on complex commercial litigation and whistleblower claims.

5.    A November 2, 2022 press release from Puroast identified the basis of the allegations as "Independent laboratory tests conducted in August by Salam A. Ibrahim, Ph.D.," the head of the Food Science Department at North Carolina Agricultural and Technical (A&T) State University, which had revealed potassium levels in Starbucks Dark French Roast Coffee to be more than fourteen (14) standard deviation points above other national brands tested, suggesting the artificial addition of potassium during processing. Dr. Ibrahim noted that while he suspected the addition of potassium, that chemical ingredient was "not disclosed on the packaging."[2]

6.    Samples of Starbucks Dark French Roast Coffee were purchased between June and August 2022 and tested by Dr. Ibrahim using "accepted scientific peer review methodology and relied on sophisticated analytical equipment."[3]

7.    Thereafter, I reviewed Dr. Ibrahim's employee page with North Carolina A&T and

---

[2] *What is Good Coffee?*, Puroast Coffee, undated, available at https://puroast.com/wp-content/uploads/2022/11/What-is-Good-Coffee.pdf, at 2 (last accessed Aug. 28, 2023).

[3] Puroast Coffee, *Puroast Coffee Files Complaint with North Carolina Attorney General Alleging that Starbucks is Selling Coffee Adulterated with Potassium*, Fox2Now, Nov. 2, 2022, https://fox2now.com/business/press-releases/accesswire/f2de81c2/puroast-coffee-files-complaint-with-north-carolina-attorney-general-alleging-that-starbucks-is-selling-coffee-adulterated-with-potassium/.

-2-

126

## Declaration of Spencer Sheehan, Esq., In Opposition to Order to Show Cause, Filed August 29, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 38    Filed 08/29/23    Page 3 of 7

found he is a widely published Research Professor with the College of Agriculture and Environmental Sciences.[4]

8.    *Business Insider* published additional information about Puroast's complaint, including that its internal studies initially showing Starbucks Dark French Roast contained seventy percent (70%) less acid than regular coffee, with a pH of 5.7 or 5.8, compared to an expected pH balance of 5.0 for regular coffee.[5]

9.    Following those internal studies, Puroast engaged Dr. Ibrahim to conduct independent testing. He analyzed six (6) different coffees and tested for common additives used to lower acid in coffee, such as barley, wheat, sodium, calcium and potassium. As to the latter additive, Dr. Ibrahim's testing revealed 6800 ppm of potassium in Starbucks Dark French Roast, while the other tested coffees exhibited averages of just 6000 ppm.[6]

### B.    Due Diligence Regarding Puroast

10.    Following my review of this publicly available information about Puroast's studies, and before relying on Puroast's complaint, I also investigated the complainant to determine if it was a credible source.

11.    In 2006, Drs. Fujioka and Shibamoto, of the University of California, Davis, conducted researched into the coffee-roasting process as a mechanism to alter pH levels in brewed coffee and reduce acidity.[7]

12.    The year after Drs. Fujioka and Shibamoto's study was published, Puroast's

---

[4] *Salam A. Ibrahim*, North Carolina Agricultural and Technical State University, undated, https://www.ncat.edu/employee-bio.php?directoryID=401384594 (last visited August 28, 2023).
[5] Britney Nguyen, *Starbucks says it doesn't add potassium to its Dark French Roast coffee after another coffee company accused it of mislabeling the product*, Business Insider, Nov. 5, 2007, https://www.businessinsider.com/starbucks-says-no-added-potassium-dark-french-roast-coffee-complaint-2022-11.
[6] *What is Good Coffee, supra*, at 2.
[7] K. Fujioka & T. Shibamoto, *Chlorogenic Acid and Caffeine Contents in Various Commercial Brewed Coffees*, 106:1 Food Chemistry 217–21 (2008).

-3-

**127**

## Declaration of Spencer Sheehan, Esq., In Opposition to Order to Show Cause, Filed August 29, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 38    Filed 08/29/23    Page 4 of 7

founder was quoted in the *Los Angeles Business Journal* discussing Puroast's all-natural approach to low-acid coffee and noting that a reduction in acidity typically involves "an additive to neutralize the acid or treat the coffee before roasting it."[8]

13. Building upon his earlier research, Dr. Shibamoto then tested and compared Puroast's coffee to other brands, which revealed that Puroast had approximately 5.4 times more antioxidant value and 70% lower acid levels compared with others tested. In advance of presenting these results to the American Chemical Society, he wrote to Puroast to share them.[9]

14. Based upon this history, and the results and consequential relationship between these university researchers and Puroast, I concluded Puroast's studies had some level of legitimacy, and the allegations made within their complaint against industry giant Starbucks were not raised lightly.

15. According to Puroast's own website, that company roasts coffee beans that contained "70% Less Acid."[10] Puroast supports this claim with independent research from the University of California, Davis, where Dr. Taka Shibamoto's own published studies reached this conclusion.[11] Although this apparently self-serving article was undated, I used the Internet archives to determine it was first published to Puroast's website on March 31, 2014.[12]

---

[8] Alexa Hyland, *Less Joltin' Joe*, L.A. Bus. J., Sept. 20, 2009, https://labusinessjournal.com/news/less-joltin-joe/. The undersigned also independently verified the use of additives as a patented method for reducing acidity in brewed coffee and reviewed the patent application and issued patent associated with the same. Method for Reducing Coffee Acidity, U.S. Patent No. 5,853,787 (filed Dec. 29, 1998).

[9] Letter from Takayuki Shibamoto to Kerry Sachs (July 24, 2013), available at https://puroast.com/wp-content/uploads/2020/03/AntioxidantResearchSummaryLetter.pdf (last visited August 29, 2023).

[10] Puroast Coffee, 2023, https://puroast.com/ (last visited August 29, 2023).

[11] *Higher Antioxidants and Lower Acid Found in Puroast!*, Puroast Coffee, undated, https://puroast.com/news/higher-antioxidants-and-lower-acid-found-in-puroast/ (last visited August 29, 2023).

[12] Internet Archive: Way Back Machine, https://web.archive.org/web/20150320022829/http://www.puroast.com/news/higher-antioxidants-and-lower-acid-found-in-puroast/ (last visited August 29, 2023).

-4-

**128**

## Declaration of Spencer Sheehan, Esq., In Opposition to Order to Show Cause, Filed August 29, 2023.

Case 5:22-cv-01199-FJS-ATB     Document 38     Filed 08/29/23     Page 5 of 7

### C.     Research Into Starbucks' Labeling Obligations

16.     While Starbucks had publicly denied adding potassium to its Dark French Roast coffee, I conducted independent research to determine if Starbucks might be exempt from disclosure of this additive. Initially, I reviewed FDA regulations and determined Starbucks might be exempt from labeling requirements as the added potassium might be claimed as a "processing aid" (*i.e.*, substances "added . . . during processing, are converted into constituents normally present in the food, and do not significantly increase the amount of the constituents naturally found in the food").[13] In my view, there was a close factual question whether the increased potassium levels were "significant" enough to require disclosure under those regulations.

17.     Furthermore, although any causes of action my plaintiff might raise in a Complaint would be based upon the misleading claim of "100% Arabica Coffee" and not initially upon the omission of potassium from the ingredients, I anticipated Starbucks might also assert a preemption defense, should state labeling requirements differ from those of the FDA. I therefore reviewed 1 NYCRR § 259.1, in which New York's Agriculture and Markets Law adopted the FDA food-labeling regulations. As such, I concluded I could adequately respond to any preemption defense.

18.     Additionally, I reviewed case law from the Second Circuit, this District and others within the Second Circuit, as well as persuasive authority from other jurisdictions supporting the legal theories set forth in the Complaint. (Dkt. 20; *see also* Dkt. 26). Although this Court ultimately disagreed with my analysis of those cases on Starbucks' motion to dismiss, it is respectfully submitted the Complaint was not filed in bad-faith or without any basis in established case law, or a reasonable argument for an extension thereof.

---

[13] 21 C.F.R. 100.101(a).

-5-

## 129

## Declaration of Spencer Sheehan, Esq., In Opposition to Order to Show Cause, Filed August 29, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 38    Filed 08/29/23    Page 6 of 7

19. I devoted between thirty (30) and forty (40) hours to the above factual and legal research into the allegations of Starbucks adding potassium to its French Dark Roast coffee to lower acidity levels, at a value to my client of $15,000–$20,000.

20. Finally, I considered legal principles in the Second Circuit regarding the ability of plaintiffs to rely on materials prepared or assembled by others, and determined the foregoing materials were sufficient for purposes of preparing a Federal Complaint on behalf of my client.

21. Satisfied that there were colorable legal arguments that Starbucks' claim that its Dark French Roast was 100% Arabica Coffee was misleading to consumers, I prepared a Complaint on behalf of my client, which was filed with this Court on November 13, 2022.

### D. Independent Product Testing

22. Once Starbucks' counsel accepted service of the Complaint, and a date was set for its Answer or pre-Answer motion, I then engaged my own independent analysis of Starbucks Dark French Roast coffee in advance of any Answer or motion practice.

23. While I was unable to obtain an analysis as sophisticated as that conducted by Puroast and Dr. Ibrahim, I made other efforts to verify the claims at issue by requesting a pH analysis of eight different French dark roast coffees from an experienced food laboratory, Krueger Food Laboratories, Inc., in Massachusetts.

24. Of these eight samples, the Starbucks Dark French Roast Coffee tested for the highest pH at 6.40, compared with values of 5.70–6.20 for the other products tested. Thes test results are attached hereto and incorporated herein as **Exhibit A**.

25. I recognized the pH levels determined from my laboratory testing were significantly higher than obtained by Dr. Ibrahim's analysis, and that the relative difference between the Starbucks product and the other subjects was less significant than that detected by Dr. Ibrahim.

-6-

## 130

## Declaration of Spencer Sheehan, Esq., In Opposition to Order to Show Cause, Filed August 29, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 38    Filed 08/29/23    Page 7 of 7

26. I attributed these differences to the environment in which the testing was done: a commercial laboratory with a wide range of services, compared to a major university laboratory with specialized equipment and years of experience performing the procedures in question.

27. Notwithstanding these noted differences, the Starbucks Dark French Roast Coffee still had the highest, most alkaline, and least acidic product, which corroborated the Puroast allegations.

28. On the basis of Puroast's apparently credible studies, and my own independent analysis, I believed there was a good-faith basis to commence and maintain the action against Starbucks for its misleading "100% Arabic Coffee" claim.

29. In addition to the foregoing, I hereby incorporate by reference, under penalty of perjury, the factual assertions and legal arguments previously made within my initial submission to this Court, and those of my counsel in the supplemental submission. (Dkt. 26, 34).

WHEREFORE, your declarant respectfully requests an Order of this Court declining to impose sanctions under Fed. R. Civ. P. 11, based upon the good-faith basis for commencing and maintaining this action, together with such other and further relief as the Court may deem just and proper.

SPENCER SHEEHAN
Bar Roll No. 519087
Attorney for the Plaintiff, *Kristie Brownell*
Office and Post Office Address
60 Cuttermill Road, Suite 412
Great Neck, New York 11021
Telephone: (516) 268-7080

Dated:    August 29, 2023
          Great Neck, New York

-7-

## 131

### Exhibit "A" - Certificates of Analysis.

# EXHIBIT A

**132**

## Exhibit "A" - Certificates of Analysis.

Case 5:22-cv-01199-FJS-ATB     Document 38-1     Filed 08/29/23     Page 2 of 9



**KRUEGER**
**FOOD**
**LABORATORIES, INC.**

*Analytical Services*
*for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

### Certificate of Analysis

| Submitted by: | Report Date: 4/27/2023 |
|---|---|
| Spencer Sheehan | Receipt Date: 1/30/2023 |
| Sheehan & Associates PC | |
| 60 Cuttermill Road, Suite 412 | |
| Great Neck, NY 11021 | |

| PO #: | Reference: | |
|---|---|---|
| **Sample Description** | **Sample Identification** | **KFL ID Number** |
| Coffee | Starucks French Roast Ground Arabica Coffee Dark Roast, 793g Bag, Best Before 24JUL2023 | C4966 |

| Analysis | Unit | Result |
|---|---|---|
| pH | | 6.40 |

Authorized By: ⟨signature⟩

⟨seal: KRUEGER FOOD LABORATORIES • SHERIDA GEORGE • AUTHORIZED ANALYST⟩

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.

#C4966-202304271454 | Page 1 of 1

**133**

## Exhibit "A" - Certificates of Analysis.

Case 5:22-cv-01199-FJS-ATB     Document 38-1     Filed 08/29/23     Page 3 of 9



# KRUEGER
# FOOD
# ®LABORATORIES, INC.

*Analytical Services*
*for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

| Submitted by: | | Report Date: 4/27/2023 |
|---|---|---|
| Spencer Sheehan | | Receipt Date: 3/6/2023 |
| Sheehan & Associates PC | | |
| 60 Cuttermill Road, Suite 412 | | |
| Great Neck, NY 11021 | | |

| PO #: | Reference: | |
|---|---|---|
| **Sample Description** | **Sample Identification** | **KFL ID Number** |
| Coffee | Good and Gather French Roast Dark Roast Ground Coffee, 340g Bag, Best By 08 AUG 2023 | C5140 |

| Analysis | Unit | Result |
|---|---|---|
| pH | | 6.20 |

Authorized By: [signature]

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.

#C5140-202304271454 | Page 1 of 1

**134**

## Exhibit "A" - Certificates of Analysis.

Case 5:22-cv-01199-FJS-ATB      Document 38-1      Filed 08/29/23      Page 4 of 9

# KRUEGER FOOD LABORATORIES, INC.

*Analytical Services
for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

## Certificate of Analysis

**Submitted by:**
Spencer Sheehan
Sheehan & Associates PC
60 Cuttermill Road, Suite 412
Great Neck, NY 11021

**Report Date:** 4/27/2023
**Receipt Date:** 2/20/2023

**PO #:**  **Reference:**

| Sample Description | Sample Identification | KFL ID Number |
|---|---|---|
| Coffee | Green Mountain French Roast Dark Roast Ground Coffee, 340g Bag, Best By 31 AU 2023 | C5051 |

| Analysis | Unit | Result |
|---|---|---|
| pH | | 6.20 |

Authorized By: _____

SHERIDA GEORGE

This certificate of analysis shall not be reproduced except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.

#C5051-202304271454 | Page 1 of 1

# 135

## Exhibit "A" - Certificates of Analysis.

Case 5:22-cv-01199-FJS-ATB     Document 38-1     Filed 08/29/23     Page 5 of 9



**KRUEGER
FOOD
® LABORATORIES, INC.**

*Analytical Services
for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

---

## Certificate of Analysis

| Submitted by: | | Report Date: 4/27/2023 |
|---|---|---|
| Spencer Sheehan | | Receipt Date: 2/20/2023 |
| Sheehan & Associates PC | | |
| 60 Cuttermill Road, Suite 412 | | |
| Great Neck, NY 11021 | | |

| PO #: | Reference: | |
|---|---|---|
| **Sample Description** | **Sample Identification** | **KFL ID Number** |
| Coffee | Puroast Coffee Organic French Roast Dark Roast Ground Coffee, 340g Bag, JAN 16 24 | C5053 |

| Analysis | Unit | Result |
|---|---|---|
| pH | | 6.20 |

Authorized By: *[signature]*  
SHERIDA GEORGE *[seal: KRUEGER FOOD LABORATORIES AUTHENTICITY]*

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.

#C5053-202304271454 | Page 1 of 1

## 136

## Exhibit "A" - Certificates of Analysis.

Case 5:22-cv-01199-FJS-ATB     Document 38-1     Filed 08/29/23     Page 6 of 9

**KRUEGER**
**FOOD**
**®LABORATORIES, INC.**

*Analytical Services*
*for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

### Certificate of Analysis·

| Submitted by: | | Report Date: 4/27/2023 |
|---|---|---|
| Spencer Sheehan | | Receipt Date: 3/6/2023 |
| Sheehan & Associates PC | | |
| 60 Cuttermill Road, Suite 412 | | |
| Great Neck, NY 11021 | | |

| PO #: | Reference: | |
|---|---|---|
| **Sample Description** | **Sample Identification** | **KFL ID Number** |
| Coffee | Caribou Coffee Ground Dark Roast French Roast, 340g Bag, Best If Used By 30 JUN 2023 | C5139 |

| Analysis | Unit | Result |
|---|---|---|
| pH | | 6.00 |

Authorized By: _____

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.

#C5139-202304271454 | Page 1 of 1

**137**

## Exhibit "A" - Certificates of Analysis.

Case 5:22-cv-01199-FJS-ATB     Document 38-1     Filed 08/29/23     Page 7 of 9



**KRUEGER**
**FOOD**
**®LABORATORIES, INC.**

*Analytical Services*
*for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

### Certificate of Analysis

| Submitted by: | | Report Date: 4/27/2023 |
|---|---|---|
| Spencer Sheehan | | Receipt Date: 2/20/2023 |
| Sheehan & Associates PC | | |
| 60 Cuttermill Road, Suite 412 | | |
| Great Neck, NY 11021 | | |

| PO #: | Reference: | |
|---|---|---|
| **Sample Description** | **Sample Identification** | **KFL ID Number** |
| Coffee | Allegro Coffee Organic French Roast Dark Roast, 340g Bag, Best If Used By 04/05/2023 | C5054 |

| Analysis | Unit | Result |
|---|---|---|
| pH | | 6.00 |

Authorized By: _[signature]_ _[seal: KRUEGER FOOD LABORATORIES AUTHORITY — SHERIDA GEORGE]_

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.

#C5054-202304271454 | Page 1 of 1

138

## Exhibit "A" - Certificates of Analysis.

Case 5:22-cv-01199-FJS-ATB    Document 38-1    Filed 08/29/23    Page 8 of 9



### KRUEGER FOOD LABORATORIES, INC.

*Analytical Services
for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

### Certificate of Analysis

| Submitted by: | | Report Date: 4/27/2023 |
|---|---|---|
| Spencer Sheehan | | Receipt Date: 2/27/2023 |
| Sheehan & Associates PC | | |
| 60 Cuttermill Road, Suite 412 | | |
| Great Neck, NY 11021 | | |

| PO #: | Reference: | |
|---|---|---|
| **Sample Description** | **Sample Identification** | **KFL ID Number** |
| Coffee | Peet's Coffee Dark Roast Organic French Roast Ground Coffee, 297g Bag, Freshest By 03/27/23 | C5099 |

| Analysis | Unit | Result |
|---|---|---|
| pH | | 5.80 |

Authorized By: [signature]  SHERIDA GEORGE

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.

#C5099-202304271454 | Page 1 of 1

**139**

## Exhibit "A" - Certificates of Analysis.

Case 5:22-cv-01199-FJS-ATB    Document 38-1    Filed 08/29/23    Page 9 of 9



**KRUEGER FOOD LABORATORIES, INC.**

*Analytical Services
for the Food Industry*

21 Alpha Road, Suite D, Chelmsford, MA 01824
www.kfl.com • dkrueger@kfl.com
978-256-1220 • f 978-256-1222

### Certificate of Analysis

| Submitted by: | Report Date: 4/27/2023 |
|---|---|
| Spencer Sheehan<br>Sheehan & Associates PC<br>60 Cuttermill Road, Suite 412<br>Great Neck, NY 11021 | Receipt Date: 2/20/2023 |

| PO #: | Reference: | |
|---|---|---|
| **Sample Description** | **Sample Identification** | **KFL ID Number** |
| Coffee | Happy Belly French Roast Dark Roast Ground Coffee, 907g Bag, Use By JAN 21 2024 | C5052 |

| Analysis | Unit | Result |
|---|---|---|
| pH | | 5.70 |

Authorized By: _____

SHERIDA GEORGE

This certificate of analysis shall not be reproduced, except in its entirety, without the written approval of Krueger Food Laboratories. All results are reported on an "as received" basis unless otherwise stated in the report. The results in this report relate only to the items tested. The client is solely responsible for the use and interpretation of the information in this report; Krueger Food Laboratories, Inc. provides no express or implied warranties as to such use or interpretation. Unless otherwise arranged by the client, samples will be retained for a minimum of 21 days from the issue date of the report, if stability permits. Samples which degrade rapidly, or are past their hold times may be retained for shorter periods or not at all.

#C5052-202304271454 | Page 1 of 1

**140**

**Memorandum Decision and Order of the Honorable**
**Frederick J. Scullin, Jr., Filed November 30, 2023.**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KRISTIE BROWNELL, *individually and*
*on behalf of all others similarly situated,*

               **Plaintiff,**

        v.                                 **5:22-CV-1199**
                                           **(FJS/ATB)**

STARBUCKS COFFEE COMPANY,

               **Defendant.**

---

| APPEARANCES | OF COUNSEL |
|---|---|
| **COSTELLO, COONEY & FEARON, PLLC** | **PAUL G. FERRARA, ESQ.** |
| 211 West Jefferson Street | **DANIEL R. ROSE, ESQ.** |
| Syracuse, New York 13202 | |
| Attorneys for Respondents | |
| Spencer Sheehan and | |
| Sheehan & Associates, P.C. | |
| | |
| **ASHLEY FURNITURE INDUSTRIES, LLC** | **ROBERT AMICONE, ESQ.** |
| 1670 East 8th Avenue | |
| Tampa, Florida 33605 | |
| *Amicus curiae* | |

SCULLIN, Senior Judge

## MEMORANDUM-DECISION AND ORDER

### I. BACKGROUND

Plaintiff Kristie Brownell alleged in her November 13, 2022 complaint that Defendant

Starbucks Coffee Company charged a premium price for its French Roast Ground 100%

Arabica Coffee ("the Product") that was higher than similar products based on its

misrepresentation that "100% Arabica Coffee" meant that there were no additives, including

**141**

## Memorandum Decision and Order of the Honorable
## Frederick J. Scullin, Jr., Filed November 30, 2023.

added potassium, in the Product.[1] *See generally* Dkt. No. 1. On July 12, 2023, the Court issued a Memorandum-Decision and Order granting Defendant's motion to dismiss Plaintiff's complaint in its entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. No. 24. The Court found that Plaintiff's allegations failed to show that the Product, in fact, contained added potassium. *See id.* at 11. Additionally, the Court found that Plaintiff's vague references in her complaint to "[r]ecent reports based on laboratory analysis," which did not identify the reports or results of that analysis, were too bare or conclusory to state a claim for relief. *See id.* Alternatively, even if Plaintiff had plausibly alleged that there was heightened potassium, the Court found that Plaintiff did not show that a reasonable person would believe that "100% Arabica Coffee" meant that the Product contained ground coffee beans without any vitamins or minerals because "Arabica" simply refers to the plant from which the coffee bean was harvested. *See id.*

After coming to these conclusions, the Court then initiated sanction proceedings *sua sponte,* in which it issued a show-cause order as to why it should not sanction Plaintiff's counsel, Spencer Sheehan, Esq., of Sheehan & Associates, P.C., for filing a frivolous lawsuit in this District. *See id.* at 17-19. The Court noted that, in considering Defendant's motion to dismiss and preparing its Memorandum-Decision and Order, the Court learned that Mr. Sheehan had filed no fewer than 18 actions in the Northern District of New York since 2021, all of which were proposed class action lawsuits, and none of which had proceeded past the motion to dismiss phase of litigation. *See id.* at 17. The Court pointed out that, in many cases, Mr. Sheehan appears to swiftly seek voluntary dismissals before the defendant even files an answer

---

[1] Plaintiff admitted in her complaint that a "normal" cup of coffee allegedly contains 116 milligrams of potassium. *See* Dkt. No. 1 at ¶ 14.

## 142

## Memorandum Decision and Order of the Honorable
## Frederick J. Scullin, Jr., Filed November 30, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 41    Filed 11/30/23    Page 3 of 20

or a dispositive motion. *See* Dkt. No. 24 at 18. The Court further referenced recent cases from the Southern District of New York, in which at least one judge admonished Mr. Sheehan for filing dozens of cases similar to the one in *Brownell* in the past several years throughout the Second Circuit, with numerous courts dismissing near-identical challenges. *See id.*

Based on all of this information, the Court concluded that "Mr. Sheehan [was] aware that he file[d] class action lawsuits primarily pertaining to allegedly false labeling on consumer products – including causes of action for violations of [New York's General Business Law ("GBL")] §§ 349 and 350, breach of express and implied warranties and the [Magnuson Moss Warranty Act ("MMWA")], and common law fraud and unjust enrichment – that plainly d[id] not meet the pleading requirements for such claims on their faces." *See id.* Nonetheless, "Mr. Sheehan continue[d] to file these frivolous actions in violation of Rule 11(b)(2) of the Federal Rules of Civil Procedure." *See id.* at 18-19.

On July 23, 2023, Mr. Sheehan submitted a five-page letter brief responding to the Court's order to show cause. *See* Dkt. No. 26. The Court then scheduled a hearing on the order for August 22, 2023, at 10:30 AM, in Syracuse, New York, and ordered Mr. Sheehan to appear. Following the Court's entry of the Text Notice of Hearing, Mr. Sheehan retained Paul G. Ferrara, Esq. and Daniel R. Rose, Esq., of Costello, Cooney & Fearon, PLLC, to represent him (hereinafter "Sheehan's Counsel"). Upon their request, the Court permitted Sheehan's Counsel to file a five-page supplemental submission, which they submitted on August 14, 2023. *See* Dkt. No. 34.

At the hearing on the order to show cause, Sheehan's Counsel argued that it was not Mr. Sheehan's intent to bring a frivolous lawsuit and that he sent the Product for testing at an independent laboratory before filing Plaintiff's complaint. Regarding the former, Sheehan's

143

## Memorandum Decision and Order of the Honorable Frederick J. Scullin, Jr., Filed November 30, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 41    Filed 11/30/23    Page 4 of 20

Counsel pointed to several cases to support Mr. Sheehan's claim that he had a good faith basis for bringing the lawsuit, but the Court noted that those cases were irrelevant and distinguishable. With respect to the laboratory testing, the Court pointed out that there was no evidence whatsoever in the record that Mr. Sheehan conducted an independent investigation into the Product.

Since the hearing, the Court has received a motion for leave to file an amicus brief from counsel for Ashley Furniture Industries, LLC, which the Court granted and to which Sheehan's Counsel subsequently responded. *See* Dkt. Nos. 36, 37, 39.[2] Additionally, the Court has received Mr. Sheehan's declaration regarding his independent testing of the Product and his attempt to verify Plaintiff's allegations before filing the complaint, which Sheehan's Counsel filed on his behalf, and to which they attached a Certificate of Analysis from Krueger Food Laboratories, Inc. (hereinafter referred to as "the Krueger Report") indicating that a sampled bag of the Product contained a pH value of 6.40. *See* Dkt. Nos. 38, 38-1.

The Court must now consider all of the information before it to determine whether it is appropriate to hold Mr. Sheehan in civil contempt of court and, thus, subject to sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure.

---

[2] In that amicus brief, the Assistant General Counsel for Ashley Furniture described an apparently frivolous lawsuit Mr. Sheehan filed against it in the Northern District of Florida, to which it threatened to move for sanctions, and Mr. Sheehan responded in an email, provided to this Court, stating the following: "So go file your rule 11 motion [sic] I hear such sanctions threats from people like you all day long." *See* Dkt. No. 36.

**144**

**Memorandum Decision and Order of the Honorable
Frederick J. Scullin, Jr., Filed November 30, 2023.**

## II. DISCUSSION

### A. Legal standard

As the Court noted at the hearing on its order to show cause, it agrees with Mr. Sheehan and Sheehan's Counsel that a bad faith standard applies when determining whether Mr. Sheehan is in contempt. Specifically, the law provides that "[a] court may sanction counsel for signing pleadings whose legal theories are not 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.'" *Weiss v. David Benrimon Fine Art LLC*, __ F. App'x __; 2021 U.S. App. LEXIS 38395, *4 (2d Cir. 2021) (summary order) (quoting Fed. R. Civ. P. 11(b)(2); *see also id.* 11(c)). "'[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend . . . the law as it stands.'" *Id.* (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990)). "The inquiry is one of 'objective unreasonableness and is not based on the subjective beliefs of the person making the statement.'" *Id.* at *5 (quoting *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 307 (2d Cir. 2014) (citation omitted)).

"A court may, *sua sponte*, 'order an attorney . . . to show cause why conduct specifically described in the order has not violated Rule 11(b).'" *United States ex rel. Hayes v. Allstate Ins. Co.*, 686 F. App'x 23, 27 (2d Cir. 2017) (summary order) (quoting Fed. R. Civ. P. 11(c)(3)). "'If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction.'" *Id.* (quoting Fed. R. Civ. P. 11(c)(1)). "A district court must make a finding of bad faith before issuing sanctions *sua sponte*." *Id.* (citing *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 108 (2d Cir. 2013) (per curiam) (citing *In re Pennie & Edmonds LLP*, 323 F.3d 86, 91 (2d Cir. 2003))). "In recent

**145**

## Memorandum Decision and Order of the Honorable
## Frederick J. Scullin, Jr., Filed November 30, 2023.
Case 5:22-cv-01199-FJS-ATB    Document 41    Filed 11/30/23    Page 6 of 20

years, however, courts in this circuit have clarified that the subjective bad faith standard, as applied in the context of *sua sponte* Rule 11 sanctions, requires an attorney to have *actual knowledge* that a pleading or argument that he or she is advancing is frivolous." *Braun v. Zhiguo Fu*, No. 11cv04383 (CM) (DF), 2015 U.S. Dist. LEXIS 90652, *39-*40 (S.D.N.Y. June 19, 2015).

### B. Whether Mr. Sheehan is in contempt of court

When applying this standard, Mr. Sheehan argues that the Court has not provided the requisite "high degree of specificity in [its] factual findings" to support finding him in contempt or sanctioning him. *See* Dkt. No. 26 at 1. The Court disagrees. In its 20-page Memorandum-Decision and Order granting Defendant's motion to dismiss, the Court summarized the allegations in Plaintiff's complaint, identified the relevant rules and applied those rules to the facts with respect to each cause of action, and ultimately decided to dismiss each cause of action. *See generally* Dkt. No. 24. The Court found that Mr. Sheehan filed a frivolous complaint in this action when he made meritless claims in Plaintiff's complaint based on an unreasonable interpretation of a food label and without providing any support for Plaintiff's allegations. *See generally id.*

More precisely, the Court found that Plaintiff's generalized allegations did not plausibly assert that the Product, in fact, contained added potassium. *See id.* at 10-11. For example, the Court pointed out that Plaintiff failed to allege that she suffered any kind of reaction as a result of heightened levels of potassium, or even that she was at higher risk to suffer such issues. *See id.* at 11. The Court also noted that Plaintiff did not cite to or attach any reports to support her assertion that the Product had significantly greater than expected levels of potassium, even

**146**
**Memorandum Decision and Order of the Honorable**
**Frederick J. Scullin, Jr., Filed November 30, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 41    Filed 11/30/23    Page 7 of 20

though Plaintiff vaguely alleged that "[r]ecent reports based on laboratory analysis indicated the Product has significantly greater than expected levels of potassium," and, "[a]ccording to those knowledgeable about coffee production, this level is likely intentional, because of potassium's recognized use for this purpose." *See id.* at 10-11 (citing Dkt. No. 1 at ¶¶ 17-18). The only "report" before the Court at the time was a "study" that Plaintiff improperly attached to her memorandum of law in response to Defendant's motion to dismiss in an attempt to incorporate it by reference into her complaint. *See* Dkt. No. 20-1. In a footnote, the Court explained that Plaintiff could not "incorporate by reference" that study when it was not identified in any way in her complaint. *See* Dkt. No. 24 at 10 n.2. The Court noted, however, that, even if it could consider the study Plaintiff provided, such study appeared to be an advertisement for Puroast Coffee Company ("Puroast"), which is a competitor in the coffee market, rather than a scientific study. *See id.* (citing Dkt. No. 20-1). In response to the Court's order to show cause, Sheehan's Counsel claimed that this "study" constituted an independent laboratory analysis. *See* Dkt. No. 34 at 2-3.

Nonetheless, the Court finds that the study appeared to be an article, clearly produced by Puroast Coffee, titled "What is Good Coffee? Its [sic] Certainly Not Starbucks Dark French Roast Laced with Potassium." *See* Dkt. No. 20-1. The article asserts that, in March 2022, while testing in Puroast facility labs, Puroast discovered that Starbucks's French Roast had a pH of 5.74. *See id.* at 3. According to the article, "[a]ll roasted coffee has a pH in the range of 4.9 – 5.2, depending on the bean type (robusta vs arabica), the bean origin (country) and level of roast," with dark roasts having slightly less acid than house blends.[3] *See id.* Puroast Coffee

---

[3] Notably, this sentence makes clear that the pH range of coffee – and any naturally occurring potassium in the product – depends on the *type* of coffee bean, whether it is Robusta or Arabica. This therefore puts into question Plaintiff's assertion, which Mr. Sheehan maintains to this day

**147**

**Memorandum Decision and Order of the Honorable
Frederick J. Scullin, Jr., Filed November 30, 2023.**
Case 5:22-cv-01199-FJS-ATB    Document 41    Filed 11/30/23    Page 8 of 20

then allegedly provided three of its own coffee samples and two Starbucks coffee samples to the University of North Carolina A&T food science department, which "confirmed the a [sic] pH reading for Starbucks Dark French Roast of 5.74, parallel to Puroast's French Roast with a pH of 5.8." *See id.* Based on this finding, the article boldly assumes that "Starbucks adds Potassium to Coffee and Doesn't Tell Anyone," adding the assertion that "Puroast is the only coffee that's naturally smooth tasting *and* low acid[.]" *See id.* at 4. Puroast calls out Starbucks as a "big company" that "is basically cheating – throwing chemicals into their coffee so that it will imitate the same smooth taste and low acid, that we, Puroast, make naturally." *See id.*

If Mr. Sheehan relied on any other independent "studies" or lab analyses that he failed to attach to Plaintiff's complaint or her memorandum of law in response to Defendant's motion to dismiss, he had the opportunity to correct this error and point to such testing in response to the Court's order to show cause. Instead, at the show cause hearing, Sheehan's Counsel admitted that neither Mr. Sheehan nor his counsel included the report in their responses, yet they boldly informed the Court that Mr. Sheehan sent the Product for testing at an independent laboratory. When the Court asked Sheehan's Counsel whether anything in the record reflected the independent laboratory report Mr. Sheehan allegedly obtained, Sheehan's Counsel stated that he could provide it to the Court as a supplement.

Subsequently, Sheehan's Counsel supplemented their response to include Mr. Sheehan's declaration in opposition to the Court's show cause order and the Krueger Report. *See* Dkt.

---

is reasonable, that a reasonable customer would believe "100% Ground Arabica" to represent that there was no potassium, vitamins, or minerals to the coffee beyond the "116 milligrams of potassium" that "[a] normal cup of coffee contains." *See* Dkt. No. 1 at ¶ 14. As the Court noted in its Memorandum-Decision and Order and is clear based upon this "study," the phrase "100% Ground Arabica" identifies that the coffee is made with 100% coffee beans from the Arabica coffee plant (rather than the Robusta plant), and those beans have been ground for brewing.

**148**

## Memorandum Decision and Order of the Honorable
## Frederick J. Scullin, Jr., Filed November 30, 2023.

Nos. 38, 38-1. In Mr. Sheehan's declaration, he attested that, on November 1, 2022, the New York Post published an article entitled, "Starbucks Secret: Dark French Roast 'is not 100% coffee,' says complaint," in which the newspaper "reported about a complaint filed with the North Carolina Department of Justice's Consumer Protection Division claiming that the Product significantly exceeded expected potassium levels compared with other similar coffee beans sold at retail locations. *See* Dkt. No. 38 at ¶ 2 (citing *Starbucks Secret: Dark French Roast 'is not 100% coffee,' says complaint*," N.Y. Post, Nov. 1, 2022, available at https://nypost.com/2022/11/01/starbucks-dark-french-roast-is-not-100-coffee-complaint/ (last accessed Nov. 29, 2023)). According to Mr. Sheehan, Puroast filed the complaint after obtaining "'independent laboratory tests conducted in August [of 2022] by Salam A. Ibrahim, Ph.D.,' the head of the Food Science Department at North Carolina Agricultural and Technical (A&T) State University, which had revealed potassium levels in Starbucks Dark French Roast coffee to be more than fourteen (14) standard deviation points above other national brands tested, suggesting the artificial addition of potassium during processing." *See id.* at ¶ 5. Mr. Sheehan believed that Dr. Ibrahim used "'accepted scientific peer review methodology and relied on sophisticated analytical equipment," and he reviewed Dr. Ibrahim's employee page to find that he was a widely published Research Professor with North Carolina A&T's College of Agricultural and Environmental Sciences. *See id.* at ¶¶ 6-7. Mr. Sheehan declares that *Business Insider* also published information about Puroast's complaint, including that its studies showed that Starbucks Dark French Roast coffee contained 70% less acid than regular coffee, which prompted Dr. Ibrahim to conduct independent testing that revealed the coffee contained 6,800 ppm of potassium compared to just 6,000 ppm in other tested coffees. *See id.* at ¶¶ 8-9.

**149**

**Memorandum Decision and Order of the Honorable**
**Frederick J. Scullin, Jr., Filed November 30, 2023.**
Case 5:22-cv-01199-FJS-ATB     Document 41     Filed 11/30/23     Page 10 of 20

Mr. Sheehan further asserts that, following his review of the above-stated publicly available information regarding Puroast's studies, he "investigated the complainant to determine if it was a credible source." *See id.* at ¶ 10. Mr. Sheehan relied upon a 2006 study from the University of California, Davis, and its researchers' testing of Puroast's coffee, to conclude that Puroast's studies "had some level of legitimacy, and the allegations made within [its] complaint against industry giant Starbucks were not raised lightly." *See id.* at ¶¶ 11-14. Mr. Sheehan also attests that he researched Defendant's disclosure obligations, in which he reviewed the Food and Drug Administration's ("FDA") regulations to determine whether Defendant was exempt from labeling requirements, such as if the potassium constituted a "processing aid" that would "not significantly increase the amount of the constituents naturally found in the food." *See id.* at ¶ 16. Mr. Sheehan contends that, in his view, "there was a close factual question whether the increased potassium levels were 'significant' enough to require disclosure under those regulations." *See id.* Based on his research, Mr. Sheehan also believed that Defendant could raise a preemption defense, so he reviewed 1 N.Y.C.R.R. § 259.1, in which New York's Agriculture and Markets Law adopted the FDA food labeling regulations, and he concluded that he could "adequately respond to any preemption defense." *See id.* at ¶ 17.

Next, Mr. Sheehan asserts that he reviewed caselaw from the Second Circuit and district courts within it, as well as persuasive authority from other jurisdictions, "supporting the legal theories set forth in the Complaint." *See id.* at ¶ 18. Mr. Sheehan argues that, although the Court ultimately disagreed with his analysis of the caselaw supporting Plaintiff's claims, he submits that Plaintiff's complaint "was not filed in bad-faith or without any basis in established case law, or a reasonable argument for an extension thereof." *See id.* In total, Mr. Sheehan attests that he "devoted between thirty (30) and forty (40) hours to the above factual and legal

150

## Memorandum Decision and Order of the Honorable
## Frederick J. Scullin, Jr., Filed November 30, 2023.

Case 5:22-cv-01199-FJS-ATB   Document 41   Filed 11/30/23   Page 11 of 20

research into the allegations of Starbucks adding potassium to its French Dark Roast coffee to lower acidity levels, at a value to [his] client of $15,000-20,000." *See id.* at ¶ 19.

Finally, Mr. Sheehan affirms that, after Defendant's counsel accepted service of Plaintiff's complaint, he "engaged [his] own independent analysis" of the Product in advance of any Answer or motion practice. *See id.* at ¶ 22. Mr. Sheehan asserts that, although he was "unable to obtain an analysis as sophisticated as that conducted by Puroast and Dr. Ibrahim, [he] made other efforts to verify the claims at issue by requesting a pH analysis of eight different French dark roast coffees from an experienced food laboratory, Krueger Food Laboratories, Inc., in Massachusetts. *See id.* at ¶ 23. Mr. Sheehan declares that, of those eight samples, the Product had the highest pH at 6.40, compared with values of 5.70 to 6.20 for the other coffees tested, which were "significantly higher" results than those Dr. Ibrahim obtained, but he attributes those differences "to the environment in which the testing was done: a commercial laboratory with a wide range of services, compared to a major university laboratory with specialized equipment and years of experience performing the procedures in question." *See id.* at ¶¶ 24-26. Notwithstanding these differences, Mr. Sheehan attests that the Product was the highest, most alkaline, and least acidic coffee that he tested, which corroborated Puroast's allegations; and, therefore, he "believed there was a good-faith basis to commence and maintain the action against [Defendant] for its misleading '100% Arabic[a] Coffee' claim." *See id.* at ¶¶ 27-28. Sheehan's Counsel have also provided the Krueger Report, which included the pH analyses for all eight French roast dark roast coffees. *See* Dkt. No. 38-1 at 2-9. Notably, the Krueger Report is dated April 27, 2023, with a receipt date of January 30, 2023. *See* Dkt. No. 38-1. Plaintiff commenced this action on November 13, 2022, more than two months before the Krueger Report indicated that it received the Product sample. *See* Dkt. No. 1.

**151**

## Memorandum Decision and Order of the Honorable
## Frederick J. Scullin, Jr., Filed November 30, 2023.

Case 5:22-cv-01199-FJS-ATB     Document 41     Filed 11/30/23     Page 12 of 20

As noted above, neither the Krueger Report nor any of the articles or studies Mr. Sheehan pointed to in his declaration were attached to Plaintiff's complaint or her response in opposition to Defendant's motion, nor did Mr. Sheehan provide them to the Court in his initial responses to the Court's order to show cause prior to the hearing. The Court stated as such in its Memorandum-Decision and Order:

> Plaintiff does not cite to any of those reports or attach them to her complaint. She does not point to any figure or other data set showing the amount of potassium in the Product. She does not allege that she suffered any kind of reaction as a result of heightened levels of potassium in the coffee, or that she has kidney issues and may have suffered a reaction. To the extent Plaintiff has alleged that she paid a pri[c]e premium for coffee free from added potassium, her vague allegations do not show that the Product, in fact, contains added potassium. The Court therefore finds that a vague reference to "[r]ecent reports based on laboratory analysis" without identifying those reports or results of that analysis are bare and conclusory assertions that, even if accepted as true, do[] not plausibly state a claim for relief as required under Rule 8 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 8; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hoffman v. Kraft Heinz Foods Co.*, No. 22-CV-397 (KMK), 2023 U.S. Dist. LEXIS 20929, *24-*25 (S.D.N.Y. Feb. 7, 2023).

*See* Dkt. No. 24 at 10-11 (footnote omitted).

Even if the Court had such information available to it at the time it considered Defendant's motion to dismiss and accepted such evidence as true, the Court ruled that Plaintiff "ha[d] not shown that a reasonable person would believe that "100% Arabica Coffee" meant that the Product contained ground coffee beans without any vitamins or minerals, including added potassium." *See id.* at 11. The Court noted that Plaintiff herself admitted that a "normal" cup of coffee contains 116 milligrams of potassium. *See id.* (citing Dkt. No. 1 at ¶ 14). The Court also pointed to Defendant's correct assertion that the word "Arabica" simply refers to the

**152**

**Memorandum Decision and Order of the Honorable**
**Frederick J. Scullin, Jr., Filed November 30, 2023.**

Case 5:22-cv-01199-FJS-ATB    Document 41    Filed 11/30/23    Page 13 of 20

plant from which the coffee bean was harvested. *See id.* (citing Dkt. No. 14-1 at 21).

Specifically, the Court quoted from two dictionary definitions of the word "Arabica," meaning a

"'coffee tree, *Coffea arabica*, native to Ethiopia but extensively cultivated in tropical climates,'"

and "'the coffee beans produced by this tree, and the typically mild-flavoured, high-quality

coffee obtained from them.'" *See id.* at 11, 12 n.3 (quoting *Arabica, Oxford English Dictionary*

(3rd ed. 2013); citing *Arabica, Merriam-Webster's Dictionary*, https://www.merriam-

webster.com/dictionary/arabica (last accessed July 6, 2023)). Based on the foregoing, the Court

found that "a reasonable consumer acting under reasonable circumstances would understand the

labeling of '100% Arabica Coffee' on the Product to mean that the ground coffee beans are

exclusively from the arabica plant, and the Product does not contain coffee beans from any

other type of coffee bean producing plant," and "a reasonable consumer would not assume

'100% Arabica Coffee' means coffee without additives, vitamins, or minerals." *See id.* at 12.

The Court relied on this reasoning to dismiss Plaintiff's GBL §§ 349 and 350 claims, as

well as her claims for breach of express and implied warranties, violation of the Magnuson

Moss Warranty Act, and for fraud and unjust enrichment. *See id.* at 17-17. Additionally, in

assessing Plaintiff's State Consumer Fraud Acts claim, the Court noted that Plaintiff never

identified the "Consumer Fraud Acts" she alleged Defendant violated or how Defendant

allegedly did so. *See id.* at 13. The Court found that, without such basic factual contentions,

Plaintiff fell short of satisfying Rule 8's pleading requirements on that claim. *See id.*

In its discussion regarding sanctions, the Court pointed to Mr. Sheehan's failures in this

action and in others before courts in this District and within the Second Circuit to find that "Mr.

Sheehan is aware that he files class action lawsuits primarily pertaining to allegedly false

labeling on consumer products – including causes of action for violations of GBL §§ 349 and

## 153

## Memorandum Decision and Order of the Honorable
## Frederick J. Scullin, Jr., Filed November 30, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 41    Filed 11/30/23    Page 14 of 20

350, breach of express and implied warranties and the MMWA, and common law fraud and unjust enrichment – that plainly do not meet the pleading requirements for such claims on their faces." *See id.* at 18. "Nonetheless," the Court asserted, "Mr. Sheehan continues to file these frivolous actions in violation of Rule 11(b)(2) of the Federal Rules of Civil Procedure." *See id.* at 19. Thus, based on "Mr. Sheehan's history and experience in similar cases, which courts have dismissed for failure to state a claim as this Court does here," the Court ordered that Mr. Sheehan must show cause as to why he should not be sanctioned for continually filing frivolous lawsuits in this District. *See id.*

In responding to the Court's order to show cause, Mr. Sheehan pointed to the caselaw on which he allegedly relied to support filing Plaintiff's complaint in this action and which, he argued, showed that his conduct was done in good faith. Most notably, Mr. Sheehan argued that Plaintiff's claims were not frivolous and were consistent with the Second Circuit's findings in its recent decision in *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018). *See* Dkt. No. 26 at 3. Mr. Sheehan pointed to the Second Circuit's reliance in that case on the Ninth Circuit's rule that "'[r]easonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box.'" *Mantikas*, 910 F.3d at 637 (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). In *Mantikas*, the Second Circuit held that the plaintiffs had stated a plausible claim because Cheez-It crackers' labeling as "WHOLE GRAIN" and "MADE WITH WHOLE GRAIN" – and disclosures on a side panel that there were 5 or 8 grams of whole grains per serving size – "falsely imply that the grain content is entirely or at least predominantly whole grain, whereas in fact, the grain component consisting of enriched white flour substantially exceeds the whole grain portion." *Id.* The Second Circuit thus "conclude[d]

## 154

### Memorandum Decision and Order of the Honorable
### Frederick J. Scullin, Jr., Filed November 30, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 41    Filed 11/30/23    Page 15 of 20

that a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type face on the front of the box." *Id.* The Court finds that the Second Circuit's holding is not applicable to Plaintiff's case, in which the Product stated that it contained "100% Ground Arabica" coffee, meaning ground coffee beans from the Arabica coffee plant; and it did, in fact, contain that content without need for correction on the side of the bag or in a list of nutritional facts.[4]

Mr. Sheehan next pointed to *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94 (E.D.N.Y. 2020), arguing that, "[u]nlike 'in *Mantikas*, [where] it was undisputed that the Nutrition Facts panel was accurate,' 'the existence of [added potassium], the substance [P]laintiff[] allege[d]' makes the '100% Arabica' front label claim misleading, '[wa]s never explicitly disclosed to consumers.'" *See* Dkt. No. 26 at 4 (quoting *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 102 (E.D.N.Y. 2020) ("denying dismissal in case brought by [Mr. Sheehan] because despite claim soda was 'made with aged vanilla,' vanilla taste was provided by the undisclosed synthetic chemical of ethyl vanillin") (citing *Mantikas*, 910 F.3d at 637; kt. No. 1 at ¶ 20)). In *Sharpe*, the court found that the rule from the *Mantikas* case applied when the A&W root beer label stated that it was "made with aged vanilla." *Sharpe*, 481 F. Supp. 3d at 102. According to that court, "the use of the word 'aged' suggests to consumers that the

___

[4] Notably, bags of ground coffee beans are not required to contain Nutritional Fact panels. In the FDA's regulations, it exempts certain foods from special labeling requirements, such as for "[f]oods that contain insignificant amounts of all of the nutrients and food components required to be included in the declaration of nutrition information," provided that the food "bears no nutrition claims or other nutrition information in any context on the label or in labeling or advertising," with some exceptions. 21 C.F.R. § 101.9(j)(4). According to the regulations, "[a]n insignificant amount of a nutrient or food component shall be that amount that allows a declaration of zero in nutrition labeling, except that for total carbohydrate, dietary fiber, and protein, it shall be in an amount that allows a declaration of 'less than 1 gram.'" *Id.* The regulations point to "coffee beans (whole or ground)" as an example of one such exempted food. *Id.*

## 155

## Memorandum Decision and Order of the Honorable
## Frederick J. Scullin, Jr., Filed November 30, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 41    Filed 11/30/23    Page 16 of 20

vanilla content is naturally derived and has acquired a desirable quality upon the passage of time. By holding out their products as containing 'aged vanilla,' defendants' representation is the equivalent to stating the beverages are 'Made With Natural Vanilla,'" which was false as natural vanilla was "*de minimis* in quantity when compared to the artificial and synthetic substitute for vanilla." *Id.*

The Court also finds that this case is irrelevant for the same reason as *Mantikas*. There is no assertion that the "100% Ground Arabica" coffee in Plaintiff's case contained Robusta coffee beans in addition to Arabica coffee beans. This is not a case where the labeling promised inclusion of one ingredient, but that ingredient was de minimus in quantity. There was one ingredient promised on the label, and the Product only contained one ingredient: ground Arabica coffee beans. The Court therefore finds that it was unreasonable for Mr. Sheehan to believe that *Mantikas* and *Sharpe* provided precedent he could follow in filing Plaintiff's claim since they were not relevant to this action.

Mr. Sheehan also pointed to nonbinding decisions about "100%" claims that allegedly supported extensions of law and showed that Plaintiff's claims were not frivolous. *See* Dkt. No. 26 at 4. Specifically, Mr. Sheehan identified three cases from the 7th Circuit and the districts within that Circuit. First, Mr. Sheehan pointed to *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 473 (7th Cir. 2020), in which the plaintiffs filed suit claiming that the defendants' products, labeled "100% Grated Parmesan Cheese," were deceptive because the fine print on the back of the products showed that they were not 100% cheese. *Bell*, 982 F.3d at 474. The Seventh Circuit in *Bell* rejected the district court's proposed "rule that immunized any ambiguous label so long as it is susceptible to one non-deceptive interpretation" and adopted the Second Circuit's reasoning in *Mantikas* that such a rule "'would validate highly deceptive advertising.'" *Id.* at

## 156
## Memorandum Decision and Order of the Honorable
## Frederick J. Scullin, Jr., Filed November 30, 2023.

477 (quoting *Mantikas*, 910 F.3d at 638). However, the Seventh Circuit noted, "where plaintiffs base deceptive advertising claims on unreasonable or fanciful interpretations of labels or other advertising, dismissal on the pleadings may well be justified." *Id.* (collecting cases). In reversing the district court's dismissal of the plaintiffs' claim, the Seventh Circuit noted that it could "see how '100% Grated Parmesan Cheese' might be interpreted as claiming only that whatever it contains is '100% grated,' or perhaps that whatever cheese it contains is '100% Parmesan[,]'" or even "that '100%' applies to all three words: it's all cheese; all the cheese is Parmesan, and it's all grated." *Id.* at 476-77. In this case, however, the label "100% Ground Arabica Coffee" unambiguously means that it contains 100% ground coffee (*i.e.*, there were no whole beans present) and that the coffee was made of 100% Arabica coffee beans, of which there is no dispute.

In *Bell*, the Seventh Circuit also pointed to its recent decision in *Beardsall v. CVS*, 953 F.3d 969 (7th Cir. 2020), to support "the general principle that deceptive advertising claims should take into account all the information available to consumers and the context in which that information is provided and used." *Id.* at 477 (citing *Beardsall*, 953 F.3d at 977-78 (affirming summary judgment for defendants where plaintiffs testified that they expected products to contain preservatives despite label claiming '100% pure' aloe) (other citations omitted)). Mr. Sheehan also pointed to the *Beardsall* case to support Plaintiff's claims here, even though, in *Beardsall*, the Seventh Circuit granted the defendants' motion for summary judgment after finding that the plaintiffs had not proffered evidence to show that a reasonable consumer would interpret the statement "100% Pure Aloe Vera Gel" to mean that there were no stabilizers or preservatives in the product. *See Beardsall*, 953 F.3d at 977. These cases show examples of potentially false labels indicating that products contain one ingredient when they

**157**

## Memorandum Decision and Order of the Honorable
## Frederick J. Scullin, Jr., Filed November 30, 2023.

Case 5:22-cv-01199-FJS-ATB    Document 41    Filed 11/30/23    Page 18 of 20

contain more than that, which is separate from the issue in Plaintiff's case, in which the Product did not contain any ingredients other than ground coffee beans from the Arabica coffee plant, and Plaintiff does not argue otherwise. Thus, the Court finds that it would have been unreasonable for Mr. Sheehan to rely on these cases to support his position that he believed that Plaintiff's case was nonfrivolous.

Lastly, with respect to these "100%" cases, Mr. Sheehan pointed to *Jackson v. Dole Packaged Foods, LLC*, No. 3:22-CV-1448-DWD, 2022 U.S. Dist. LEXIS 233999 (S.D. Ill. Dec. 30, 2022), to support his argument that Plaintiff's claims were not frivolous. *See* Dkt. No. 26 at 4. Although *Jackson* is the most analogous case to Plaintiff's claims in that the plaintiff alleged that the label "100% fruit juice" was misleading because it contained ascorbic and citric acids as preservatives and additives, *see Jackson*, 2022 U.S. Dist. LEXIS 233999, at *12, the Court finds that Mr. Sheehan could not have relied on that decision because he filed Plaintiff's complaint on November 13, 2022, before the court issued its decision in *Jackson, see generally* Dkt. No. 1.

Notwithstanding this fact, the Court considers the decision in *Jackson* and finds that there is a key distinguishing feature. In *Jackson,* if the defendant added chemically-manufactured acids to the product – even though they are naturally occurring in fruit – then there is a valid argument that the product no longer contains "100% juice." It would be fruit juice, plus added acids. However, in this case, even if Plaintiff alleged that Defendant added chemically-manufactured potassium to the Product – which, as the Court found in its Memorandum-Decision and Order, she did not – it would not change the fact that Product was

## 158
## Memorandum Decision and Order of the Honorable
## Frederick J. Scullin, Jr., Filed November 30, 2023.
Case 5:22-cv-01199-FJS-ATB    Document 41    Filed 11/30/23    Page 19 of 20

made entirely of beans from the Arabica coffee plant.[5]  Plaintiff has not alleged that the coffee beans are from the Robusta or any other type of coffee plant other than Arabica.  Thus, as the Court explained in its Memorandum-Decision and Order, even if Plaintiff had alleged that Defendant added potassium to its coffee, she did not allege that a reasonable consumer would understand "100% Arabica Coffee" as meaning anything other than coffee that is entirely from the Arabica coffee plant.  As such, even if Plaintiff's counsel could have relied on *Jackson*, the Court finds that Mr. Sheehan has failed to establish its relevance in showing that it was foreseeable that Plaintiff's claim would survive in this Court.

In sum, Mr. Sheehan filed Plaintiff's complaint without any studies, relevant caselaw, or reasonable interpretations of the wording on the Product label to support the allegations contained within.  Accordingly, for the above-stated reasons, and those the Court articulated during the show cause hearing, the Court concludes that Mr. Sheehan acted in bad faith when he commenced this action; and, as such, the Court holds Mr. Sheehan in contempt for his conduct in this matter.

### III. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Attorney Spencer Sheehan, of Sheehan & Associates, P.C., is in civil contempt of court; and the Court further

[5]As another example, even if the bag of coffee contained artificial flavoring, such as vanilla or caramel, the Product would still contain "100% Arabica coffee" so long as the coffee beans entirely derived from the Arabica coffee plant.

## 159

**Memorandum Decision and Order of the Honorable
Frederick J. Scullin, Jr., Filed November 30, 2023.**

Case 5:22-cv-01199-FJS-ATB     Document 41     Filed 11/30/23     Page 20 of 20

**RESERVES** decision on the nature of the final sanctions.

**IT IS SO ORDERED.**

Dated: November 30, 2023
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

**160**

**Order of the Honorable Frederick J. Scullin, Jr., Filed January 2, 2025.**

Case 5:22-cv-01199-FJS-ATB    Document 42    Filed 01/02/25    Page 1 of 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KRISTIE BROWNELL, individually and on behalf of
All others similarly situated,

**Plaintiff,**

v.

STARBUCKS COFFEE COMPANY,

**Defendant.**

5:22-CV-1199
(FJS/ATB)

---

**APPEARANCES**

**COSTELLO, COONEY & FEARON, PLLC**
211 West Jefferson Street
Syracuse, New York 13202
Attorneys for Respondents Spencer Sheehan
& Associates, P.C.

**ASHLEY FURNITURE INDUSTRIES, LLC**
1670 East 8th Avenue
Tampa, Florida 33605
*Amicus Curiae*

**OF COUNSELOR**

**PAUL G. FERRARA, ESQ.**
**DANIEL R ROSE, ESQ.**

**ROBERT AMICONE, ESQ.**

**SCULLIN, Senior Judge**

**ORDER[1]**

On July 12, 2023, the Court issued a Memorandum-Decision and Order, in which, among

other things, it issued a show-cause order as to why it should not sanction Plaintiff's counsel,

Spencer Sheehan, Esq., of Sheehan & Associates, PC., for filing a frivolous lawsuit in this

District. *See* Dkt. No. 24, Memorandum-Decision and Order, at 17-19. On July 23, 2023, Mr.

Sheehan submitted a five-page letter brief responding to the Court's order to show cause. *See*

---

[1] The Court assumes the parties' familiarity with the prior proceedings in this case and, therefore,
will not reiterate those facts except where necessary to an understanding of this Order.

## 161

**Order of the Honorable Frederick J. Scullin, Jr., Filed January 2, 2025.**
Case 5:22-cv-01199-FJS-ATB     Document 42     Filed 01/02/25     Page 2 of 2

Dkt. No. 26. The Court then scheduled a hearing for August 22, 2023, and granted his counsel's request to file a five-page supplemental submission. *See* Dkt. No. 34.

After the hearing, the Court issued a Memorandum-Decision and Order, in which it determined that "Mr. Sheehan filed Plaintiff's complaint without any studies, relevant caselaw, or reasonable interpretations of the wording on the Product label to support the allegations contained within." *See* Dkt. No. 41, Memorandum-Decision and Order dated November 30, 2023, at 19. Therefore, for the reasons stated in the Court's November 30, 2023 Memorandum-Decision and Order as well as for the reasons the Court had articulated at the show cause hearing, the Court concluded that Mr. Sheehan "acted in bad faith when he commenced this action" and, therefore, held "Mr. Sheehan in contempt for his conduct in this matter." *See id.* at 19. The Court, however, reserved decision on the nature of the sanctions it would impose. *See id.* at 20.

After engaging in further research regarding similar cases and considering Mr. Sheehan's behavior in this Court and his similar behavior in other cases in this District and beyond, as well as his statements at the show cause hearing and in his submissions regarding the show cause order, the Court hereby

**ORDERS** that Mr. Sheehan shall pay $500.00 as a sanction for violating Rule 11(b)(2) of the Federal Rules of Civil Procedure. Within fourteen (14) days of the date of this Order, Mr. Sheehan shall contact the Clerk's Office at 315-234-8500 and ask to speak to the Finance Division to receive instructions regarding how he shall make this payment.

**IT IS SO ORDERED.**

Dated: January 2, 2025
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

**162**

## Notice of Appeal of Non-Party Spencer Sheehan, Esq. and Sheehan & Associates, PC, Filed January 24, 2025.

Case 5:22-cv-01199-FJS-ATB     Document 43     Filed 01/24/25     Page 1 of 3

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF NEW YORK

KRISTIE BROWNELL, individually and on behalf of all other similarly situated,

Case No.  5:22-CV-1199 (FJS/ATB)

Plaintiff,

-vs-

**NOTICE OF APPEAL**

STARBUCKS COFFEE COMPANY,

Defendant.

NOTICE is hereby given that Spencer Sheehan, Esq. and Sheehan & Associates, PC, a non-party to the above-named case, hereby appeals to the United States Court of Appeals for the Second Circuit from an Order of the Hon. Frederick J. Scullin, Jr. dated and entered on the 2nd day of January, 2025, and each and every other Order affecting such final determination of this Court.

Dated:     January 24, 2025

COSTELLO, COONEY & FEARON, PLLC

DANIEL R. ROSE
Federal Bar No. 518366
Attorneys for Non-Parties, Spencer Sheehan, Esq.
and Sheehan & Associates, P.C.
Office and Post Office Address
211 West Jefferson Street, Suite 1
Syracuse, NY 13202
Telephone:  (315) 422-1152
drose@ccf-law.com